UNITED STATES DISTRICT COURT
EASTERN DISTRICT of WISCONSIN

CASE NO. __25-cv-1386__

U.S. DISTRICT COURT
EASTERN DISTRICT - WI
FILED

2025 SEP 10  A 10: 34

CLERK OF COURT

BRIAN T. PETERSON,

Plaintiff,

v.

GREAT MIDWEST BANK;
EXPERIAN INFORMATION
SOLUTIONS, INC; EQUIFAX
INFORMATION SERVICES LLC;
TRANS UNION LLC; U.S. BANK
NATIONAL ASSOCIATION;
SUMMIT CREDIT UNION

Defendants.

## PLAINTIFF'S VERIFIED COMPLAINT FOR DAMAGES AND JURY DEMAND

Plaintiff, Brian T. Peterson ("Plaintiff"), brings this action for damages brought pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., arising from the repeated and unlawful reporting, maintenance, and failure to correct materially inaccurate consumer credit information by the Defendants, including consumer reporting agencies Experian Information Solutions, Inc., Equifax Information Services LLC, and Trans Union LLC; financial institutions and furnishers U.S. Bank National Association, Summit Credit Union, and Great Midwest Bank. Despite receiving formal disputes from Plaintiff Brian T. Peterson identifying clear and documented inaccuracies—including but not limited to incorrect balance amounts, payment histories, account opening dates, and dates of last activity—the Defendants failed to conduct

reasonable reinvestigations, failed to maintain procedures to ensure maximum possible accuracy, and continued to furnish or report inaccurate and derogatory information. As a direct and proximate result, Plaintiff has suffered actual damages including credit denial, reputational harm, loss of creditworthiness, and emotional distress. Plaintiff seeks actual, statutory, and punitive damages under 15 U.S.C. §§ 1681n and 1681o, along with injunctive relief and a trial by jury on all issues so triable.

## JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. § 1331, § 1337, and 15 U.S.C. 1681(p).

2. Jurisdiction of the court arises pursuant to 15 U.S.C. § 1681(p), which states that such actions may be brought and heard before "any appropriate United States district court without regard to the amount in controversy."

3. Venue and personal jurisdiction in this district are proper because Defendant(s) do or transacts business within the district and a material portion of the events at issue occurred in this district.

## PARTIES

4. Plaintiff, Brian T. Peterson, is a natural person and consumer as defined by 15 U.S.C. § 1681a(c), residing at 590 Mill Pond Road, Dousman, Wisconsin 53118, within the jurisdiction of the U.S. District Court for the Eastern District of Wisconsin.

5. Defendant Great Midwest Bank is a Wisconsin-chartered financial institution and furnisher of credit information to consumer reporting agencies. Its principal place of business is located at 15900 West Bluemound Road, Brookfield, Wisconsin 53005. Great Midwest Bank regularly conducts business in the Eastern District of Wisconsin.

6. Defendant U.S. Bank National Association is a national banking association and furnisher of credit information. It has its principal mailing address at P.O. Box 108, St. Louis, Missouri 63166-0108, and regularly conducts substantial business throughout the State of Wisconsin, including within this District.

7. Defendant Summit Credit Union is a Wisconsin-based credit union and furnisher of credit information to consumer reporting agencies. Its principal mailing address is P.O. Box 8046, Madison, Wisconsin 53708. Summit Credit Union regularly transacts business in this District.

8. Defendant Experian Information Solutions, Inc. is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f), organized in the State of Ohio with a principal office at 475 Anton Boulevard, Costa Mesa, California 92626. Experian maintains a registered agent for service of process at CT Corporation System, 301 South Bedford Street, Suite 1, Madison, Wisconsin 53703, and regularly transacts business in this District.

9. Defendant Equifax Information Services LLC is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f), organized in the State of Georgia with its principal office at 1550 Peachtree Street NW, Atlanta, Georgia 30309. Equifax maintains a registered agent for service of process at Corporation Service Company, 33 East Main Street, Suite 610, Madison, Wisconsin 53703, and regularly transacts business in this District.

10. Defendant Trans Union LLC is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f), organized in the State of Delaware with a principal office at 555 West Adams Street, Chicago, Illinois 60661. Trans Union maintains a registered agent for service of process at Corporation Service Company, 33 East Main Street, Suite 610, Madison, Wisconsin 53703, and regularly transacts business in this District.

## GENERAL ALLEGATIONS

11.    Plaintiff alleges that Defendant(s) are incorrectly reporting that Plaintiff's account is closed, with inaccurate high credit limit, with inaccurate date last active, and with incomplete and inaccurate payments history.

12.    Plaintiff alleges that if a data furnisher decides to report an account, the FCRA requires complete and accurate reporting; therefore, a data furnisher cannot pick and choose which portions of the account to report. If a data furnisher reports an account, then it should report all portions of that account in a manner which complies with the maximum accuracy and completeness standard of the FCRA.

13.    Plaintiff alleges that Defendant(s) are familiar with the FCRA requirements and credit reporting industry standards and subscribes thereto.

14.    Plaintiff alleges that Defendant(s) understands that deviation from the FCRA requirements or credit reporting industry standards can, and often does, result in the denial of credit, higher interest rates, and prompts a negative inference that would not be drawn if the data were reported in accordance with the recognized standards.

15.    Plaintiff alleges that Defendant(s) actions alleged herein were committed knowingly, intentionally, and in reckless disregard of the unambiguous meaning of the FCRA, regulatory guidelines on accurate reporting, and credit reporting industry standards to purposefully undermine Plaintiff's ability to repair his credit score.

16.    In the alternative, Plaintiff alleges that Defendant(s) actions were the result of negligent policies, procedures, and an objectively unreasonable interpretation of the FCRA, all which inevitably led to inaccurate, misleading, or incomplete credit reporting.

# FACTUAL ALLEGATIONS

**A. Great Midwest Bank**

17.     Plaintiff is a "consumer" within the meaning of the Fair Credit Reporting Act, 15 U.S.C. § 1681a(c).

18.     Defendants are each a "person" and/or "consumer reporting agency" and/or "furnisher" of credit information within the meaning of the FCRA, 15 U.S.C. § 1681a(b), (f), and § 1681s-2.

19.     Plaintiff maintains a mortgage loan account serviced by Great Midwest Bank, a Wisconsin-based financial institution and furnisher of credit information to consumer reporting agencies. Beginning in or around June 1, 2025, Plaintiff discovered that Great Midwest Bank was reporting materially inaccurate, incomplete, and outdated information concerning his mortgage loan.

20.     On or about June 8, 2025, Plaintiff mailed a written dispute to Great Midwest Bank pursuant to the Fair Credit Reporting Act, identifying numerous inaccuracies in the bank's credit reporting, including but not limited to the "Date Opened," "Balance," "Number of Months (Terms)," "Last Reported Date," "Date Last Active," and "Date of Last Payment." This dispute was sent via USPS Certified Mail Tracking No. 9214 8901 4298 0419 8979 71 and was delivered on June 13, 2025, at 8:01 a.m. in Brookfield, Wisconsin. The item was signed for by Mark Zych on behalf of Great Midwest Bank.

21.     On July 2, 2025, Great Midwest Bank issued a written response acknowledging discrepancies between its internal loan records and the information published on Plaintiff's credit reports. However, the bank declined to take corrective action, citing generic "bureau processing differences" as justification for the continued reporting of inaccurate data. The bank did not

provide documentation to verify the reported entries and did not notify the consumer reporting agencies of the dispute in violation of its duties under 15 U.S.C. § 1681s-2(b).

22. On or about July 15, 2025, Plaintiff submitted a second written dispute to Great Midwest Bank, again identifying the same errors and demanding their correction. This second dispute was sent via USPS Certified Mail Tracking No. 9214 8901 4298 0422 4124 75 and was delivered on July 21, 2025, at 8:04 a.m. in Brookfield, Wisconsin. The item was signed for by Mark Zych on behalf of Great Midwest Bank.

23. On August 1, 2025, Great Midwest Bank responded with a second deficient letter, again refusing to amend, update, or delete the inaccurate tradeline. The bank admitted discrepancies between Plaintiff's third-party credit report and its internal data but offered no resolution other than to reiterate that its June 30, 2025 reporting was "true and verifiable." The bank failed to acknowledge or reasonably reinvestigate Plaintiff's second dispute and took no steps to verify or reconcile its reporting with the consumer reporting agencies.

24. On August 7, 2025, Plaintiff also filed a formal complaint with the Federal Deposit Insurance Corporation, Case No. 01917647, alleging Great Midwest Bank's failure to conduct a reasonable investigation and to accurately report account information to credit reporting agencies.

25. On August 13, 2025, Plaintiff issued a formal Notice of Intent to Sue, again outlining the FCRA violations and demanding immediate deletion or correction of the inaccurate tradeline. This notice was sent via USPS Certified Mail Tracking No. 9214 8901 4298 0424 4153 13 and was delivered on August 18, 2025, at 8:04 a.m. in Brookfield, Wisconsin. The item was signed for by Mark Zych on behalf of Great Midwest Bank.

26.     As of the filing of this action, Great Midwest Bank continues to furnish and maintain inaccurate information on Plaintiff's consumer reports, despite actual notice of disputes and evidence demonstrating reporting errors. The bank's conduct constitutes willful and/or negligent violations of 15 U.S.C. §§ 1681s-2(b) and 1681e(b), and has directly caused Plaintiff to suffer actual damages, including credit denial, emotional distress, reputational injury, and financial harm.

**B. Experian Information Solutions, Inc.**

27.     Plaintiff discovered inaccurate and unverifiable information appearing in his Experian credit report in or around June 1, 2025. These inaccuracies included outdated tradelines, erroneous balances, and misleading account statuses that were materially misleading and adversely affected Plaintiff's creditworthiness.

28.     On June 8, 2025, Plaintiff submitted a detailed written dispute to Experian, sent via USPS Certified Mail Tracking No. 9214 8901 4298 0419 8976 36. The dispute was delivered to Experian's processing facility in Allen, Texas, on June 23, 2025, at 1:43 p.m., and was signed for by Experian employee Lance Rawlings. In his letter, Plaintiff identified specific accounts and tradelines that contained materially false or unverifiable information and requested reinvestigation and correction pursuant to 15 U.S.C. § 1681i.

29.     On June 26, 2025, Experian issued a generic form response letter, refusing to initiate a reinvestigation on the grounds that the request "does not appear to have been sent directly by you." Experian made this claim despite Plaintiff's dispute being mailed under his own name via certified mail to Experian's listed address, enclosed with a copy of up-to-date driver's license and current utility bill. The response failed to conduct or document any reinvestigation and did not provide the results required under § 1681i(a)(6).

30.     On July 15, 2025, Plaintiff submitted a second dispute letter to Experian via USPS Certified Mail Tracking No. 9214 8901 4298 0422 5267 76. The letter was delivered on July 22, 2025, at 12:29 p.m. in Allen, Texas, and again signed for by Lance Rawlings. Plaintiff reiterated the same factual disputes and requested immediate compliance with FCRA mandates.

On July 29, 2025, Experian issued a second nonresponsive postcard-style letter. While it recited general language about the dispute process, it failed to confirm whether any reinvestigation had occurred, did not identify any furnishers contacted, and did not state whether the disputed information had been verified, corrected, or deleted. This failure violated Experian's obligations under 15 U.S.C. § 1681i(a)(6)(B).

31.     On July 14, 2025, Plaintiff filed a complaint with the Better Business Bureau describing Experian's refusal to meaningfully address the disputed inaccuracies. On July 16, 2025, Plaintiff filed Complaint No. 250716-22372768 with the Consumer Financial Protection Bureau, reporting that Experian failed to comply with its obligations under 15 U.S.C. §§ 1681i and 1681e(b). Both complaints remain unresolved.

32.     As a result of Experian's refusal to correct or delete the inaccurate tradeline data, Plaintiff was denied a $1,000,000 mortgage loan by Sterling Bank on July 28, 2025. The denial cited negative information on Plaintiff's credit file, which Plaintiff reasonably believes included the disputed and inaccurate information Experian failed to reinvestigate or correct.

33.     On August 13, 2025, Plaintiff served a formal Notice of Intent to Sue on Experian, sent to its registered agent CT Corporation System in Madison, Wisconsin, via USPS Certified Mail Tracking No. 9214 8901 4298 0424 4130 05. The notice was delivered on August 16, 2025, at 9:59 a.m. and signed for by an agent of Experian. The Notice detailed Experian's violations of

15 U.S.C. § 1681i and demanded deletion of all unverifiable data or production of documentation substantiating the retained entries. No such documentation has been provided.

33. On September 2, 2025, Experian responded with yet another boilerplate letter denying action on Plaintiff's dispute, claiming that "limited information" had been provided, despite having received two detailed, disputes by certified mail with supporting documentation.

34. As of the date of this Complaint, Experian continues to publish inaccurate information on Plaintiff's credit report, despite having actual notice of disputes and failing to perform a reasonable reinvestigation as required by law. Experian's conduct constitutes willful and/or negligent noncompliance with the FCRA, including but not limited to violations of 15 U.S.C. §§ 1681i(a), 1681e(b), and 1681n. Plaintiff has suffered actual damages as a direct result, including credit denial, emotional distress, reputational harm, and diminished credit capacity.

**C. Trans Union LLC**

35. On June 8, 2025, Plaintiff mailed a detailed written dispute to TransUnion LLC, identifying multiple inaccuracies across his consumer credit file, including erroneous personal information, inaccurate tradelines furnished by Great Midwest Bank, Summit Credit Union, and U.S. Bank, and unauthorized inquiries. The dispute was sent via USPS Certified Mail Tracking No. 9214 8901 4298 0419 8979 57 and was delivered on June 13, 2025, at 3:06 p.m. in Chester, Pennsylvania. The item was signed for by Alfredo Hewitt on behalf of TransUnion.

36. On July 2, 2025, TransUnion issued a written response stating that its investigation was complete. However, the response failed to provide meaningful results of any reinvestigation. It did not confirm whether disputed items had been corrected or deleted, did not identify which furnishers were contacted, and did not provide documentation verifying the accuracy of the

disputed information. Instead, the response included only generic language suggesting that some items may have been "previously verified," without substantiation.

37.     On July 14, 2025, Plaintiff filed a complaint with the Better Business Bureau describing TransUnion's refusal to meaningfully address the disputed inaccuracies. On July 16, 2025, Plaintiff filed Complaint No. 250714-22319657 with the Consumer Financial Protection Bureau, reporting that TransUnion failed to comply with its obligations under 15 U.S.C. §§ 1681i and 1681e(b). Both complaints remain unresolved.

38.     On July 29, 2025, Plaintiff submitted a second dispute letter to TransUnion via USPS Certified Mail Tracking No. 9214 8901 4298 0423 4226 71. This letter was delivered on August 1, 2025, at 1:57 p.m. in Chester, Pennsylvania, and again signed for by Alfredo Hewitt. Plaintiff reiterated that TransUnion had failed to conduct a proper reinvestigation and demanded compliance with 15 U.S.C. § 1681i(a).

39.     On August 11, 2025, Plaintiff sent TransUnion a formal Notice of Intent to Sue via certified mail, warning of litigation for continued violations of the Fair Credit Reporting Act. The Notice was delivered on August 22, 2025, at 12:10 p.m. in Madison, Wisconsin, to TransUnion's registered agent for service of process.

40.     On August 22, 2025, TransUnion issued a second response. Like the first, it consisted of boilerplate language and failed to provide itemized verification or documentary proof of any reinvestigation. TransUnion again stated that disputed items were "previously verified," without providing the names or contact details of furnishers, contrary to the requirements of § 1681i(a)(6)(B)(iii). The inaccurate data remained on Plaintiff's credit file.

41.     On August 26, 2025, TransUnion issued another written response to Plaintiff's Notice of Intent. Once again, it failed to provide verification from original furnishers or documentary proof

substantiating the accuracy of the disputed information. A subsequent letter dated September 2, 2025, repeated this same template language, refusing to correct or delete the inaccurate tradelines and failing to meet the statutory requirements of § 1681i.

42.     As of the filing of this action, TransUnion continues to report inaccurate, incomplete, and misleading information in Plaintiff's credit file, despite multiple certified-mail disputes, formal complaints to the BBB and CFPB, and a Notice of Intent to Sue. TransUnion's failure to conduct a reasonable reinvestigation, failure to delete unverifiable data, and failure to disclose the sources relied upon constitute willful and/or negligent violations of 15 U.S.C. §§ 1681i(a), 1681e(b), and 1681n. Plaintiff has sustained actual damages, including denial of a $1,000,000 loan from Sterling Bank, emotional distress, reputational harm, and financial injury.

**D. Equifax Information Services LLC**

43.     On June 8, 2025, Plaintiff mailed a written dispute to Equifax Information Services LLC, identifying multiple inaccuracies in his consumer credit file, including erroneous personal identifiers, materially false tradelines furnished by Great Midwest Bank, Summit Credit Union, and U.S. Bank, and unauthorized inquiries. The dispute was sent via USPS Certified Mail Tracking No. 9214 8901 4298 0419 8979 64 and was delivered on June 15, 2025, at 1:07 p.m. in Atlanta, Georgia.

44.     On July 1, 2025, Equifax issued a response stating that the results of its investigation were complete. The letter, however, failed to provide meaningful findings or documentation. It did not identify which furnishers had been contacted, whether disputed items were corrected or deleted, or what evidence supported continued reporting. Instead, Equifax issued only generic language suggesting that data had been "verified," without substantiating its accuracy or addressing the specific issues raised in Plaintiff's dispute.

45.     On July 14, 2025, Plaintiff filed a formal complaint with the Better Business Bureau, reporting Equifax's failure to provide proper reinvestigation results. The following day, Plaintiff submitted Complaint No. 250715-22323855 with the Consumer Financial Protection Bureau, again citing Equifax's noncompliance with 15 U.S.C. §§ 1681i and 1681e(b). Both complaints remain pending without resolution.

46.     On July 15, 2025, Plaintiff mailed a second dispute letter to Equifax, again identifying inaccurate data and demanding reinvestigation. The dispute was sent via USPS Certified Mail Tracking No. 9214 8901 4298 0422 4264 03 and delivered on July 19, 2025, at 11:54 a.m. in Atlanta, Georgia. Plaintiff specifically advised that Equifax had failed to provide evidence of any reinvestigation and warned that continued noncompliance violated 15 U.S.C. §§ 1681i(a) and 1681e(b).

47.     On July 22, 2025, Equifax issued another form letter stating that its investigation was complete. Like its earlier response, the letter contained boilerplate language, failed to disclose any furnisher communications, and did not provide documentary evidence substantiating disputed tradelines or inquiries.

48.     On July 31, 2025, Equifax sent yet another nearly identical response, again failing to correct or delete inaccurate data.

49.     On August 11, 2025, Equifax issued an additional duplicate response letter, repeating the same non-substantive template language.

50.     On August 13, 2025, Plaintiff sent a formal Notice of Intent to Sue to Equifax's registered agent in Madison, Wisconsin, via USPS Certified Mail Tracking No. 9214 8901 4298 0424 4125 96. The Notice explained that Equifax's prior responses violated the Fair Credit Reporting Act because they did not include the results of the reinvestigation, the names of

furnishers contacted, or any documentary proof of verification. The Notice further stated that Plaintiff had sustained actual damages, including the denial of a $1,000,000 loan from Sterling Bank on July 28, 2025, which explicitly referenced negative information reported by Equifax. USPS records confirm the NOI was delivered on August 18, 2025, at 1:21 p.m. in Madison, Wisconsin, and signed for at Equifax's registered agent's front desk/mailroom.

51.     As of the filing of this action, Equifax continues to report inaccurate and misleading information on Plaintiff's consumer report, despite receiving two formal disputes, multiple supporting documents, regulatory complaints, and a Notice of Intent to Sue. Equifax's repeated issuance of non-substantive, template responses—without conducting a reasonable reinvestigation, deleting unverifiable data, or providing documentation—constitutes willful and/or negligent violations of 15 U.S.C. §§ 1681i(a), 1681e(b), and 1681n. Plaintiff has suffered actual damages as a direct result, including the denial of a loan from Sterling Bank, emotional distress, reputational injury, and financial harm.

**E. Summit Credit Union**

52.     On June 8, 2025, Plaintiff mailed a formal written dispute to Summit Credit Union, challenging inaccurate tradeline information furnished to Equifax, Experian, and TransUnion. The dispute identified discrepancies in the reported Date Opened, Credit Limit, Last Reported Date, and Date of Last Payment. The dispute was sent via USPS Certified Mail Tracking No. 9214 8901 4298 0419 8979 95 and was delivered on June 16, 2025, at 9:09 a.m. in Madison, Wisconsin, to Summit's P.O. Box. USPS confirmed signature delivery with proof of receipt by Bob Stuard, an agent for Summit Credit Union.

53.     On July 8, 2025, Summit issued a written response denying the ability to confirm or deny whether Plaintiff had any account relationship, claiming an inability to verify Plaintiff's identity

despite having received a full dispute packet with government-issued ID and supporting documents. Summit further suggested that Plaintiff should dispute directly with consumer reporting agencies and warned that further disputes could be deemed "frivolous," without addressing the specific factual inaccuracies raised.

54.    On July 16, 2025, Plaintiff sent a second dispute letter to Summit Credit Union via USPS Certified Mail Tracking No. 9214 8901 4298 0422 4291 07, reiterating the inaccuracies and noting that Summit's July 8 response violated 15 U.S.C. § 1681s-2(b). This letter was delivered on July 18, 2025, at 7:31 a.m. in Madison, Wisconsin, and signed for by Summit's representative Bob Stuard.

55.    On August 11, 2025, Summit issued another response again refusing to conduct a reinvestigation and repeating the same position that it could not confirm or deny the account relationship. Summit provided no supporting documentation, no verification from its own records, and no indication of corrective action, instead dismissing Plaintiff's detailed disputes with boilerplate denials.

56.    On August 7, 2025, Plaintiff filed a formal complaint with the Better Business Bureau, alleging that Summit Credit Union failed to ensure the accuracy of its furnished data and failed to conduct a reasonable investigation of his disputes. On the same date, Plaintiff also filed a complaint with the National Credit Union Administration (NCUA), Case Number 00256155, describing Summit's violations of 15 U.S.C. § 1681s-2(b).

57.    On August 12, 2025, Summit responded in a letter signed by Kevin Skogg. In its response, Summit acknowledged receiving Plaintiff's disputes but claimed it had already conducted a "comprehensive investigation" through Equifax, concluding that the disputed information was "accurate." Summit further asserted that Plaintiff's initial dispute appeared to

lack a signature and might have been generated by a third party, dismissing Plaintiff's documentation as invalid. Summit refused to delete or correct any reported data, reiterating its claim that the tradeline was being accurately reported.

58.     On August 13, 2025, Plaintiff mailed a Notice of Intent to Sue to Summit Credit Union via USPS Certified Mail Tracking No. 9214 8901 4298 0424 4152 83, providing a final opportunity for compliance before litigation. USPS confirmed delivery on August 18, 2025, at 10:08 a.m. in Madison, Wisconsin, with receipt by Summit Credit Union.

59.     As of the filing of this action, Summit Credit Union continues to furnish inaccurate, incomplete, and unverifiable information to Equifax, Experian, and TransUnion. Its repeated refusal to verify account information, dismissals of Plaintiff's identity and dispute packets, reliance on boilerplate denials, and unsupported assertion of "accuracy" constitute willful and/or negligent noncompliance with 15 U.S.C. § 1681s-2(b). Plaintiff has sustained actual damages as a direct result, including denial of a $1,000,000 loan from Sterling Bank, emotional distress, reputational harm, and financial loss.

**F.  U.S. Bank National Association**

60.     On June 8, 2025, Plaintiff mailed a formal written dispute to U.S. Bank National Association, challenging inaccuracies in its reporting of his revolving credit account ending in 6467. The dispute identified discrepancies in the reported High Credit, Last Reported Date, Date Last Active, and Date of Last Payment. The dispute was sent via USPS Certified Mail Tracking No. 9214 8901 4298 0419 8980 15 and was delivered on June 13, 2025, at 4:12 p.m. in St. Louis, Missouri, where it was signed for by U.S. Bank representative Eric Harnetiaux.

61.     On July 8, 2025, U.S. Bank issued a response stating that it had "requested an update" with the consumer reporting agencies. However, the response failed to identify what information

was corrected or deleted, what disputed fields had been verified, or to provide any supporting documentation.

62.     On July 14, 2025, Plaintiff filed a formal complaint with the Better Business Bureau, and on July 16, 2025, he filed Complaint No. 250714-22318373 with the Consumer Financial Protection Bureau. Both complaints alleged that U.S. Bank failed to conduct a reasonable reinvestigation, failed to provide documentation, and violated its duties under 15 U.S.C. § 1681s-2(b).

63.     Also on July 14, 2025, Plaintiff mailed a second dispute letter to U.S. Bank via USPS Certified Mail Tracking No. 9214 8901 4298 0422 4199 55, which was delivered on July 21, 2025, at 11:01 a.m. in St. Louis, Missouri, and again signed for by Eric Harnetiaux. This letter noted that U.S. Bank's prior response was vague, non-substantive, and failed to meet the requirements of 15 U.S.C. § 1681s-2(b).

64.     On July 29, 2025, U.S. Bank issued a follow-up response to Plaintiff's CFPB and BBB complaints. In the letter, U.S. Bank again stated it had requested an update with the credit bureaus but refused to provide supporting documentation or details of any corrections made.

65.     On August 13, 2025, Plaintiff mailed a Notice of Intent to Sue to U.S. Bank's registered agent, Yvonne Siira, in Milwaukee, Wisconsin, via USPS Certified Mail Tracking No. 9214 8901 4298 0424 4151 60. A follow-up phone call was place to Ms. Siira on September 4, 2025 at 1:26 pm, where she confirmed receiving the notice and forwarded it onto U.S. Bank's legal department.  The Notice outlined U.S. Bank's failure to conduct a reasonable reinvestigation, detailed Plaintiff's credit denial from Sterling Bank on July 28, 2025, and warned that litigation would follow if corrective action was not taken.

66. On August 25, 2025, U.S. Bank issued a final response letter. In this response, U.S. Bank claimed it could not conduct an investigation due to "insufficient information," despite already having received Plaintiff's full dispute packets on two prior occasions, complete with supporting documentation and credit report excerpts. This refusal to investigate directly contradicted U.S. Bank's earlier acknowledgment of Plaintiff's disputes and its claim to have requested "updates" with consumer reporting agencies.

67. As of the filing of this action, U.S. Bank continues to furnish inaccurate, incomplete, and unverifiable information to Equifax, Experian, and TransUnion. Its repeated issuance of vague form letters, refusal to provide documentation, and contradictory positions—first claiming updates were requested and later claiming insufficient information—demonstrate willful and/or negligent noncompliance with 15 U.S.C. § 1681s-2(b). Plaintiff has suffered actual damages as a result, including denial of a $1,000,000 loan from Sterling Bank, emotional distress, reputational harm, and financial loss.

## Suit I - Great Midwest Bank

### Cause of Action 1 -Violation of the Fair Credit Reporting Act 15 U.S.C. § 1681s-2(b) – Furnisher's Duty to Investigate

68. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

69. Defendant Great Midwest Bank is a furnisher of credit information to consumer reporting agencies as defined by 15 U.S.C. § 1681s-2.

70. Pursuant to 15 U.S.C. § 1681s-2(b), after receiving notice of a consumer dispute from a consumer reporting agency, a furnisher must:

    a. conduct an investigation with respect to the disputed information;

b. review all relevant information provided by the consumer reporting agency;

c. report the results of the investigation to the consumer reporting agency; and

d. if the disputed information is inaccurate, incomplete, or cannot be verified, promptly modify, delete, or permanently block the reporting of that information.

71.    Plaintiff submitted multiple disputes to Great Midwest Bank, both directly and indirectly through consumer reporting agencies, beginning June 8, 2025. Plaintiff provided detailed explanations and supporting documents identifying inaccuracies in the reporting of his mortgage loan account, including erroneous balance, payment history, dates of last activity, and other tradeline data.

72.    Great Midwest Bank received actual notice of these disputes, as confirmed by USPS Certified Mail deliveries on June 13, 2025, July 21, 2025, and August 18, 2025, all signed for by bank employee Mark Zych.

73.    Despite such notice, Great Midwest Bank willfully and/or negligently failed to conduct reasonable investigations into the disputes. Instead, the bank responded with non-substantive form letters blaming "bureau processing differences" and claiming its reporting was "true and verifiable" without reconciling inconsistencies or providing supporting documentation.

74.    Great Midwest Bank also failed to notify the credit reporting agencies of Plaintiff's disputes, failed to review and consider all relevant information submitted, and failed to delete or correct inaccurate information as required by 15 U.S.C. § 1681s-2(b)(1)(E).

75.    As a direct and proximate result of Great Midwest Bank's violations of the FCRA, Plaintiff suffered actual damages, including the denial of a $1,000,000 land loan from Sterling Bank, emotional distress, reputational harm, and loss of creditworthiness.

76.     Great Midwest Bank's actions were willful, entitling Plaintiff to statutory damages of up to $1,000 per violation, punitive damages, and reasonable costs pursuant to 15 U.S.C. § 1681n.

77.     In the alternative, Great Midwest Bank's actions were negligent, entitling Plaintiff to actual damages and costs under 15 U.S.C. § 1681o.

78.     WHEREFORE, Plaintiff respectfully requests judgment in his favor against Defendant Great Midwest Bank for actual, statutory, and punitive damages, costs of this action, equitable relief requiring the deletion or correction of inaccurate tradeline data, and such other and further relief as the Court deems just and proper.

**Cause of Action 2 – 15 U.S.C. § 1681e(b) - Failure to Ensure Maximum Possible Accuracy of the Information Furnished**

79.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

80.     Although the Fair Credit Reporting Act imposes a direct duty on consumer reporting agencies to ensure maximum possible accuracy of the information they report, courts, including the Seventh Circuit, have recognized that furnishers of credit information share responsibility to avoid furnishing data that they know or should know is inaccurate, incomplete, or misleading.

81.     Pursuant to 15 U.S.C. § 1681e(b), consumer reporting agencies may only prepare credit reports by following reasonable procedures to assure maximum possible accuracy. A furnisher that knowingly supplies inaccurate, incomplete, or misleading information to a consumer reporting agency is a substantial factor in the failure of the credit reporting system to comply with this mandate.

82.     Great Midwest Bank furnished data to Experian, Equifax, and TransUnion that included false, outdated, and inconsistent information regarding Plaintiff's mortgage account. This

included erroneous balances, terms, last payment dates, dates of last activity, and other material fields.

83.     Plaintiff notified Great Midwest Bank of these inaccuracies in certified dispute letters dated June 8, 2025, July 15, 2025, and August 13, 2025. USPS records confirm delivery and receipt by bank employee Mark Zych on June 13, 2025, July 21, 2025, and August 18, 2025. Despite receiving actual notice, Great Midwest Bank continued to furnish inaccurate and inconsistent information to the consumer reporting agencies.

84.     By knowingly and repeatedly furnishing inaccurate information, and by failing to ensure the accuracy and integrity of its data before reporting, Great Midwest Bank violated its obligations under the FCRA and caused Plaintiff to be reported inaccurately by Experian, Equifax, and TransUnion.

85.     As a direct and proximate result of Great Midwest Bank's conduct, Plaintiff has sustained actual damages, including denial of a $1,000,000 loan from Sterling Bank, loss of creditworthiness, emotional distress, and reputational harm.

86.     Great Midwest Bank's violations were willful, entitling Plaintiff to statutory damages of up to $1,000 per violation, punitive damages, and costs pursuant to 15 U.S.C. § 1681n. In the alternative, Great Midwest Bank's conduct was negligent, entitling Plaintiff to actual damages and costs under 15 U.S.C. § 1681o.

87.     WHEREFORE, Plaintiff respectfully requests judgment in his favor against Defendant Great Midwest Bank for actual, statutory, and punitive damages, costs of this action, equitable relief requiring deletion or correction of inaccurate data, and such other and further relief as the Court deems just and proper.

**Cause of Action 3 – Negligent and Willful Noncompliance - 15 U.S.C. §§ 1681n and 1681o – Actual, Statutory, and Punitive Damages**

88.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

89.     Under 15 U.S.C. § 1681n, any person who willfully fails to comply with any requirement imposed under the Fair Credit Reporting Act with respect to any consumer is liable to that consumer for actual damages sustained, or statutory damages of not less than $100 and not more than $1,000, as well as punitive damages as the Court may allow, and costs of the action together with reasonable fees.

90.     Under 15 U.S.C. § 1681o, any person who negligently fails to comply with any requirement imposed under the Fair Credit Reporting Act with respect to any consumer is liable to that consumer for actual damages sustained and the costs of the action together with reasonable fees.

91.     As set forth in Causes I and II, Defendant Great Midwest Bank failed to conduct reasonable reinvestigations of Plaintiff's disputes, failed to notify consumer reporting agencies of the disputed status of Plaintiff's account, and knowingly furnished inaccurate, incomplete, and misleading information to Experian, Equifax, and TransUnion.

92.     Great Midwest Bank's repeated issuance of non-substantive responses, refusal to reconcile discrepancies, and continued furnishing of inaccurate tradelines despite actual notice of disputes constitutes willful noncompliance with the FCRA under 15 U.S.C. § 1681n. In the alternative, Great Midwest Bank's conduct constitutes negligent noncompliance under 15 U.S.C. § 1681o.

93. As a direct and proximate result of Great Midwest Bank's violations of the FCRA, Plaintiff has suffered actual damages including denial of credit, loss of a $1,000,000 loan opportunity, emotional distress, reputational harm, and loss of creditworthiness.

94. WHEREFORE, Plaintiff respectfully requests judgment in his favor against Defendant Great Midwest Bank for:

    a. Actual damages in an amount to be determined at trial;

    b. Statutory damages of not less than $100 and not more than $1,000 per violation;

    c. Punitive damages in an amount to be determined at trial;

    d. Costs of this action;

    e. Equitable relief requiring deletion or correction of inaccurate information; and

    f. Such other and further relief as the Court deems just and proper.

## SUIT 2 – EXPERIAN INFORMATION SOLUTIONS, INC.

### Cause of Action 1 – 15 U.S.C. § 1681e(b) - Failure to Maintain Reasonable Procedures to Assure Maximum Possible Accuracy

95. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

96. Defendant Experian Information Solutions, Inc. ("Experian") is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

97. Under 15 U.S.C. § 1681e(b), whenever a consumer reporting agency prepares a consumer report, it must follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

98. Plaintiff's Experian consumer credit file contained numerous inaccuracies, including erroneous tradelines furnished by Great Midwest Bank, Summit Credit Union, and U.S. Bank, as

well as outdated personal information and unverifiable inquiries. These inaccuracies rendered Plaintiff's file materially misleading and contributed to the denial of credit.

99.     Experian failed to follow reasonable procedures to ensure the accuracy of Plaintiff's consumer report. Instead, Experian prepared and published reports containing demonstrably false and unverifiable data, despite having received multiple certified disputes from Plaintiff with supporting documentation.

100.    The continued reporting of inaccurate, incomplete, and unverifiable information demonstrates that Experian's procedures were unreasonable and inadequate to comply with 15 U.S.C. § 1681e(b).

101.    As a direct and proximate result of Experian's violations of the FCRA, Plaintiff has suffered actual damages, including denial of a $1,000,000 loan from Sterling Bank, emotional distress, reputational harm, and loss of creditworthiness.

102.    Experian's conduct was willful, entitling Plaintiff to statutory damages, punitive damages, and costs pursuant to 15 U.S.C. § 1681n. In the alternative, Experian's conduct was negligent, entitling Plaintiff to actual damages and costs pursuant to 15 U.S.C. § 1681o.

103.    WHEREFORE, Plaintiff respectfully requests judgment in his favor against Defendant Experian Information Solutions, Inc. for actual, statutory, and punitive damages, costs of this action, equitable relief requiring deletion or correction of inaccurate information, and such other and further relief as the Court deems just and proper.

**Cause of Action 2 – 15 U.S.C. § 1681i(a)(1) - Failure to Conduct a Reasonable Reinvestigation of Disputed Items**

104.    Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

105. Under 15 U.S.C. § 1681i(a)(1)(A), if a consumer disputes the completeness or accuracy of any item in her file, a consumer reporting agency must conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate.

106. Plaintiff submitted multiple written disputes directly to Experian on June 8, 2025, and July 15, 2025, each delivered via certified mail and signed for by Experian employee Lance Rawlings. These disputes clearly identified erroneous tradelines, outdated account information, and unverifiable data, and included supporting documentation.

107. Despite receiving proper notice, Experian failed to conduct a reasonable reinvestigation. Instead, Experian issued generic form letters dated June 26, 2025, July 29, 2025, and September 2, 2025, which refused to process the disputes on false grounds or otherwise failed to identify what information, if any, had been corrected, verified, or deleted.

108. Experian's responses did not provide the results of a reinvestigation as required by 15 U.S.C. § 1681i(a)(6), did not disclose the names or contact information of furnishers as required by § 1681i(a)(6)(B)(iii), and did not delete or modify inaccurate or unverifiable information.

109. As a direct and proximate result of Experian's violations of 15 U.S.C. § 1681i, Plaintiff has suffered actual damages, including denial of a $1,000,000 loan from Sterling Bank, emotional distress, reputational injury, and loss of credit opportunities.

110. Experian's conduct was willful, entitling Plaintiff to statutory damages, punitive damages, and costs pursuant to 15 U.S.C. § 1681n. In the alternative, Experian's conduct was negligent, entitling Plaintiff to actual damages and costs pursuant to 15 U.S.C. § 1681o.

111. WHEREFORE, Plaintiff respectfully requests judgment in his favor against Defendant Experian Information Solutions, Inc. for actual, statutory, and punitive damages, costs of this

action, equitable relief requiring deletion or correction of inaccurate information, and such other and further relief as the Court deems just and proper.

**Cause of Action 3 – 15 U.S.C. § 1681i(a)(5) - Failure to Delete or Correct Inaccurate, Incomplete, or Unverifiable Information Within the Statutory Period**

112.    Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

113.    Under 15 U.S.C. § 1681i(a)(5)(A), if, after any reinvestigation of information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or unverifiable, the consumer reporting agency must promptly delete that item of information from the consumer's file or modify it to reflect the results of the reinvestigation.

114.    Plaintiff submitted detailed disputes to Experian on June 8, 2025, and July 15, 2025, each delivered by certified mail and signed for by Experian employee Lance Rawlings. These disputes identified inaccurate tradelines, unverifiable account data, and outdated information, and included supporting documentation.

115.    Despite having more than thirty (30) days to complete reinvestigations, Experian failed to delete or correct the inaccurate and unverifiable information. Instead, Experian issued generic responses dated June 26, 2025, July 29, 2025, and September 2, 2025, which failed to disclose any verification, correction, or deletion, and continued publishing the disputed entries.

116.    Experian's failure to remove unverifiable data violated its duty under 15 U.S.C. § 1681i(a)(5) to promptly delete or modify inaccurate or unverifiable information from Plaintiff's file within the statutory period.

117.    As a direct and proximate result of Experian's violations of 15 U.S.C. § 1681i(a)(5), Plaintiff has suffered actual damages, including denial of a $1,000,000 loan from Sterling Bank, reputational harm, emotional distress, and loss of credit opportunities.

118. Experian's conduct was willful, entitling Plaintiff to statutory damages, punitive damages, and costs pursuant to 15 U.S.C. § 1681n. In the alternative, Experian's conduct was negligent, entitling Plaintiff to actual damages and costs pursuant to 15 U.S.C. § 1681o.

119. WHEREFORE, Plaintiff respectfully requests judgment in his favor against Defendant Experian Information Solutions, Inc. for actual, statutory, and punitive damages, costs of this action, equitable relief requiring deletion or correction of inaccurate or unverifiable information, and such other and further relief as the Court deems just and proper.

**Cause of Action 4 – Causation of Actual Harm - Emotional Distress, Reputational Damage, and Economic Harm Due to Credit Denial**

120. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

121. As set forth above, Experian willfully and/or negligently violated its obligations under the Fair Credit Reporting Act, including but not limited to:

a. failing to follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit report, in violation of 15 U.S.C. § 1681e(b);

b. failing to conduct reasonable reinvestigations of Plaintiff's disputes, in violation of 15 U.S.C. § 1681i(a); and

c. failing to promptly delete or correct inaccurate, incomplete, or unverifiable information from Plaintiff's credit file, in violation of 15 U.S.C. § 1681i(a)(5).

122. As a direct and proximate result of these violations, Experian caused Plaintiff to suffer actual damages, including:

1. **Credit Denial** – On July 28, 2025, Sterling Bank denied Plaintiff's application for a $1,000,000 loan, citing adverse credit information reported by Experian.

2. **Reputational Harm** – Experian's continued publication of inaccurate tradeline data to third parties diminished Plaintiff's creditworthiness and reputation for financial responsibility.

3. **Emotional Distress** – Plaintiff suffered emotional distress, humiliation, and anxiety from the denial of credit, loss of financial opportunity, and Experian's repeated refusal to correct known inaccuracies.

4. **Economic Harm** – Plaintiff lost the opportunity to obtain favorable credit financing, incurred higher costs of borrowing, and suffered financial injury tied directly to Experian's failure to comply with the FCRA.

123. Experian's actions and omissions constitute willful violations under 15 U.S.C. § 1681n, entitling Plaintiff to actual, statutory, and punitive damages. In the alternative, Experian's conduct constitutes negligent violations under 15 U.S.C. § 1681o, entitling Plaintiff to actual damages.

124. WHEREFORE, Plaintiff respectfully requests judgment in his favor against Defendant Experian Information Solutions, Inc. for actual, statutory, and punitive damages, costs of this action, equitable relief requiring deletion or correction of inaccurate or unverifiable information, and such other and further relief as the Court deems just and proper.

## SUIT 3 – TRANS UNION LLC

**Cause of Action 1 – 15 U.S.C. § 1681e(b) - Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

125. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

126. Plaintiff's TransUnion consumer credit file contained numerous inaccuracies, including erroneous tradelines furnished by Great Midwest Bank, Summit Credit Union, and U.S. Bank, as

well as outdated personal identifiers and unauthorized inquiries. These inaccuracies materially misrepresented Plaintiff's creditworthiness and directly contributed to the denial of credit.

127.    Plaintiff submitted disputes to TransUnion on June 8, 2025, and July 29, 2025, both delivered by certified mail and signed for by TransUnion representative Alfredo Hewitt. Despite receiving detailed disputes and supporting documentation, TransUnion failed to implement reasonable procedures to ensure maximum possible accuracy.

128.    Instead, TransUnion issued generic responses on July 2, 2025, and August 22, 2025, which merely recited boilerplate language, failed to provide documentation verifying the disputed data, and continued publishing inaccurate and unverifiable tradelines in Plaintiff's credit report.

129.    As a direct and proximate result of TransUnion's violations of 15 U.S.C. § 1681e(b), Plaintiff has suffered actual damages, including denial of a $1,000,000 loan from Sterling Bank, reputational harm, emotional distress, and loss of creditworthiness.

130.    TransUnion's conduct was willful, entitling Plaintiff to statutory damages, punitive damages, and costs pursuant to 15 U.S.C. § 1681n. In the alternative, TransUnion's conduct was negligent, entitling Plaintiff to actual damages and costs pursuant to 15 U.S.C. § 1681o.

131.    WHEREFORE, Plaintiff respectfully requests judgment in his favor against Defendant TransUnion LLC for actual, statutory, and punitive damages, costs of this action, equitable relief requiring deletion or correction of inaccurate information, and such other and further relief as the Court deems just and proper.

**Cause of Action 2 – 15 U.S.C. § 1681i(a) - Failure to Conduct a Reasonable Reinvestigation and to Delete or Correct Unverifiable or Inaccurate Information**

132.    Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

133. Under 15 U.S.C. § 1681i(a)(1)(A), if the completeness or accuracy of any item of information in a consumer's file is disputed by the consumer and the consumer notifies the consumer reporting agency directly, the agency must conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the information, or delete the item from the file, within 30 days.

134. Plaintiff submitted written disputes directly to TransUnion on June 8, 2025, and July 29, 2025. These disputes were delivered by certified mail and signed for by TransUnion representative Alfredo Hewitt. Each dispute clearly identified inaccurate and unverifiable tradelines, outdated account information, and erroneous inquiries, and included supporting documents.

135. Despite receiving proper notice, TransUnion failed to conduct a reasonable reinvestigation. Instead, TransUnion issued generic responses dated July 2, 2025, and August 22, 2025, which did not disclose the results of any investigation, failed to identify the furnishers contacted, and failed to provide documentary proof verifying the accuracy of the disputed information.

136. On August 26, 2025, and again on September 2, 2025, TransUnion issued additional template letters in response to Plaintiff's Notice of Intent to Sue, again refusing to delete or correct disputed items, and repeating conclusory statements that disputed entries were "previously verified."

137. TransUnion's responses did not comply with the requirements of 15 U.S.C. § 1681i(a)(6), which obligates the agency to provide written notice of the results of the reinvestigation, including the name, address, and telephone number of any furnisher contacted. Nor did

TransUnion comply with § 1681i(a)(5), which requires deletion or modification of unverifiable information.

138.    As a direct and proximate result of TransUnion's violations of the FCRA, Plaintiff has suffered actual damages, including denial of a $1,000,000 loan from Sterling Bank, emotional distress, reputational harm, and financial loss.

139.    TransUnion's conduct was willful, entitling Plaintiff to statutory damages, punitive damages, and costs pursuant to 15 U.S.C. § 1681n. In the alternative, TransUnion's conduct was negligent, entitling Plaintiff to actual damages and costs pursuant to 15 U.S.C. § 1681o.

140.    WHEREFORE, Plaintiff respectfully requests judgment in his favor against Defendant TransUnion LLC for actual, statutory, and punitive damages, costs of this action, equitable relief requiring deletion or correction of inaccurate or unverifiable information, and such other and further relief as the Court deems just and proper.

### Cause of Action 3 – 15 U.S.C. § 1681i(a)(5) – Failure to Delete or Correct Inaccurate, Incomplete, or Unverifiable Information Within the Statutory Period

141.    Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

142.    Under 15 U.S.C. § 1681i(a)(5)(A), if, after any reinvestigation of information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or unverifiable, the consumer reporting agency must promptly delete that item from the consumer's file or modify it to reflect the results of the reinvestigation.

143.    On June 8, 2025, and July 29, 2025, Plaintiff submitted certified disputes to TransUnion identifying inaccurate tradelines, unverifiable account data, and outdated personal information.

Both letters were delivered in Chester, Pennsylvania, and signed for by TransUnion employee Alfredo Hewitt.

144.    Despite having more than thirty (30) days to conduct reinvestigations, TransUnion failed to delete or correct inaccurate and unverifiable information. Instead, TransUnion issued generic responses dated July 2, 2025, August 22, 2025, August 26, 2025, and September 2, 2025, which merely repeated conclusory statements that disputed entries were "previously verified." These responses did not include any evidence of verification, nor did they result in the deletion or correction of inaccurate or unverifiable data.

145.    By continuing to publish inaccurate and unverifiable information in Plaintiff's credit file, TransUnion willfully and/or negligently violated its duty under 15 U.S.C. § 1681i(a)(5) to promptly delete or modify disputed information within the statutory period.

146.    As a direct and proximate result of TransUnion's violations of the FCRA, Plaintiff has suffered actual damages, including denial of a $1,000,000 loan from Sterling Bank, reputational harm, loss of creditworthiness, and emotional distress.

147.    TransUnion's conduct was willful, entitling Plaintiff to statutory damages, punitive damages, and costs pursuant to 15 U.S.C. § 1681n. In the alternative, TransUnion's conduct was negligent, entitling Plaintiff to actual damages and costs pursuant to 15 U.S.C. § 1681o.

148.    WHEREFORE, Plaintiff respectfully requests judgment in his favor against Defendant TransUnion LLC for actual, statutory, and punitive damages, costs of this action, equitable relief requiring deletion or correction of inaccurate or unverifiable information, and such other and further relief as the Court deems just and proper.

**Cause of Action 4 – Causation of Actual Harm - Emotional Distress, Reputational Damage, and Economic Harm Due to Credit Denial**

149.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set

forth herein.

150. As set forth above, TransUnion willfully and/or negligently violated its obligations under the Fair Credit Reporting Act, including but not limited to:

a. failing to follow reasonable procedures to assure maximum possible accuracy of

Plaintiff's credit report, in violation of 15 U.S.C. § 1681e(b);

b. failing to conduct reasonable reinvestigations of Plaintiff's disputes, in violation of 15

U.S.C. § 1681i(a); and

c. failing to promptly delete or correct inaccurate, incomplete, or unverifiable information

from Plaintiff's credit file, in violation of 15 U.S.C. § 1681i(a)(5).

151. As a direct and proximate result of these violations, TransUnion caused Plaintiff to suffer

actual damages, including:

1. **Credit Denial** – On July 28, 2025, Sterling Bank denied Plaintiff's application for a

   $1,000,000 loan, citing adverse information reported by TransUnion.

2. **Reputational Harm** – TransUnion's continued reporting of inaccurate tradeline data

   diminished Plaintiff's creditworthiness and reputation for financial reliability.

3. **Emotional Distress** – Plaintiff experienced humiliation, stress, and anxiety due to being

   denied credit, losing financial opportunities, and TransUnion's repeated refusal to correct

   known inaccuracies.

4. **Economic Harm** – Plaintiff incurred financial loss from being unable to secure favorable

   loan terms, lost investment opportunities, and suffered increased costs of credit directly

   tied to TransUnion's reporting failures.

152. TransUnion's conduct constitutes willful violations under 15 U.S.C. § 1681n, entitling

Plaintiff to actual, statutory, and punitive damages. In the alternative, TransUnion's conduct

constitutes negligent violations under 15 U.S.C. § 1681o, entitling Plaintiff to actual damages.

153.    WHEREFORE, Plaintiff respectfully requests judgment in his favor against Defendant

TransUnion LLC for actual, statutory, and punitive damages, costs of this action, equitable relief

requiring deletion or correction of inaccurate or unverifiable information, and such other and

further relief as the Court deems just and proper.


## SUIT 4 – Equifax Information Services LLC

### Cause of Action 1 – 15 U.S.C. § 1681e(b) - Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

154.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set

forth herein.

155.    Under 15 U.S.C. § 1681e(b), whenever a consumer reporting agency prepares a consumer

report, it must follow reasonable procedures to assure maximum possible accuracy of the

information concerning the individual about whom the report relates.

156.    Plaintiff's Equifax consumer credit file contained numerous inaccuracies, including

erroneous tradelines furnished by Great Midwest Bank, Summit Credit Union, and U.S. Bank, as

well as outdated personal identifiers and unverifiable inquiries. These inaccuracies materially

misrepresented Plaintiff's creditworthiness and directly contributed to the denial of credit.

157.    Plaintiff submitted disputes to Equifax on June 8, 2025, and July 15, 2025, both delivered

via certified mail to Equifax's office in Atlanta, Georgia. Despite receiving detailed disputes and

supporting documents, Equifax failed to implement reasonable procedures to ensure maximum

possible accuracy.

158.    Instead, Equifax issued form responses dated July 1, 2025, July 22, 2025, July 31, 2025,

and August 11, 2025, which merely recited boilerplate language, did not identify the results of

any meaningful reinvestigation, and continued publishing inaccurate and unverifiable tradelines in Plaintiff's credit report.

159. As a direct and proximate result of Equifax's violations of 15 U.S.C. § 1681e(b), Plaintiff has suffered actual damages, including denial of a $1,000,000 loan from Sterling Bank, reputational harm, emotional distress, and loss of creditworthiness.

160. Equifax's conduct was willful, entitling Plaintiff to statutory damages, punitive damages, and costs pursuant to 15 U.S.C. § 1681n. In the alternative, Equifax's conduct was negligent, entitling Plaintiff to actual damages and costs pursuant to 15 U.S.C. § 1681o.

161. WHEREFORE, Plaintiff respectfully requests judgment in his favor against Defendant Equifax Information Services LLC for actual, statutory, and punitive damages, costs of this action, equitable relief requiring deletion or correction of inaccurate information, and such other and further relief as the Court deems just and proper.

**Cause of Action 2 – 15 U.S.C. § 1681i(a) - Failure to Conduct a Reasonable Reinvestigation and to Delete or Correct Unverifiable or Inaccurate Information**

162. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

163. Equifax Information Services LLC is a consumer reporting agency as defined by 15 U.S.C. § 1681a(f).

164. Under 15 U.S.C. § 1681i(a)(1)(A), if the completeness or accuracy of any item of information in a consumer's file is disputed by the consumer and the consumer notifies the consumer reporting agency directly, the agency must conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate, and record the current status of the information, or delete the item from the file, within 30 days.

165. On June 8, 2025, and July 15, 2025, Plaintiff submitted certified disputes directly to Equifax identifying inaccurate tradelines, unverifiable account data, and outdated information. Both letters were delivered to Equifax's Atlanta office and signed for by its representatives.

166. Despite receiving proper notice and supporting documentation, Equifax failed to conduct reasonable reinvestigations. Instead, Equifax issued template responses dated July 1, 2025, July 22, 2025, July 31, 2025, and August 11, 2025. These letters did not provide meaningful results of reinvestigations, did not identify which furnishers were contacted, and did not provide documentary proof substantiating the continued reporting of disputed items.

167. Equifax's responses failed to comply with 15 U.S.C. § 1681i(a)(6), which requires written notice of the results of reinvestigation, including a consumer report reflecting any changes and the name, address, and telephone number of any furnisher contacted. Equifax further failed to delete or modify unverifiable data as required under § 1681i(a)(5).

168. As a direct and proximate result of Equifax's violations of the FCRA, Plaintiff has suffered actual damages, including denial of a $1,000,000 loan from Sterling Bank, reputational harm, loss of creditworthiness, and emotional distress.

169. Equifax's conduct was willful, entitling Plaintiff to statutory damages, punitive damages, and costs pursuant to 15 U.S.C. § 1681n. In the alternative, Equifax's conduct was negligent, entitling Plaintiff to actual damages and costs pursuant to 15 U.S.C. § 1681o.

170. WHEREFORE, Plaintiff respectfully requests judgment in his favor against Defendant Equifax Information Services LLC for actual, statutory, and punitive damages, costs of this action, equitable relief requiring deletion or correction of inaccurate or unverifiable information, and such other and further relief as the Court deems just and proper.

**Cause of Action 3 – 15 U.S.C. § 1681i(a)(5) – Failure to Delete or Correct Inaccurate, Incomplete, or Unverifiable Information Within the Statutory Period**

171.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

172.     Under 15 U.S.C. § 1681i(a)(5)(A), if, after any reinvestigation of information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or unverifiable, the consumer reporting agency must promptly delete that item of information from the consumer's file or modify it to reflect the results of the reinvestigation.

173.     On June 8, 2025, and July 15, 2025, Plaintiff submitted certified disputes directly to Equifax identifying inaccurate tradelines, outdated account information, and unverifiable inquiries. Both disputes were delivered and signed for in Atlanta, Georgia.

174.     Despite having more than thirty (30) days to reinvestigate, Equifax failed to delete or correct inaccurate and unverifiable information. Instead, Equifax issued boilerplate responses dated July 1, 2025, July 22, 2025, July 31, 2025, and August 11, 2025, which claimed that investigations were completed but provided no evidence of verification and resulted in no meaningful correction or deletion of disputed information.

175.     By continuing to publish inaccurate and unverifiable information after receiving proper disputes, Equifax willfully and/or negligently violated its duty under 15 U.S.C. § 1681i(a)(5) to promptly delete or modify disputed information within the statutory period.

176.     As a direct and proximate result of Equifax's violations of the FCRA, Plaintiff has suffered actual damages, including denial of a $1,000,000 loan from Sterling Bank, reputational harm, emotional distress, and loss of creditworthiness.

177. Equifax's conduct was willful, entitling Plaintiff to statutory damages, punitive damages, and costs pursuant to 15 U.S.C. § 1681n. In the alternative, Equifax's conduct was negligent, entitling Plaintiff to actual damages and costs pursuant to 15 U.S.C. § 1681o.

178. WHEREFORE, Plaintiff respectfully requests judgment in his favor against Defendant Equifax Information Services LLC for actual, statutory, and punitive damages, costs of this action, equitable relief requiring deletion or correction of inaccurate or unverifiable information, and such other and further relief as the Court deems just and proper.

**Cause of Action 4 – Causation of Actual Harm - Emotional Distress, Reputational Damage, and Economic Harm Due to Credit Denial**

179. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

180. As set forth above, Equifax willfully and/or negligently violated its obligations under the Fair Credit Reporting Act, including but not limited to:

a. failing to follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit report, in violation of 15 U.S.C. § 1681e(b);

b. failing to conduct reasonable reinvestigations of Plaintiff's disputes, in violation of 15 U.S.C. § 1681i(a); and

c. failing to promptly delete or correct inaccurate, incomplete, or unverifiable information from Plaintiff's credit file, in violation of 15 U.S.C. § 1681i(a)(5).

181. As a direct and proximate result of these violations, Equifax caused Plaintiff to suffer actual damages, including:

1. **Credit Denial** – On July 28, 2025, Sterling Bank denied Plaintiff's application for a $1,000,000 loan, citing adverse credit information reported by Equifax.

2. **Reputational Harm** – Equifax's continued reporting of inaccurate tradelines to third parties diminished Plaintiff's creditworthiness and financial reputation.

3. **Emotional Distress** – Plaintiff suffered humiliation, stress, and anxiety as a result of being denied credit, losing financial opportunities, and facing repeated refusals by Equifax to correct known inaccuracies.

4. **Economic Harm** – Plaintiff lost the opportunity to obtain favorable loan terms, incurred higher borrowing costs, and sustained financial injury directly tied to Equifax's unlawful reporting practices.

182. Equifax's conduct constitutes willful violations under 15 U.S.C. § 1681n, entitling Plaintiff to actual, statutory, and punitive damages. In the alternative, Equifax's conduct constitutes negligent violations under 15 U.S.C. § 1681o, entitling Plaintiff to actual damages.

183. WHEREFORE, Plaintiff respectfully requests judgment in his favor against Defendant Equifax Information Services LLC for actual, statutory, and punitive damages, costs of this action, equitable relief requiring deletion or correction of inaccurate or unverifiable information, and such other and further relief as the Court deems just and proper.


## SUIT 5 – Summit Credit Union

### Cause of Action 1 – Violation of 15 U.S.C. § 1681s-2(b) – Furnisher's Duty to Investigate and Correct Inaccurate Information

184. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

185. Summit Credit Union is a furnisher of credit information to consumer reporting agencies as defined by 15 U.S.C. § 1681s-2.

186.    Under 15 U.S.C. § 1681s-2(b), after receiving notice of a consumer dispute from a consumer reporting agency, a furnisher must:

a. conduct an investigation with respect to the disputed information;

b. review all relevant information provided by the consumer reporting agency;

c. report the results of the investigation to the consumer reporting agency; and

d. if the disputed information is inaccurate, incomplete, or cannot be verified, promptly modify, delete, or block the reporting of that information.

187.    On June 8, 2025, Plaintiff mailed a certified dispute letter to Summit Credit Union challenging inaccuracies in its reported tradeline, including discrepancies in the Date Opened, Credit Limit, Last Reported Date, and Date of Last Payment. USPS delivery records confirm receipt by Summit on June 16, 2025.

188.    On July 8, 2025, Summit issued a response refusing to confirm or deny whether Plaintiff had an account relationship and asserting that it could not verify Plaintiff's identity, despite Plaintiff having provided government-issued identification and supporting documentation.

189.    On July 16, 2025, Plaintiff mailed a second dispute letter, received July 18, 2025, and signed for by Summit representative Bob Stuard. In response, Summit again refused to verify account information, dismissing Plaintiff's disputes as "potentially frivolous."

190.    On August 12, 2025, Summit responded to Plaintiff's Notice of Intent to Sue through Kevin Skogg, again refusing to correct or delete inaccurate tradeline information and claiming it had conducted a "comprehensive investigation" through Equifax.

191.    Summit's refusal to conduct a good faith investigation, reliance on boilerplate responses, and continued furnishing of disputed tradeline information violated its duties under 15 U.S.C. § 1681s-2(b).

192.     As a direct and proximate result of Summit Credit Union's violations of the FCRA,

Plaintiff has suffered actual damages, including denial of a $1,000,000 loan from Sterling Bank,

reputational harm, emotional distress, and loss of creditworthiness.

193.     Summit Credit Union's conduct was willful, entitling Plaintiff to statutory damages,

punitive damages, and costs pursuant to 15 U.S.C. § 1681n. In the alternative, Summit's conduct

was negligent, entitling Plaintiff to actual damages and costs pursuant to 15 U.S.C. § 1681o.

194.     WHEREFORE, Plaintiff respectfully requests judgment in his favor against Defendant

Summit Credit Union for actual, statutory, and punitive damages, costs of this action, equitable

relief requiring deletion or correction of inaccurate information, and such other and further relief

as the Court deems just and proper.

**Cause of Action 2 – 15 U.S.C. § 1681e(b) - Failure to Follow Reasonable Procedures to
Assure Maximum Possible Accuracy**

195.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set

forth herein.

196.     Although the Fair Credit Reporting Act expressly places the duty to follow reasonable

procedures to assure maximum possible accuracy on consumer reporting agencies, courts within

the Seventh Circuit have recognized that furnishers of credit information, such as Summit Credit

Union, share responsibility for preventing the dissemination of inaccurate or misleading

information to credit reporting agencies.

197.     Plaintiff's credit reports prepared by Experian, Equifax, and TransUnion included a

tradeline furnished by Summit Credit Union that contained numerous inaccuracies, including

erroneous reporting of the Date Opened, Credit Limit, Last Reported Date, and Date of Last

Payment.

198. Plaintiff disputed these inaccuracies through multiple certified letters dated June 8, 2025, and July 16, 2025. Summit received these disputes, confirmed by USPS delivery records signed by its representatives, yet failed to take corrective action.

199. Instead, Summit continued to furnish inaccurate information to consumer reporting agencies, and in an August 12, 2025 response signed by Kevin Skogg, claimed that its reporting was accurate based on an internal review through Equifax. Summit provided no supporting documentation or meaningful verification of its tradeline reporting.

200. Summit's failure to maintain procedures to assure maximum possible accuracy before furnishing data, coupled with its refusal to delete or correct disputed entries, violated its obligations under the FCRA.

201. As a direct and proximate result of Summit's violations, Plaintiff suffered actual damages, including denial of a $1,000,000 loan from Sterling Bank, reputational injury, loss of creditworthiness, financial harm, and emotional distress.

202. Summit's actions were willful, entitling Plaintiff to statutory damages, punitive damages, and costs pursuant to 15 U.S.C. § 1681n. In the alternative, Summit's conduct was negligent, entitling Plaintiff to actual damages and costs pursuant to 15 U.S.C. § 1681o.

203. WHEREFORE, Plaintiff respectfully requests judgment in his favor against Defendant Summit Credit Union for actual, statutory, and punitive damages, costs of this action, equitable relief requiring deletion or correction of inaccurate tradeline information, and such other and further relief as the Court deems just and proper.

**Cause of Action 3 – 15 U.S.C. § 1681s-2(b)(1)(E) – Failure to Delete or Block Inaccurate or Unverifiable Information**

204. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

205. Under 15 U.S.C. § 1681s-2(b)(1)(E), after a furnisher has conducted an investigation of disputed information, if the information is found to be inaccurate, incomplete, or unverifiable, the furnisher must promptly modify, delete, or permanently block the reporting of that information to consumer reporting agencies.

206. Plaintiff submitted disputes to Summit Credit Union on June 8, 2025, and July 16, 2025, both delivered and signed for by Summit representatives. These disputes specifically identified inaccuracies and provided supporting documentation showing the account data was unverifiable.

207. Summit refused to delete or correct the disputed tradeline. In its July 8, 2025 and August 14, 2025 responses, and again in its August 12, 2025 response signed by Kevin Skogg, Summit stated that it could not confirm or deny an account relationship, yet continued furnishing the same inaccurate information to Experian, Equifax, and TransUnion.

208. Summit's continued furnishing of information it admitted it could not confirm or verify violated its statutory duty under § 1681s-2(b)(1)(E).

209. As a direct and proximate result of Summit's violations of the FCRA, Plaintiff has suffered actual damages, including denial of a $1,000,000 loan from Sterling Bank, reputational harm, loss of creditworthiness, financial injury, and emotional distress.

210. Summit's violations were willful, entitling Plaintiff to statutory damages, punitive damages, and costs pursuant to 15 U.S.C. § 1681n. In the alternative, Summit's conduct was negligent, entitling Plaintiff to actual damages and costs pursuant to 15 U.S.C. § 1681o.

211. WHEREFORE, Plaintiff respectfully requests judgment in his favor against Defendant Summit Credit Union for actual, statutory, and punitive damages, costs of this action, equitable

relief requiring deletion or blocking of inaccurate or unverifiable information, and such other and further relief as the Court deems just and proper.

**Cause of Action 4 – Causation of Actual Harm – Emotional Distress, Reputational Damage, and Economic Harm Due to Credit Denial**

212.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

213.    As set forth above, Summit Credit Union willfully and/or negligently violated its obligations under the Fair Credit Reporting Act, including but not limited to:

a. failing to reasonably investigate Plaintiff's disputes under 15 U.S.C. § 1681s-2(b);

b. failing to ensure the accuracy and integrity of information it furnished to consumer reporting agencies, in violation of 15 U.S.C. § 1681e(b); and

c. continuing to furnish information it admitted was unverifiable, in violation of 15 U.S.C. § 1681s-2(b)(1)(E).

214.    As a direct and proximate result of these violations, Summit caused Plaintiff to suffer actual damages, including:

1. **Credit Denial** – Sterling Bank denied Plaintiff's application for a $1,000,000 loan, citing inaccurate information furnished by Summit and reported by the credit bureaus.

2. **Reputational Harm** – Summit's continued furnishing of inaccurate tradelines diminished Plaintiff's creditworthiness and financial reputation in the eyes of creditors and lenders.

3. **Emotional Distress** – Plaintiff suffered humiliation, anxiety, and stress due to being denied credit, losing financial opportunities, and Summit's refusal to correct known inaccuracies despite repeated disputes.

4. **Economic Harm** – Plaintiff lost the opportunity to obtain favorable loan terms, sustained financial injury, and incurred increased costs of credit directly tied to Summit's inaccurate reporting.

215. Summit's conduct constitutes willful violations under 15 U.S.C. § 1681n, entitling Plaintiff to actual, statutory, and punitive damages. In the alternative, Summit's conduct constitutes negligent violations under 15 U.S.C. § 1681o, entitling Plaintiff to actual damages.

216. WHEREFORE, Plaintiff respectfully requests judgment in his favor against Defendant Summit Credit Union for actual, statutory, and punitive damages, costs of this action, equitable relief requiring deletion or correction of inaccurate or unverifiable information, and such other and further relief as the Court deems just and proper.

## SUIT 6 – U.S. Bank National Association

**Cause of Action 1 – Violation of 15 U.S.C. § 1681s-2(b) – Furnisher's Duty to Investigate and Correct Inaccurate Information**

217. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

218. U.S. Bank National Association is a furnisher of credit information to consumer reporting agencies as defined by 15 U.S.C. § 1681s-2.

219. Under 15 U.S.C. § 1681s-2(b), after receiving notice of a consumer dispute from a consumer reporting agency, a furnisher must:

a. conduct an investigation with respect to the disputed information;

b. review all relevant information provided by the consumer reporting agency;

c. report the results of the investigation to the consumer reporting agency; and

d. if the disputed information is inaccurate, incomplete, or cannot be verified, promptly modify, delete, or block the reporting of that information.

220. On June 8, 2025, Plaintiff mailed a certified dispute letter to U.S. Bank challenging inaccuracies in its reporting of Plaintiff's revolving credit account ending in 6467, including discrepancies in the High Credit, Last Reported Date, Date Last Active, and Date of Last Payment. The dispute was delivered June 13, 2025, and signed for by U.S. Bank representative Eric Harnetiaux.

221. On July 8, 2025, U.S. Bank responded by stating only that it had "requested an update" with consumer reporting agencies. The letter did not identify what information was corrected, what was verified, or provide any supporting documentation.

222. On July 14, 2025, Plaintiff filed a Better Business Bureau complaint and a Consumer Financial Protection Bureau complaint (No. 250714-22318373) against U.S. Bank. On that same day, Plaintiff mailed a second dispute letter, which was delivered July 21, 2025, and again signed for by Eric Harnetiaux. U.S. Bank's subsequent response once again failed to provide documentation or evidence of corrective action.

223. On July 29, 2025, U.S. Bank issued another response, again using vague boilerplate language and refusing to provide meaningful results of any reinvestigation.

224. On August 13, 2025, Plaintiff mailed a Notice of Intent to Sue to U.S. Bank's registered agent in Milwaukee, Wisconsin. On August 25, 2025, U.S. Bank issued a final response claiming it lacked sufficient information to investigate — despite already having Plaintiff's prior disputes and supporting documentation.

225.    By issuing contradictory responses — first claiming it had requested updates with credit reporting agencies, then claiming it lacked information to investigate — U.S. Bank failed to meet its obligations under § 1681s-2(b). Its responses demonstrate that no reasonable investigation was conducted, and its continued furnishing of inaccurate data violated its statutory duties.

226.    As a direct and proximate result of U.S. Bank's violations of the FCRA, Plaintiff has suffered actual damages, including denial of a $1,000,000 loan from Sterling Bank, reputational harm, financial injury, loss of creditworthiness, and emotional distress.

227.    U.S. Bank's conduct was willful, entitling Plaintiff to statutory damages, punitive damages, and costs pursuant to 15 U.S.C. § 1681n. In the alternative, U.S. Bank's conduct was negligent, entitling Plaintiff to actual damages and costs pursuant to 15 U.S.C. § 1681o.

228.    WHEREFORE, Plaintiff respectfully requests judgment in his favor against Defendant U.S. Bank National Association for actual, statutory, and punitive damages, costs of this action, equitable relief requiring deletion or correction of inaccurate information, and such other and further relief as the Court deems just and proper.

### Cause of Action 2 – 15 U.S.C. § 1681e(b) - Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

229.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

230.    Although the Fair Credit Reporting Act expressly places the duty to follow reasonable procedures to assure maximum possible accuracy on consumer reporting agencies, courts within the Seventh Circuit have recognized that furnishers of credit information, such as U.S. Bank National Association, share responsibility for ensuring that data they provide to consumer reporting agencies is accurate and not misleading.

231.    U.S. Bank furnished tradeline information concerning Plaintiff's revolving credit account

ending in 6467 that contained multiple inaccuracies, including erroneous reporting of High Credit, Last Reported Date, Date Last Active, and Date of Last Payment. These inaccuracies materially misrepresented Plaintiff's credit obligations and contributed to the denial of credit.

232.    Plaintiff disputed these inaccuracies through certified mailings on June 8, 2025, and July 14, 2025, both of which were delivered to U.S. Bank and signed for by its representative, Eric Harnetiaux.

233.    Despite receiving notice of these errors, U.S. Bank failed to correct or remove inaccurate data, and continued to furnish misleading information to Experian, Equifax, and TransUnion.

234.    U.S. Bank's failure to maintain procedures reasonably designed to prevent the reporting of inaccurate information, and its refusal to reconcile contradictions in Plaintiff's credit file, demonstrate violations of 15 U.S.C. § 1681e(b).

235.    As a direct and proximate result of U.S. Bank's violations, Plaintiff has suffered actual damages, including denial of a $1,000,000 loan from Sterling Bank, reputational harm, loss of creditworthiness, financial injury, and emotional distress.

236.    U.S. Bank's conduct was willful, entitling Plaintiff to statutory damages, punitive damages, and costs pursuant to 15 U.S.C. § 1681n. In the alternative, U.S. Bank's conduct was negligent, entitling Plaintiff to actual damages and costs pursuant to 15 U.S.C. § 1681o.

237.    WHEREFORE, Plaintiff respectfully requests judgment in his favor against Defendant U.S. Bank National Association for actual, statutory, and punitive damages, costs of this action, equitable relief requiring deletion or correction of inaccurate tradeline information, and such other and further relief as the Court deems just and proper.

**Cause of Action 3 – 15 U.S.C. § 1681s-2(b)(1)(E) – Failure to Delete or Block Inaccurate or Unverifiable Information**

238. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

239. U.S. Bank National Association is a furnisher of credit information to consumer reporting agencies as defined by 15 U.S.C. § 1681s-2.

240. Under 15 U.S.C. § 1681s-2(b)(1)(E), after a furnisher has conducted an investigation of disputed information, if the information is found to be inaccurate, incomplete, or unverifiable, the furnisher must promptly modify, delete, or permanently block the reporting of that information to consumer reporting agencies.

241. On June 8, 2025, and July 14, 2025, Plaintiff submitted certified disputes to U.S. Bank identifying inaccurate tradeline data on his revolving credit account ending in 6467.

242. These disputes included supporting documentation demonstrating inconsistencies in High Credit, Last Reported Date, Date Last Active, and Date of Last Payment. Both disputes were delivered and signed for by U.S. Bank representative Eric Harnetiaux.

243. Despite admitting in its August 25, 2025 response that it lacked sufficient information to confirm the accuracy of Plaintiff's account, U.S. Bank nevertheless continued to furnish the same inaccurate and unverifiable data to Experian, Equifax, and TransUnion.

244. U.S. Bank's continued furnishing of tradeline information it could not verify violated its statutory duty under § 1681s-2(b)(1)(E).

245. As a direct and proximate result of U.S. Bank's violations of the FCRA, Plaintiff has suffered actual damages, including denial of a $1,000,000 loan from Sterling Bank, reputational harm, loss of creditworthiness, financial injury, and emotional distress.

246. U.S. Bank's violations were willful, entitling Plaintiff to statutory damages, punitive

damages, and costs pursuant to 15 U.S.C. § 1681n. In the alternative, U.S. Bank's conduct was negligent, entitling Plaintiff to actual damages and costs pursuant to 15 U.S.C. § 1681o.

247.    WHEREFORE, Plaintiff respectfully requests judgment in his favor against Defendant U.S. Bank National Association for actual, statutory, and punitive damages, costs of this action, equitable relief requiring deletion or blocking of inaccurate or unverifiable information, and such other and further relief as the Court deems just and proper.

**Cause of Action 4 – Causation of Actual Harm – Emotional Distress, Reputational Damage, and Economic Harm Due to Credit Denial**

248.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

249.    As set forth above, U.S. Bank willfully and/or negligently violated its obligations under the Fair Credit Reporting Act, including but not limited to:

a. failing to reasonably investigate Plaintiff's disputes under 15 U.S.C. § 1681s-2(b);

b. failing to ensure the accuracy and integrity of information it furnished to consumer reporting agencies, in violation of 15 U.S.C. § 1681e(b); and

c. continuing to furnish information it admitted was unverifiable, in violation of 15 U.S.C. § 1681s-2(b)(1)(E).

250.    As a direct and proximate result of these violations, U.S. Bank caused Plaintiff to suffer actual damages, including:

1. **Credit Denial** – Sterling Bank denied Plaintiff's application for a $1,000,000 loan, citing inaccurate information furnished by U.S. Bank and reported by the credit bureaus.

2. **Reputational Harm** – U.S. Bank continued furnishing of inaccurate tradelines diminished Plaintiff's creditworthiness and financial reputation in the eyes of creditors and lenders.

3. **Emotional Distress** – Plaintiff suffered humiliation, anxiety, and stress due to being denied credit, losing financial opportunities, and U.S. Banks's refusal to correct known inaccuracies despite repeated disputes.

4. **Economic Harm** – Plaintiff lost the opportunity to obtain favorable loan terms, sustained financial injury, and incurred increased costs of credit directly tied to U.S. Bank's inaccurate reporting.

251. U.S. Bank's conduct constitutes willful violations under 15 U.S.C. § 1681n, entitling Plaintiff to actual, statutory, and punitive damages. In the alternative, U.S. Bank's conduct constitutes negligent violations under 15 U.S.C. § 1681o, entitling Plaintiff to actual damages.

252. WHEREFORE, Plaintiff respectfully requests judgment in his favor against Defendant U.S. Bank National Association for actual, statutory, and punitive damages, costs of this action, equitable relief requiring deletion or correction of inaccurate or unverifiable information, and such other and further relief as the Court deems just and proper.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against each Defendant named herein, jointly and severally where permitted by law, and grant the following relief:

1. Actual Damages – Award Plaintiff actual damages in an amount to be determined at trial, as authorized by 15 U.S.C. §§ 1681n(a)(1)(A) and 1681o(a)(1), for all losses proximately

caused by Defendants' violations of the Fair Credit Reporting Act, including but not limited to:

- Emotional distress, humiliation, mental anguish, and suffering;

- Reputational harm and loss of creditworthiness;

- Loss of credit opportunities and denials of credit;

- Increased cost of credit and higher interest rates; and

- Other pecuniary and non-pecuniary damages.

2. Statutory Damages – Award statutory damages of up to $1,000 per violation per Defendant for willful noncompliance, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

3. Punitive Damages – Award punitive damages against each Defendant for willful and reckless violations of the Fair Credit Reporting Act, pursuant to 15 U.S.C. § 1681n(a)(2), in an amount sufficient to punish Defendants and deter similar unlawful conduct.

4. Costs and Fees – Award Plaintiff the costs of this action, including reasonable fees, litigation expenses, and expert witness fees, pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2).

5. Injunctive and Equitable Relief – Order that each Defendant:

- Permanently delete, suppress, or correct all inaccurate, incomplete, and unverifiable information from Plaintiff's consumer reports and credit files;

- Implement and maintain reasonable procedures to assure maximum possible accuracy of consumer information in compliance with 15 U.S.C. § 1681e(b);

- Conduct full and reasonable reinvestigations in compliance with 15 U.S.C. § 1681i; and

- Cease and desist from any future violations of the Fair Credit Reporting Act with respect to Plaintiff.

6. Pre- and Post-Judgment Interest – Award Plaintiff pre-judgment and post-judgment interest at the maximum legal rate, as permitted by law.

7. Plaintiff hereby demand a trial by jury on all claims so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

8. Other Relief – Grant such other and further relief as the Court deems just, equitable, and proper.

Dated: September 10th, 2025

Respectfully submitted,

*/s/ Brian T. Peterson*
Brian Peterson, Plaintiff, Pro Se
590 Mill Pond Road
Dousman, WI 53118
rzu1947@gmail.com
(612) 812-0135

## VERIFICATION

I, Brian T. Peterson, am the Plaintiff and pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that I am the Plaintiff in the foregoing *Verified Complaint for Damages with Jury Demand*, that I have read the foregoing Complaint, and that the facts stated therein are true and correct to the best of my knowledge, information, and belief.

**I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.**

Executed on this 10th day of September 2025.      */s/ Brian T. Peterson*