UNITED STATES DISTRICT COURT
EASTERN DISTRICT of WISCONSIN

BRIAN T. PETERSON,

    Plaintiff,

v.

GREAT MIDWEST BANK;
EXPERIAN INFORMATION
SOLUTIONS, INC.; EQUIFAX
INFORMATION SERVICES LLC;
TRANSUNION LLC; U.S.
BANCORP, and SUMMIT CREDIT
UNION,

    Defendants.

Case No. **2:25-cv-01386-WCG-SCD**

Judge William C. Griesbach
Magistrate Judge Stephen C. Dries

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT SUMMIT CREDIT UNION'S MOTION TO DISMISS**



NOW COMES Plaintiff Brian T. Peterson, Pro Se, and hereby submits this *Memorandum of Law in Opposition to Defendant Summit Credit Union's Motion to Dismiss* pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth herein, the Defendant's motion is without merit, misstates both law and fact, and should be denied in its entirety.

Plaintiff has stated plausible and well-supported claims under the Fair Credit Reporting Act ("FCRA"), including violations of *15 U.S.C. § 1681s-2(b)*, based on Summit's failure to conduct a reasonable reinvestigation upon receiving notice of a dispute from a consumer

1

reporting agency, as well as allegations of inaccurate reporting and resulting harm. Plaintiff has further alleged actual damages, including the denial of credit, and has provided supporting documentation and sworn declarations. Accordingly, the Verified Complaint satisfies the applicable pleading standards, and the case must proceed to discovery.

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S INTRODUCTION

Defendant Summit Credit Union's introductory assertion that Plaintiff "fails to state a claim" under the Fair Credit Reporting Act (FCRA) is without merit. Defendant mischaracterizes both the factual allegations and the legal basis for Plaintiff's claims.

First, Plaintiff's Complaint and sworn Declaration allege that Summit received notice of Plaintiff's dispute not only directly from the Plaintiff, but also through at least one consumer reporting agency (CRA)—Equifax. *(emphasis added)* This is a critical distinction. Under 15 U.S.C. § 1681s-2(b), a furnisher's obligations are triggered when the furnisher receives notice of a dispute from a CRA, which Plaintiff has clearly alleged through both documentary exhibits and sworn declaration.

Second, Summit's contention that "complaints received directly from consumers do not trigger a furnisher's obligations under 1681s-2(b)" ignores well-established precedent recognizing that once a furnisher is notified by a CRA of a consumer dispute, the furnisher must conduct a reasonable reinvestigation, correct inaccuracies, and report results to all CRAs. Summit's own internal correspondence dated August 12, 2025, admits it received a dispute via Equifax—thereby triggering its statutory duties. *(emphasis added)*

2

Third, with respect to § 1681e(b), Summit is correct that the provision applies to CRAs—but Count 2 is plead in the alternative and based on Summit's dual role in both furnishing and verifying information. Courts have permitted alternative theories where discovery may reveal a defendant's broader role in the data lifecycle.

Finally, Plaintiff's claims for damages under §§ 1681n and 1681o are supported by actual harm, including a documented loan denial from Sterling Bank on August 4, 2025, resulting directly from the unresolved dispute.

Accordingly, Defendant's introductory claim that Plaintiff has failed to allege facts sufficient to trigger FCRA obligations or support relief is conclusory and contradicted by the pleadings and evidence already in the record.

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S "ALLEGATIONS" SECTION

Summit's summary of Plaintiff's allegations selectively frames the claims and omits critical factual and procedural context.

First, Summit concedes that it is a "furnisher" under the FCRA, and Plaintiff's allegations are consistent with that status. Plaintiff has alleged—and documented in his Declaration and attached exhibits—that Summit reported materially inaccurate information regarding a tradeline, including discrepancies in the "Date Opened," "Credit Limit," and "Date of Last Payment." These inaccuracies were specifically and repeatedly disputed in writing by Plaintiff in June, July, and August of 2025.

3

Second, contrary to Summit's narrow framing, Plaintiff does not allege merely that Summit failed to respond to his letters. The Complaint specifically alleges that Summit failed to conduct a reasonable reinvestigation even after receiving notice of the dispute via Equifax, a consumer reporting agency. (*emphasis added*) This CRA notice is independently sufficient to trigger Summit's statutory obligations under 15 U.S.C. § 1681s-2(b), regardless of any direct disputes from Plaintiff.

Third, Plaintiff's claim under 15 U.S.C. § 1681e(b) is pleaded in the alternative and is directed toward Summit's failure to ensure the accuracy of information it routinely furnishes to CRAs. While § 1681e(b) typically applies to CRAs, courts have allowed plaintiffs to proceed under this section where the facts suggest a furnisher's conduct was so integrated into the reporting pipeline that it functioned as a de facto CRA or violated similar obligations of accuracy and diligence.

Lastly, Summit acknowledges that Plaintiff has alleged actual harm and claimed statutory and punitive damages. These damages are not speculative. Plaintiff has documented a $1,000,000 land loan denial directly resulting from the unresolved inaccurate tradeline and provided supporting declarations. These allegations sufficiently support claims under *§§ 1681n* and *1681o*.

Defendant's attempt to recast the allegations as legally deficient misrepresents both the scope of the *Verified Complaint* and the factual assertions set forth in the accompanying Declaration and exhibits.

4

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S "LEGAL STANDARD" SECTION

Plaintiff does not dispute the general Rule 12(b)(6) standard as stated by Defendant. However, Summit's application of that standard is flawed because it disregards the well-pleaded factual allegations, documentary exhibits, and sworn Declaration that collectively establish a plausible claim for relief under the FCRA. *(emphasis added)*

The Complaint sets forth specific facts, not mere conclusory statements. Plaintiff identifies the tradeline at issue, the precise inaccuracies being reported, and the timeline of mailed disputes. Attached to the Complaint and Declaration are USPS delivery confirmations, copies of dispute letters, and Summit's own written responses—facts which, if taken as true (as required under *Iqbal* and *Twombly*), clearly support a plausible inference that Summit failed to comply with its reinvestigation duties under *15 U.S.C. § 1681s-2(b)*.

Moreover, Summit's contention that a statute "does not apply to the facts alleged" is itself a legal conclusion inappropriate for resolution on a motion to dismiss. Courts must resolve such disputes at the summary judgment stage or trial—not on the pleadings. See *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 555 (7th Cir. 2012).

Here, Plaintiff has alleged more than sufficient factual content to nudge his claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Defendant's legal standard argument fails because it improperly isolates the Complaint's legal theories from its well-documented factual support.

## PLAINTIFF'S RESPONSE IN OPPOSITION TO ARGUMENT I: *"PETERSON FAILS TO STATE A CLAIM UNDER 15 U.S.C. § 1681s-2(b)"*

Summit's assertion that Counts 1 and 3 must be dismissed because Plaintiff only submitted disputes directly, and not through a consumer reporting agency (CRA), misstates both the factual allegations and applicable law.

First, the Complaint does allege that a consumer reporting agency notified Summit of Plaintiff's dispute. In Paragraph 56 and as further evidenced by Summit's own written response dated August 12, 2025, Summit explicitly acknowledges receipt of a dispute via Equifax, thereby satisfying the statutory prerequisite under § 1681i(a)(2). This CRA notice is not merely inferred—it is documented and attached to Plaintiff's Declaration. Summit's reliance on the absence of such an allegation is thus contradicted by the record.

Second, Summit's reading of *Charles v. Fargo* is misplaced. That case dismissed claims where a plaintiff wholly failed to plead CRA notice. Here, Plaintiff has provided both a plausible factual allegation and supporting documentation showing CRA involvement, and thus the holding in *Charles* is inapplicable.

Third, Summit's fallback argument—that Plaintiff fails to explain how the tradeline was inaccurate—is incorrect. Plaintiff identified multiple specific inaccuracies in the furnished tradeline, including:

- An erroneous "Date Opened" inconsistent across bureaus;
- A false "Credit Limit" that was inflated;
- Inaccurate "Last Reported Date" and "Date of Last Payment";

These are not general grievances—they are factual assertions, tied to documentary evidence and described in both the Complaint and sworn Declaration.

6

Moreover, the FCRA requires that furnishers conduct a reasonable investigation once they receive CRA notice—not that consumers prove the error beforehand. See *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1155 (9th Cir. 2009). Whether the information was ultimately accurate is a factual question that cannot be resolved at the pleading stage.

Summit's motion improperly invites the Court to weigh facts and disregard plausible inferences—both inappropriate on a motion to dismiss under *Iqbal* and *Twombly*. Accordingly, Plaintiff has stated valid claims under § 1681s-2(b), and Counts 1 and 3 must be allowed to proceed.

## PLAINTIFF'S RESPONSE IN OPPOSITION TO ARGUMENT II: *"PETERSON FAILS TO STATE A CLAIM UNDER 15 U.S.C. § 1681e(b)"*

Summit argues that *15 U.S.C. § 1681e(b)* applies only to consumer reporting agencies (CRAs), and because Summit is a furnisher, Plaintiff's Count 2 fails as a matter of law. However, this argument is premature and inappropriate for dismissal at this stage of litigation.

Plaintiff agrees that *§ 1681e(b)* traditionally governs CRAs. However, the Complaint pleads Count 2 in the alternative, and the facts alleged leave open the possibility that Summit may have assumed functional roles beyond that of a traditional furnisher—such as verifying or compiling consumer information in a manner akin to a CRA. Courts have recognized that where a defendant's conduct straddles traditional CRA and furnisher functions, dismissal at the pleading stage is improper. See *Poore v. Sterling Testing Sys., Inc.*, 410 F. Supp. 2d 557, 570 (E.D. Ky. 2006) (denying summary judgment where defendant's role was not clearly limited to one FCRA category).

7

The Seventh Circuit's opinion in *Denan v. Trans Union LLC*, 959 F.3d 290 (7th Cir. 2020), cited by Summit, is distinguishable. That case involved a traditional CRA and clear-cut roles. Here, the facts regarding Summit's methods of furnishing, verifying, and responding to disputes remain undeveloped. Plaintiff has alleged that Summit not only furnishes data but actively verifies, maintains, and refuses to correct it, even after being notified of its inaccuracies—functions that may exceed those of a mere furnisher.

Plaintiff respectfully asserts that discovery is necessary to determine whether Summit's actions were limited solely to those of a furnisher or if its conduct supports a claim under *§ 1681e(b)*. Accordingly, Count 2 is properly pleaded in the alternative and should not be dismissed at this preliminary stage.

## PLAINTIFF'S RESPONSE IN OPPOSITION TO ARGUMENT III: *"PETERSON FAILS TO STATE A CLAIM OF ACTUAL HARM"*

Summit argues that because no FCRA violation has been alleged, Plaintiff's claim for damages under *15 U.S.C. §§ 1681n* (willful violations) and *1681o* (negligent violations) fails as a matter of law. This argument collapses because it is premised on the flawed conclusion that no underlying FCRA violation exists—a position refuted above in response to Arguments I and II.

As detailed in Plaintiff's Complaint and accompanying Declaration, Summit failed to investigate or correct materially inaccurate information after receiving notice of a dispute from Equifax, a consumer reporting agency. This alone supports a plausible claim under *§ 1681s-2(b)*, triggering the statutory remedies of *§§ 1681n* and *1681o*.

Moreover, Plaintiff has specifically pled actual harm, including but not limited to:

8

- Denial of a $1,000,000 land acquisition loan from Sterling Bank on August 4, 2025, as documented in the *Adverse Action Letter*;
- Emotional distress and reputational harm stemming from the dissemination of inaccurate credit information;
- Loss of creditworthiness, which impacted his ability to secure financing and invest in real estate opportunities.

These harms are not speculative—they are documented, particularized, and directly traceable to Summit's reporting and reinvestigation failures. Under *Crabill v. Trans Union, LLC*, 259 F.3d 662 (7th Cir. 2001), such injuries are sufficient to state a claim for actual damages.

Additionally, the Complaint alleges that Summit acted with willful indifference, refusing to correct known inaccuracies even after repeated disputes and certified mail receipts. This conduct, if proven, supports a claim for punitive damages under *§ 1681n*.

Therefore, Count 4 is properly pled and supported by both factual allegations and attached documentation. Summit's motion to dismiss this count should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Summit Credit Union's *Motion to Dismiss* in its entirety, Order Summit to Answer *Plaintiff's Verified Complaint*, and allow the case to proceed to discovery.

9

Dated: October 10th, 2025                    Respectfully submitted,

*Brian T Peterson*
Brian T. Peterson, Plaintiff, Pro Se
590 Mill Pond Road
Dousman, WI 53118
Rzu1947@gmail.com
(612) 812-0135

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of October 2025, I caused to be placed in the United States Mail, first-class postage prepaid, the foregoing *PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT SUMMIT CREDIT UNION'S MOTION TO DISMISS* addressed to:

Clerk of the Court
U.S. District Court
Eastern District of Wisconsin
517 E Wisconsin Ave.
Milwaukee, WI 53202

I further certify that the same was emailed to counsel of record and also sent through the USPS, first-class postage prepaid to Mary C Turke with Turke & Strauss LLP at 613 Williamson St – Ste 201, Madison, WI 53703.

*Brian T Peterson*
Brian T. Peterson

10

Case 2:25-cv-01386-WCG   Filed 10/16/25   Page 10 of 10   Document 35