# EXHIBIT E

2009 WL 116972
Only the Westlaw citation is currently available.
United States District Court, S.D. Ohio, Western
Division.

Frank FERRARELLI, Plaintiff,
v.
FEDERATED FIN. CORP. OF AMERICA,
Defendant.

No. 1:07cv685.
|
Jan. 16, 2009.

**Attorneys and Law Firms**

Steven Charles Shane, Bellevue, KY, Stephen R. Felson,
Cincinnati, OH, for Plaintiff.

Robert Glenn Knirsch, James Wong Young Oh, Javitch,
Block & Rathbone, Cleveland, OH, Robert K. Hogan,
Javitch, Block, Eisen & Rathbone, Cincinnati, OH, for
Defendant.

*OPINION & ORDER*

MICHAEL R. BARRETT, District Judge.

**\*1** This matter is before the Court upon Defendant
Federated Financial Corporation of America's Motion for
Summary Judgment. (Doc. 39) Plaintiff Frank Ferrarelli
has filed a Response in Opposition (Doc. 54) and
Defendant has filed a Reply (Doc. 59).

**I. BACKGROUND**

Plaintiff Frank Ferrarelli alleges that he is a victim of
identity theft, which has resulted in multiple accounts
being opened in his name without his knowledge or
consent. (Doc. 34, ¶¶ 4, 5) One of these accounts was for
a business credit card with Advanta Bank Corporation
("the Advanta Account"). (*Id.,* ¶ 6)

Defendant Federated Financial Corporation ("Federated")
purchases portfolios of charged-off business credit card
accounts. (Doc. 39–2, Flees Decl., Ex. B) Federated
acquired the Advanta Account in a portfolio which
included approximately 1,480 accounts. (Doc. 39–32,
Flees Depo. at 11–12) As part of the purchase agreement,
Federated received past monthly statements for the
Advanta Account from Advanta. (Flees Decl., Ex. C)

Ferrarelli first became suspicious that he had become the
victim of identity theft when he began to receive
telephone calls from various debt collectors concerning
accounts that were not familiar to him. (Doc. 53,
Ferrarelli Decl., ¶ 1) Ferrarelli discovered that the identity
thief was his business partner, Jeffrey Jones, and on
October 2, 2006, Ferrarelli filed a report with the
Hamilton County Sheriff. (Doc. 39–30, Ferrarelli Depo. at
83–84; Ferrarelli Decl., ¶ 6; Flees Decl., Ex. "W") Jones
operated a business named Urban Opportunities out of a
building owned by Ferrarelli at 108 W. 9th Street.
(Ferrarelli Decl. ¶ 7) The Advanta Account was opened in
the name of Urban Opportunities and designated
Ferrarelli as the individual signer. (Flees Decl., Ex. U)
The Advanta Account listed the address for the account as
108 W. 9th Street. (*Id.*) However, Ferrarelli never used
this building as his mailing address. (Ferrarelli Decl. ¶ 7)

On January 2, 2007, Ferrarelli requested each of the three
major credit reporting agencies to place an extended fraud
alert on his credit reports. (Ferrarelli Decl., ¶ 3)

On January 11, 2007, Federated sent a letter to Ferrarelli
at the 108 W. 9th Street address requesting that he contact
their office to make payment arrangements. (Flees Decl. ¶
15, Ex. E) On February 15, 2007, Federated sent a second
letter to Ferrarelli, informing that his account had been
reported to the credit bureau. (*Id.,* Ex. G) Federated sent a
third letter on March 19, 2007, requesting that Ferrarelli
make a payment in full and to contact their office. (*Id.,*
Ex. H) Federated also made several calls in an attempt to
reach Ferrarelli during the month of March. (*Id.,* ¶ 19)
Federated never reached Ferrarelli or received any
indication that the number called was not that of Ferrarelli
or Urban Opportunities. (*Id.*) However, Ferrarelli claims
that he did not learn of the Advanta Account until April of
2007. (Ferrarelli Decl., ¶ 4) The Advanta Account
appeared on his credit report as being "past due" and/or
"in collection." (Ferrarelli Decl., ¶¶ 5 & Exs. L, M)

**\*2** On April 30, 2007, Ferrarelli sent a dispute letter to
TransUnion, a credit reporting agency. (Ferrarelli Decl., ¶
6 & Ex. B) In his letter, Ferrarelli enclosed an FTC Fraud

Affidavit and the Hamilton County Sheriff's Police Report. (*Id.*) Ferrarelli copied Federated with this letter and exhibits. (*Id*) Federated received the letter on May 3, 2007. (*Id.,* Ex. C; Flees Decl., Ex. D)

On May 4, 2007, Ferrarelli's letter was forwarded to Federated's Vice President of Portfolio Services, Joan Flees. (Flees Decl., ¶ 21 & Ex. D) Flees reviewed the information Federated had in its possession at the time and noted: (1) an Accurint report[i] identified Jeffrey Jones as a "business associate" of Ferrarelli; (2) the police report made no mention of Federated Financial Corp. or the underlying Advanta Account; (3) the Accurint report showed an association between Ferrarelli and Urban Opportunities and its address; and (4) the fraud affidavit sent by Ferrarelli was missing the signature page. (*Id.*)

On May 4, 2007, Federated responded to Ferrarelli:

> We have researched business records and the address the monthly statements were sent to and have discovered you were involved with both. Your account will be forwarded to our legal counsel in Ohio on May 30, 2007.

(Flees Decl., Ex. J).

On May 12, 2007, TransUnion notified Federated of Ferrarelli's dispute of the account via an electronic Automated Consumer Dispute Verification ("ACDV"). (Flees Decl. ¶ 27, Exs. D, P) TransUnion did not provide Federated with any documentation, but provided the following information: "Dispute Code 1: 103—Claims true identity fraud, account fraudulently opened. Provide or confirm complete ID." (*Id.*)

On May 17, 2007, Ferrarelli filed an action in this Court which was voluntarily dismissed on May 23, 2007. After notice of the federal lawsuit and the ACDV from TransUnion, Patrick David, a Portfolio Manager for Federated, investigated Ferrarelli's identity theft assertion. (Flees Decl., ¶ 25; Doc. 39–28, Patrick David Decl. ¶¶ 1, 4) David contacted three merchants listed on the Advanta Account statement, and asked them to gather information regarding those purchases. (Flees Decl., ¶ 25, Exs. D, K, L, M; David Decl. ¶¶ 4–5) The merchants faxed David a copy of the purchase receipts and the signed credit card slips which showed that Jones had signed each credit card slip. (*Id.*) David also accessed the

Ohio Secretary of State website and retrieved the Urban Opportunities articles of organization, which showed Jones as the company's authorized representative. (Flees Decl., ¶ 28, Exs. D, Q; David Decl. ¶ 6) David did not generate a formal report, but he concluded that Ferrarelli and David had a business relationship which had gone bad. (Doc. 39–34, Patrick David Depo. at 61, 101)

On May 25, 2007, Ted Sobieski investigated the ACDV from TransUnion. (Doc. 52, Sobieski Depo. at 33) Sobieski is responsible for responding to consumer disputes on behalf of Federated. (*Id.* at 12) Sobieski was unable to match Ferrarelli's address, date of birth, or phone number as reported by TransUnion with the information Federated had in its records. (*Id.* at 29, 30–31, & Ex. C) This data comparison is the only investigation Sobieski conducted before verifying that the Advanta Account belonged to Ferrarelli. (*Id.* at 34) However, Sobieski did modify the status of the Advanta Account to being "disputed by consumer." (*Id.* at 37; Flees Decl., Ex. H) Sobieski repeated the same data comparison procedure on May 26, 2007 with the same result. (Sobieski Depo. at 42 & Ex. D) Sobieski explained in his deposition that he does not ever contact a consumer when responding to a consumer dispute, and he did not contact Ferrarelli. (*Id.* at 45) Sobieski also explained that he did not review the documents sent to Federated by Ferrarelli, but he that knew they had been received based on Federated's records. (*Id.* at 44)

**\*3** On June 4, 2007 TransUnion informed Ferrarelli it would continue report the account as "in collection." (Ferrarelli Decl., ¶ 9 & Ex. E) Experian also continued to report the account in a derogatory fashion based on information received from Federated. (Ferrarelli Decl., ¶ 10 & Exs. F–J) The derogatory account information appeared on Ferrarelli's Experian report until April of 2008. (*Id.,* ¶ 12 & Ex. K)

Ferrarelli filed this action on August 17, 2007. (Doc. 1) In his Amended Complaint, Ferrarelli brought claims pursuant to the Fair Credit Reporting Act and Fair Debt Collection Practices Act. (Doc. 34) Ferrarelli has withdrawn his claim under the FDCPA (Count Three) and his claim under the FCRA based upon Federated's conduct in December of 2007 (Count Two). (See Doc. 54) Therefore, only Count One remains pending before this Court.

**II. *ANALYSIS***

**A.** *Motion for Summary Judgment Standard*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the non-moving party. *Id.* at 252.

Moreover, this Court does not have a duty to search the entire record to establish that there is no material issue of fact. *Karnes v. Runyon,* 912 F.Supp. 280, 283 (S.D.Ohio 1995); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–80 (6th Cir.1989). The non-moving party must designate those portions of the record with enough specificity that the Court can readily identify those facts upon which the non-moving party relies. *Karnes,* 912 F.Supp. at 283.

**B.** *Private right of action under section 1681s–2(b) of the FCRA*

The parties do not dispute that Federated is a furnisher of information. The FCRA imposes a duty upon furnishers of credit information to report accurate information to consumer reporting agencies regarding a consumer's credit. 15 U.S.C. § 1681s–2(a)(1) (A).[2] Upon receipt of notice from a consumer reporting agency that furnished information has been disputed, the furnisher of the information is required to: (1) investigate the disputed information; (2) review all of the relevant information provided to it by the consumer reporting agency; (3) report the results of its investigation to the agency; and (4) report the results to all other agencies to which the information was originally furnished if an inaccuracy or an incompleteness is discovered. 15 U.S.C. § 1681s–2(b)(1)(A–D). The furnisher has thirty days with which to comply with these duties. 15 U.S.C. § 1681s–2(b)(2).

**\*4** Federated recognizes that courts are split as to whether section 1681s–2(b) provides a private right of action. However, the Sixth Circuit in an unpublished decision states without discussion that there is a private right of action. *Bach v. First Union National Bank,* 2005 WL 2009272, *3 (6th Cir. Aug.22, 2005) ("While a consumer cannot bring a private cause of action for a violation of a furnisher's duty to report truthful information, a consumer may recover damages for a willful violation of 15 U.S.C. § 1681s–2(b) (1)(A)-(D)."), citing *Stafford v. Cross Country Bank,* 262 F.Supp.2d 776, 782–83 (W.D.Ky.2003); *see also Downs v. Clayton Homes, Inc.,* 2004 WL 253363, *2 (6th Cir. Feb.9, 2004) (unpublished) (assuming for purposes of motion that private right of action existed under subsection (b)). The majority of courts which have addressed the issue, including this Court, have concluded that 15 U.S.C. § 1681s–2(b) created a private right of action by a consumer against a data furnisher. *See Sweitzer v. American Express Centurion Bank,* 554 F.Supp.2d 788, 794 (S.D.Ohio 2008); *Khalil v. TransUnion, LLC,* 2008 WL 2782912, *7 (E.D.Mich. July 17, 2008) (unpublished) (and cases cited therein). The Northern District of Ohio, which Federated urges the Court to follow, has adopted the minority position in finding that section 1681s–2(b) only applies to consumer reporting agencies. *See Zamos II v. Asset Acceptance, LLC,* 423 F.Supp.2d 777, 787–788 (N.D.Ohio 2006); *but see Alarcon v. Transunion Marketing Solutions, Inc.,* 2008 WL 4449387, *4 (N.D.Ohio Sept.30, 2008) (slip op.) ("While a consumer cannot bring a private cause of action for a Data Furnisher's violation of its duty to report truthful information, a consumer may recover damages if a Data Furnisher violates its obligations, once notified of a dispute, under 15 U.S.C. 1681s–2(b)(1)(A)-(D).").

This Court concludes that a private right of action does exist under section 1681s-2(b) of the FCRA, and therefore Federated is not entitled to summary judgment on this basis.

**C.** *Federated's duty under section 1681s–2(b) of the FCRA*

Federated argues that under the FCRA it had no responsibility to investigate Ferrarelli's dispute until it received notice from a consumer reporting agency.

The duties described in section 1681s–2(b) are triggered only upon notice received from a consumer reporting agency, not the consumer. *Stafford,* 262 F.Supp.2d at 783–84; *Carney v. Experian Information Solutions, Inc.,*

57 F.Supp.2d 496, 502 (W.D.Tenn.1999) (same). It is undisputed that Federated did not receive notice of Ferrarelli's dispute of the account from TransUnion until May 12, 2007. Therefore, Federated was not obligated to comply with section 1681s–2(b) until that date. The correspondence from Ferrarelli to Federated before May 12, 2007 did not trigger Federated's duties. *Accord Miller v. Wells Fargo & Co.,* 2008 WL 793676, *4–5 (W.D.Ky. March 24, 2008)* (unpublished); *see also Zager v. Deaton,* 2005 WL 2008432, *5 (W.D.Tenn. Aug.16, 2005)* (unpublished) (explaining that the fact that defendant had actual notice of the dispute is irrelevant because a furnisher of incorrect credit information must have received notice from the credit reporting agency in order for subsection (b) duties to be triggered). Accordingly, Federated can only be held liable under section 1681s–2(b) for violations occurring after May 12, 2007.

### D. *Reasonable investigation*

**\*5** The FCRA itself does not mandate the level of investigation a furnisher of information is required to undertake under section 1681s–2(b). Courts have construed the statue as requiring furnishers to conduct a reasonable investigation. *Miller,* 2008 WL 793676, at *5, citing *Westra v. Credit Controls of Pinellas,* 409 F.3d 825, 827 (7th Cir.2005); *Johnson v. MBNA America Bank, NA,* 357 F.3d 426, 430–31 (4th Cir.2004) (collecting cases). Whether a furnisher has acted reasonably in discharging its section 1681 s–2(b) duties is generally a question of fact for the jury. *See Westra,* 409 F.3d at 827.

Federated argues that one measure of reasonableness is to compare prevailing industry standards against those standards used by the furnisher in conducting its investigation. The Court agrees that this information could be relevant to the reasonableness inquiry. In *McCauley v. Trans Union LLC,* 2003 WL 22845741, *3 (S.D.N.Y. Nov.26, 2003)* (unpublished), a case cited by Federated, the court found that a factual examination of the procedures used by the defendant, measured against prevailing industry standards, may permit a fact finder to conclude that the defendant did not follow reasonable practices. However, the court concluded that the issue was not one to be resolved on summary judgment. *Id.*

Federated also urges the Court to follow the approach taken by the court in *Murphy v. Midland Credit Management, Inc.,* 456 F.Supp.2d 1082 (E.D.Mo.2006). The court explained that one of the factors to be considered in determining whether a credit reporting agency has conducted a reasonable investigation includes "the cost of verifying the accuracy of the source versus the possible harm of reporting inaccurate information." *Id.* at 1090, citing *Bruce v. First U.S.A. Bank, N.A.,* 103 F.Supp.2d 1135, 1143 (E.D.Mo.2000). While the Court again agrees that a cost-benefit analysis could be relevant in determining whether a furnisher's investigation was reasonable, the Court finds that engaging in such an analysis does not obviate the need for a factual determination. As the court in *Murphy* explained: "The determination of the 'reasonableness' of the defendant's procedures ... is treated as a factual question even when the underlying facts are undisputed. It therefore cannot be resolved on summary judgment unless the reasonable or unreasonableness of the procedures is beyond question ..." *Id., citing Crabill v. Trans Union, LLC,* 259 F.3d 662, 664 (7th Cir.2001).

Ferrarelli argues that it is not beyond question that Federated's procedures were reasonable. Ferrarelli points out that Federated employs only one individual to investigate section s–2(b) consumer disputes: Ted Sobieski. (Sobieski Depo. at 18) Sobieski testified that he spends between eight to ten hours per week investigating consumer disputes, and responds to between 120 and 150 such disputes per month. (*Id.* at 15–16, 49) Sobieski was unable to match Ferrarelli's address, date of birth, or phone number as reported by TransUnion, yet he still verified the account. (*Id.* at 29, 30–31) According to Sobieski the entire verification process took "a couple of minutes" because that is the average length of time he takes on such investigations. (*Id.* at 37, 39) Ferrarelli argues that the brevity of this investigation shows that it was not reasonable. Ferrarelli also points out that Sobieki did not refer to any of the documents sent in by Ferrarelli, and did not contact Ferrarelli.

**\*6** The Court notes that both Sobieski and David testified that their only investigative training was on-the-job. (Sobieski Depo. at 13; David Depo. at 22) Based on the foregoing, the Court finds that there are genuine issues of material fact as to whether Federated conducted a reasonable investigation after it received notice from TransUnion of Ferrarelli's dispute on May 12, 2007. Therefore, Federated is not entitled to summary judgment on this basis.

### E. *Willful violation*

Section 1681n(a) of the FCRA governs the liability of "[a]ny person who willfully fails to comply with any requirement imposed under this subchapter with respect

to any consumer." Federated argues that Ferrarelli has not shown willful noncompliance on the part of Federated.

The Supreme Court has interpreted the term "willful" as used in section 1681n to include both a knowing violation of the act as well as a reckless disregard of a requirement of FCRA. *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 127 S.Ct. 2201, 2208, 167 L.Ed.2d 1045 (2007). In *Safeco,* the Court reiterated that a reckless action is one entailing an "unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* at 2215. Furthermore, "[i]t is this high risk of harm, objectively assessed, that is the essence of recklessness at common law." *Id.* at 2214. However, the Court clarified that "a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 2215.

The Court finds that there is a genuine issue of material fact as to whether Federated willfully violated section 1681s–2(b). *See Holmes v. Telecheck Intern., Inc.,* 556 F.Supp.2d 819, 847 (M.D.Tenn.2008) ("Willfulness under the FCRA is generally a question of fact for the jury."). There is evidence that Federated had information in its possession which indicated that Ferrarelli was a victim of identity fraud. Specifically, Federated received the Fraud Affidavit and police report submitted by Ferrarelli. While these documents were submitted to Federated before their duty arose under section 1681s–2(b), there is no dispute that they had this information in their possession when investigating Ferrarelli's dispute of the Advanta Account. While investigators for Federated had some questions about these documents, they never followed up with Ferrarelli to clarify any of the information. The Court also notes that investigators concluded that the Advanta Account belonged to Ferrarelli based on his connection to Jones, but they also knew that it was Jones who was accused of stealing Ferrarelli's identity. Therefore, the Court finds that Federated is not entitled to summary judgment on Ferrarelli's claim that Federated's violation of the FCRA was willful.

### F. *Causal relationship*
**\*7** Federated argues that Ferrarelli has failed to show a causal relationship between his actual damages and any failure on the part of Federated to conduct a reasonable investigation.

To prevail on a FCRA claim, a plaintiff must prove that the defendant's violation of the Act caused his or her injury. *Holmes,* 556 F.Supp.2d at 843, *citing Lewis v. Ohio Prof'l Elec. Network, LLC,* 248 F.Supp.2d 693, 701 (S.D.Ohio 2003). "Without a causal relation between the violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of 'actual damages,' ... which is one of the remedies under the FCRA." *Crabill v. TransUnion,* 259 F.3d 662, 664 (7th Cir.2001), *citing Philbin v. Trans Union Corp.,* 101 F.3d 957, 963 (3d Cir.1996); *Casella v. Equifax Credit Information Services,* 56 F.3d 469, 473 (2d Cir.1995); *Cahlin v. General Motors Acceptance Corp.,* 936 F.2d 1151, 1160–61 (11th Cir.1991).

Federated argues that Ferrarelli must show that its alleged failure to conduct a reasonable investigation was a "substantial factor" in causing Ferrarelli's damages. Some courts have required the plaintiff to show that the defendant's violation of the FCRA was a "substantial factor" in causing a denial of credit or other damages. *See e.g., Reed v. Experian Information Solutions,* 321 F.Supp.2d 1108, 1115 (D.Minn.2004), *citing Richardson v. Fleet Bank of Mass.,* 190 F.Supp.2d 81, 88 (D.Mass.2001); *Enwonwu v. Trans Union, LLC,* 364 F.Supp.2d 1361, 1366 (N.D.Ga.2005); *Garrett v. TransUnion, LLC,* 2006 WL 2850499, \*11, n. 5 (S.D.Ohio Sept.29, 2006) (unpublished). However, as one court has explained:

> While a plaintiff must prove that the inaccurate entry was a "substantial factor in bringing about" the denial of credit, he need not eliminate the possibility that correct adverse entries or any other factors also entered into the decision to deny credit. *See Cahlin [v. General Motors Acceptance Corp.],* 936 F.2d 1151, 1161 [ (11th Cir.1991) ] (plaintiff "bears the burden of proving that [defendant's] credit report was a causal factor in the denial of" credit) (emphasis added). Forcing a plaintiff affirmatively to rule out other explanations for the credit denial ignores the fact that decisions to deny credit will frequently have more than one cause. For example, in some instances the inaccurate entry and another factor may each, considered separately, be insufficient to have caused the denial of credit but when taken together are sufficient. Each may then be considered a substantial factor in bringing about the denial of credit and therefore a cause of plaintiff's injury. Keeton et al., Prosser and Keeton on Torts § 41, at 266–68 (5th ed.1984).

*Enwonwu,* 364 F.Supp.2d at 1366. In other words, Ferrarelli need not show that Federated's failure to investigate the Advanta Account was the *sole* cause of his injury, but was a *substantial* factor in causing his

damages.

**\*8** The record shows that the Advanta Account was one of four fraudulent accounts on the TransUnion report identified by Ferrarelli. (Fees Decl., Ex. I) There is no evidence that Ferrarelli had significant financial troubles, such as bankruptcy (See Flees Decl., Ex. F), or that there were non-fraudulent accounts which were past due. (Docs.55–3, 55–8) The Court finds that under these circumstances, there is sufficient evidence in the record to create a genuine issue of material fact as to whether Federated's failure to investigate the Advanta Account was a substantial factor in causing Ferrarelli's damages.

Under the FCRA, actual damages may include emotional distress. *Garrett v. TransUnion, LLC,* 2006 WL 2850499, \*11 (S.D.Ohio Sept.29, 2006) (unpublished). This Court has recently reiterated that under the FCRA "[a]n injured person's testimony alone may suffice to establish damages for emotional distress provided that she reasonably and sufficiently explains the circumstances surrounding the injury and does not rely on mere conclusory statements." *Lee v. Javitch, Block & Rathbone, LLP,* 2008 WL 1886178, \*2 (S.D.Ohio April 25, 2008), *citing Bach,* 2005 WL 2009272 at \*6. Ferrarelli has provided independent medical evidence along with his own testimony to establish his damages for emotional distress. Accordingly, the Court finds that there is a genuine issue of material fact as to whether these damages were caused by Federated's alleged violation of the FCRA.

However, the Court finds persuasive Federated's argument that no violation can occur until after the expiration of the 30–day period in which a furnisher of information is to conduct a reasonable investigation under section 1681s–2(b). *See Johnson v. Wells Fargo Home Mortg., Inc.,* 558 F.Supp.2d 1114, 1135–1136 (D.Nev.2008) (explaining that "liability cannot attach until a furnisher violates its duty to properly reinvestigate. A furnisher has thirty (30) days to properly reinvestigate. Thus, no violation can occur until after the 30–day deadline for completing a proper reinvestigation has expired."). Here, Federated received notice from TransUnion on May 12, 2007. Federated had thirty days, or until June 11, 2007, to conduct its investigation, Because no liability could attach until that date, Ferrarelli is limited to those damages which arose after June 11, 2007.

### III. *CONCLUSION*

Based on the foregoing, it is hereby **ORDERED** that Defendant Federated Financial Corporation of America's Motion for Summary Judgment (Doc. 39) is hereby **DENIED.**

**IT IS SO ORDERED.**

### All Citations

Not Reported in Fed. Supp., 2009 WL 116972

---

**Footnotes**

[1]   An Accurint report is a skip-tracing tool which gathers all publicly available information regarding an individual. (Flees Decl. ¶ 16)

[2]   The parties do not dispute that the duties imposed by section 1681s–2(a) can only be enforced by government agencies and officials. *See* 15 U.S.C. §§ 1681s–2(c)(1), (d) (such violations "shall be enforced exclusively as provided under section 1681s of this title by the Federal agencies and officials and the State officials identified in section 1681s of this title"). Accordingly, no private right of action exists under subsection (a). *Stafford v. Cross County Bank,* 262 F.Supp.2d 776, 782–83 (W.D.Ky.2003).

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:25-cv-01386-WCG    Filed 11/19/25    Page 8 of 8    Document 64-5