# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**BRIAN T. PETERSON,**

        **Plaintiff,**

        v.                                           Case No. 25-C-1386

**GREAT MIDWEST BANK, et al.,**

        **Defendants.**

---

## DECISION AND ORDER GRANTING MOTIONS TO DISMISS

---

Plaintiff Brian T. Peterson, proceeding *pro se*, commenced this action on September 10, 2025, against Defendants Great Midwest Bank (Great Midwest); Experian Information Solutions, Inc. (Experian); Equifax Information Services LLC (Equifax); Trans Union LLC (Trans Union); U.S. Bank National Association (U.S. Bank); and Summit Credit Union (Summit), alleging violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq*. Dkt. No. 1. Plaintiff filed amended complaints removing U.S. Bank and instead bringing claims against U.S. Bancorp, though it appears U.S. Bank is the proper party. This court clarified in an October 2, 2025, text only order than the Amended Complaint docketed as Dkt. No. 11 is the operative complaint in this action. Equifax has since been dismissed from this action on stipulation of the parties. Dkt. No. 76. The court has jurisdiction pursuant to 28 U.S.C. § 1331. This action is before the court now on three motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) filed by Great Midwest (Dkt. No. 40), Summit (Dkt. No. 15), and U.S. Bancorp (Dkt. No. 61) (collectively, the Movant Defendants), each of which is considered a furnisher of information under the FCRA. For the reasons that follow, the motions will be granted.

## LEGAL STANDARD

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022). Rule 8 requires a pleading to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud." *U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003). A defendant is entitled to "fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (cleaned up).

Defense of federal lawsuits is expensive. To open the doors to discovery and thereby require a defendant to incur the substantial costs of defense, a complaint must therefore include sufficient allegations to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 570 (2007). A claim is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court must "take all factual allegations in the complaint as true" and draw all reasonable inferences in the plaintiff's favor when considering a motion to dismiss for failure to state a claim, courts need not accept the truth of legal conclusions, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Attaching documents to a Rule 12(b)(6) motion to dismiss does not necessarily convert a defendant's motion into a motion for summary judgment. When deciding a Rule 12(b)(6) motion, a court may consider documents attached to the motion to dismiss if they are referred to in the plaintiff's complaint and are central to his claim. *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014); *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir.

2

2012). A plaintiff cannot avoid early dismissal of a fatally flawed case by hiding the ball, especially where such documents form the basis of the plaintiff's claims. Thus, in this case, the court will consider not only the allegations in the Amended Complaint but also Plaintiff's dispute letters to Great Midwest and Great Midwest's response, which are referenced in the Amended Complaint and are central to Plaintiff's claims against Great Midwest. *See* Am. Compl. ¶¶ 20–23.

## ANALYSIS

The FCRA provides a vehicle for consumers to bring disputes concerning their credit report to consumer reporting agencies (CRAs). 15 U.S.C. § 1681i(a)(1). Plaintiff has asserted three claims under the FCRA against Great Midwest: (1) failure to investigate and correct disputed information in violation of 15 U.S.C. § 1681s-2(b)(1); (2) failure to ensure maximum possible accuracy in violation of 15 U.S.C. § 1681e(b); and (3) willful or negligent noncompliance entitling Plaintiff to actual and punitive damages, as well as attorney's fees in violation of 15 U.S.C. §§ 1681n and 1681o. Plaintiff has asserted these same claims against Summit and U.S. Bancorp, as well as a derivative fourth claim for failure to delete or block inaccurate or unverifiable information, in violation of 15 U.S.C. § 1681s-2(b)(l)(E). The court will address each claim.

### A. § 1681s-2(b)(1) Claims (failure to investigate and correct disputed information)

As noted above, all three of the Movant Defendants are furnishers. The FCRA does not define the term "furnisher," but FCRA regulations define a furnisher as "an entity that furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report." 12 C.F.R. § 1022.41(c). The FCRA provides that after receiving notice of a dispute from a consumer, the CRA must give notice of the dispute to the furnisher of the disputed information. 15 U.S.C. § 1681i(a)(2). A CRA's provision of notice to a furnisher triggers a furnisher's obligations under § 1681s-2. Upon receipt of such a notice, a furnisher must:

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—

    (i)     modify that item of information;
    (ii)    delete that item of information; or
    (iii)   permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1)(A)–(E). Significantly, it is a notice of dispute received *from a CRA*—not from a consumer—that triggers a furnisher's obligations under this subsection. *Freeman v. Ocwen Loan Servicing, LLC*, 113 F.4th 701, 707 (7th Cir. 2024).

The Amended Complaint alleges that Plaintiff sent notice personally to each of the Movant Defendants and that they failed to "take corrective action." Am. Compl. ¶¶ 20–21, 52, 55, 60, 65. But notice from the consumer does not trigger any duty on the part of a data furnisher to investigate under the FCRA. Several of the Movant Defendants argue that because the Amended Complaint does not allege that they received a notice of dispute from a CRA, Plaintiff's § 1681s-2(b)(1) claims must be dismissed. But a plaintiff need not allege that a furnisher received a notice of dispute from a CRA in order to state a claim under § 1681s-2(b)(1). As a practical matter, the plaintiff may not know whether the CRA sent the notice to the furnisher since "[t]he FCRA does not require a CRA to tell a consumer when it notifies a furnisher of information about the consumer's dispute." *Lang v. TCF Nat'l Bank*, 249 F. App'x. 464, 466 (7th Cir. 2007). It is

enough for the plaintiff to allege the name of the CRA that he notified. *Freeman*, 113 F.4th at 707. The Amended Complaint alleges that Plaintiff sent notices to the three CRAs, who are, or were, also defendants in this action. This would appear to be sufficient under *Freeman*. Ultimately, however, it is not enough to save Plaintiff's § 1681s-2(b)(1) claims. Those claims fail because the Amended Complaint fails to provide notice of the information the Movant Defendants provided that was allegedly inaccurate.

In order to prevail on a claim under § 1681s-2(b), a plaintiff must (1) "make a prima facie showing that the data furnisher provided incomplete or inaccurate information;" and (2) "show that the incompleteness or inaccuracy was the product of an unreasonable investigation—that is, had the furnisher conducted a reasonable investigation, it would have discovered that the data it provided was incomplete or inaccurate." *Frazier v. Dovenmuehle Mortgage, Inc.*, 72 F.4th 769, 775–76 (7th Cir. 2023). "[I]ncompleteness or inaccuracy under § 1681s-2(b) requires a showing that the information the data furnisher provided was (1) patently incorrect, or (2) materially misleading, including by omission." *Id.* at 776. "Materially misleading" means "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Id.* (quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009)).

Plaintiff's Amended Complaint fails to allege facts from which it could be inferred that the Movant Defendants furnished patently inaccurate or materially misleading information to the CRAs. The Amended Complaint begins with Great Midwest, with whom Plaintiff alleges he maintains a mortgage loan account. Plaintiff alleges that in or around June 1, 2025, he discovered that Great Midwest was reporting materially inaccurate, incomplete, and outdated information concerning his mortgage loan. Am. Compl. ¶ 19. He identified the alleged "inaccuracies in the bank's credit reporting" as "including but not limited to 'Date Opened,' 'Balance,' 'Number of Months (Terms),' 'Last Reported Date,' 'Date Last Active', and 'Date of Last Payment.'" *Id.*

5

¶ 20. Missing from the Amended Complaint, however, are any details of the alleged inaccuracies. There is no allegation, for example, stating what the difference was in the actual loan balance and what Great Midwest had reported to the CRAs. The same is true of the other alleged inaccuracies. Were the dates for when the account was opened, last reported, last active, or when the last payment was received off by days, months, or years? The Amended Complaint does not say.

From the letter Plaintiff sent to Great Midwest, it appears Plaintiff's disputes are over trivial details in his credit reports and not over material inaccuracies in the information furnished by Great Midwest. Dkt. No. 42 at 4. Plaintiff's letter, like his Amended Complaint, lists only headings for the inaccuracies and omits any specifics. Attached to the letter, however, is a Three Bureau Credit Report, which lists the information reported by the three CRAs: TransUnion, Experian, and Equifax. There are discrepancies in the information listed for Plaintiff's Great Midwest loan by the three CRAs. TransUnion lists the loan balance as $733,413, for example, while Experian and Equifax list it as $724,061. *Id.* at 7. TransUnion and Experian list the term of the loan as 348 months, while Equifax lists it as 0 months. *Id.* All three CRAs list the loan payment status as current, but TransUnion lists the last reported payment as 04/30/2025, while Experian lists it as 05/31/2025 and Equifax lists it 05/01/2025. *Id.* at 8. Similar discrepancies are shown for the date last active and date of last payment. TransUnion lists the date last active as 04/30/2025, while Experian and Equifax list it as 05/01/2025. And the date of last payment is listed by TransUnion as 04/01/2025, by Experian as 05/30/2025, and by Equifax as 05/01/2025. *Id.*

Even though Plaintiff's letter did not trigger Great Midwest's duty to investigate, Great Midwest apparently investigated and wrote Plaintiff a response. *Id.* at 10–11. It explained that it sends data to the CRAs at the end of the month, and that it appeared from its June 2025 report that TransUnion had not "updated their system with our May tape." *Id.* at 10. This was the apparent reason why TransUnion's report listed a higher balance and did not list May payments. Great

Midwest also explained that some CRAs list events as occurring the first of the month, as opposed to the actual date of the event. Thus, Experian listed the date Plaintiff's account was opened as 11/01/2021, instead of 11/12/2025 when Great Midwest reported it was actually opened, and Plaintiff's last payment date as 05/01/2025, instead of 05/30/2025, which is the date Great Midwest reported. Similar explanations applied to Equifax, though Great Midwest could not explain why Equifax listed the term of the loan as 0, instead of the actual term of 348 months, or 29 years, which is what Great Midwest reported and the other two CRAs showed. *Id.* at 11.

Plaintiff's response to Great Midwest's explanation reveals his misunderstanding of the duty of data furnishers under the FRCA. In his letter of June 14, 2025, Plaintiff noted that Great Midwest "confirmed discrepancies across all three bureaus—most notably the 'Date Opened,' 'Number of Months,' 'Last Reported,' 'Date Last Active,' and 'Date of Last Payment'—and yet you took no action to correct those errors." *Id.* at 13. What Plaintiff apparently fails to realize is that the data furnisher's only duty is to investigate and correct its own mistakes once it is notified of a dispute by a CRA; a data furnisher has neither the duty nor the authority to correct errors made by the CRAs. The court addressed this very issue in *Frazier*:

> Frazier maintains that completeness or accuracy under § 1681s-2(b) must be judged based, not on the ACDV [Automated Consumer Dispute Verification] response the data furnisher provided, but on the credit report generated from it. But the text of § 1681s-2(b) says nothing about a credit report, let alone a duty of a data furnisher with respect to credit reports produced using its amended data. To the contrary, the statute sets out the data furnisher's duties to investigate disputes, correct incomplete or inaccurate information, and report the results of an investigation to the credit reporting agency. *See* § 1681s-2(b)(A)–(E). In fact, § 1681s-2(b)(E) clarifies that the duty to correct data applies "for purposes of reporting to a consumer reporting agency only." An accompanying regulation points the same way: "Accuracy" in § 1681s-2(b) concerns the "information that a furnisher provides to a consumer reporting agency about an account or other relationship." 12 C.F.R. § 1022.41(a).

72 F.4th at 776.

7

From the foregoing, it follows that Plaintiff has failed to state a § 1681s-2(b)(1) claim against Great Midwest. Other than in conclusory terms, the Amended Complaint fails to allege that Great Midwest provided incomplete or inaccurate information. Indeed, from Plaintiff's dispute letter and Great Midwest's response, it is clear that Plaintiff's complaint is over what appear to be minor discrepancies in the manner in which the three CRAs reported his loan. But Great Midwest is not responsible for how the CRAs report the loan and cannot be held liable for their mistakes. Plaintiff's § 1681s-2(b) claim against Great Midwest will therefore be dismissed.

Although neither Summit nor U.S. Bancorp have submitted Plaintiff's dispute letters or any response they may have sent him, the same conclusion follows. Plaintiff's allegations against both Summit and U.S. Bancorp mirror those against Great Midwest; except as to Summit, Plaintiff fails to even identify the loan, account, or other transaction he had with Summit concerning which Summit would have furnished information to a CRA. And as with Great Midwest, Plaintiff lists only the headings ("Date Opened," "Credit Limit," "Last Reported Date," and "Date of Last Payment") for the information that he alleges in conclusory terms was inaccurate. Am. Compl. ¶ 187. Absent specific allegations as to what information furnished was inaccurate, the Amended Complaint fails to state facts from which it could be inferred that the information provided by Summit or U.S. Bancorp was patently inaccurate or materially misleading. Thus, Plaintiff's § 1681s-2(b) claim will also be dismissed as to these defendants. And because the Amended Complaint fails to state a claim under § 1681s-2(b)(1) for furnishing inaccurate information to a CRA, the derivative claims against Summit and U.S. Bancorp for failing to delete or block inaccurate or unverifiable information in violation of § 1681s-2(b)(1)(E) fails, as well.

**B. § 1681e(b) Claims (failure to ensure maximum possible accuracy)**

The Amended Complaint also asserts a claim against each of the Movant Defendants under 15 U.S.C. § 1681e(b). Section 1681e(b) states: "Whenever a consumer reporting agency prepares

a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." By its plain terms, the duty defined by the statute applies only to CRAs. *Denan v. Trans Union LLC*, 959 F.3d 290, 294 (7th Cir. 2020) ("The statute [15 U.S.C. § 1681e(b)] requires a plaintiff to show that a consumer reporting agency prepared a report containing 'inaccurate' information."); *see also Lewis v. Experian Info. Sols., Inc.*, No. 23-CV-857 (AMD) (RML), 2024 WL 1308705, at *8 (E.D.N.Y. Mar. 27, 2024) (holding that "only CRAs may be held liable for claims under Section[] 1681e(b)").

Plaintiff's § 1681e(b) claim that the Movant Defendants failed to ensure maximum possible accuracy in his credit report fails as to all three of the Movant Defendants for the simple reason that they are information furnishers, not CRAs. It therefore follows that Plaintiff's § 1681e(b) claim against Summit, Great Midwest, and U.S. Bancorp will be dismissed.

## C. §§ 1681n and 1681o Claims (willful or negligent noncompliance)

Plaintiff also seeks actual and punitive damages against the Movant Defendants under §§ 1681n and 1681o. The Amended Complaint alleges that as a result of the incorrect information furnished by the Movant Defendants, Plaintiff was denied a $1,000,000 loan from Sterling Bank on July 28, 2025, and experienced emotional distress, reputational harm, and financial loss. Am. Compl. ¶ 32. Section 1681n states in relevant part:

> Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—
>
> (1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or
>
> * * *
>
> (2) such amount of punitive damages as the court may allow; and

> (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

15 U.S.C. § 1681n. Section 1681o states that for negligent noncompliance, a defendant is liable for actual damages and reasonable attorney's fees. These claims obviously fail because the Amended Complaint fails to allege a violation of the FCRA by the Movant Defendants, whether willful or negligent. Accordingly, Plaintiff's claims under §§ 1681n and 1681o will be dismissed.

## CONCLUSION

In sum, Plaintiff's § 1681s-2(b)(1) claims fail because the Amended Complaint does not allege facts from which it could be inferred that the Movant Defendants furnished patently inaccurate or materially misleading information to the CRAs. His claims under § 1681e(b) must be dismissed because that section does not apply to furnishers. And Plaintiff's claims under §§ 1681n and 1681o fail because neither section provides an independent basis for liability. The motions to dismiss filed by Great Midwest (Dkt. No. 40), Summit (Dkt. No. 15), and U.S. Bancorp (Dkt. No. 61) are therefore **GRANTED**. The dismissals are not final, however. In the event he can cure the defects noted above, consistent with Rule 11(b) of the Federal Rules of Civil Procedure, Plaintiff will be allowed to file a Second Amended Complaint within thirty (30) days of this order.

Plaintiff is advised that the Second Amended Complaint must bear the docket number assigned to this case. The Second Amended Complaint replaces the prior complaints and must be complete in itself without reference to the original or amended complaints. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056-57 (7th Cir. 1998). In *Duda*, the appellate court emphasized that in such instances, the "prior pleading is in effect withdrawn as to all matters not restated in the amended pleading[.]" *Id.* at 1057 (quoting *Fuhrer v. Fuhrer*, 292

F.2d 140, 144 (7th Cir.1961)).  In the event Plaintiff does not file a Second Amended Complaint within the time allowed, dismissal of the Movant Defendants will be considered final.

**SO ORDERED** at Green Bay, Wisconsin this 15th day of January, 2026.

_William C. Griesbach_
William C. Griesbach
United States District Judge