## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| BRIAN T. PETERSON<br><br>         Plaintiff,<br><br>v.<br><br>GREAT MIDWEST BANK;<br>EXPERIAN INFORMATION<br>SOLUTIONS, INC.; EQUIFAX<br>INFORMATION SERVICES LLC;<br>TRANSUNION LLC; U.S. BANK<br>NATIONAL ASSOCIATION; and<br>SUMMIT CREDIT UNION<br><br>         Defendants. | Case No. 2025 CV 1386 |

**BRIEF SUPPORTING DEFENDANT SUMMIT CREDIT UNION'S
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

### INTRODUCTION

Defendant Summit Credit Union ("Summit") moves to dismiss the Second Amended Complaint of plaintiff Brian T. Peterson ("Peterson") against Summit pursuant to Fed. R. Civ. P. 12(b)(6) because Peterson fails to state a claim upon which relief can be granted. Peterson alleges that Summit violated section 1681s-2(b) of the Fair Credit Reporting Act (the "FCRA") by furnishing inaccurate or misleading information to Defendant Equifax Information Services LLC ("Equifax"), by failing to conduct a reasonable investigation upon receiving notice of Peterson's dispute from consumer reporting agencies ("CRAs"), and by failing to correct, delete, or block the inaccurate

information.

The Court should find that Peterson's claims against Summit still fail as a matter of law. In his Second Amended Complaint, Peterson merely deletes reference to a letter that the Court has already held to be fatal to Peterson's § 1681s-2(b) claims – a response letter Summit sent Peterson stating that Summit conducted a comprehensive investigation in response to the dispute it received from Equifax and confirming that all of the information being reported was accurate. The Court should not ignore this fact simply because Peterson deleted reference to it in his Second Amended Complaint. As such, the Court should again find that Peterson's § 1681s-2(b) claims against Summit fail as a matter of law.

**PROCEDURAL HISTORY**

On September 10, 2025, Peterson filed a pro se complaint against Defendants Great Midwest Bank ("Great Midwest"), Experian Information Solutions, Inc. ("Experian"), Equifax Information Services LLC ("Experian"), Trans Union LLC ("TransUnion"), U.S. Bank National Association, and Summit Credit Union ("Summit"). Dkt. No. 1. On September 30, 2025, Peterson filed two amended complaints, which effectively amended Defendant U.S. Bank National Association to U.S. Bancorp ("US Bancorp"). Dkt. Nos. 10-11. On October 2, 2025, the Court ordered that the amended complaint on file as Dkt. No. 11 was the operative complaint in this action. Dkt. No. 12. Notably, in the operative complaint, Peterson alleged that on August 12, 2025, Summit sent Peterson a letter stating that Summit had "conducted a 'comprehensive investigation' through Equifax, concluding that the disputed information was 'accurate.'" Dkt. No. 11 ¶ 57.

2

As is procedurally relevant to this motion, on October 6, 2025, Summit filed a motion to dismiss. Dkt. Nos. 15-16. On October 16, 2025, Peterson filed a response opposing Summit's motion. Dkt. Nos. 35-36. On November 24, 2025, pursuant to the Court's order (Dkt. No. 44), Summit filed a reply brief in support of its motion to dismiss. Dkt. No. 67. Great Midwest and US Bancorp also filed motions to dismiss. Dkt. Nos. 40-41, 63 (Great Midwest's motion and reply); Dkt. Nos. 61-62, 70 (US Bancorp's motion and reply).

On January 15, 2026, the Court issued a written decision and order granting the motions to dismiss filed by Great Midwest, Summit, and US Bancorp. Dkt. No. 79. The Court held that "[Peterson]'s § 1681s-2(b)(1) claims fail because the [operative complaint] does not allege facts from which it could be inferred that Movant Defendants furnished patently inaccurate or materially misleading information to the CRAs." *Id.* Moreover, as it pertained to Great Midwest's motion, the Court held that a response letter Peterson received from Great Midwest (as Peterson alleged in the operative complaint and that Great Midwest had submitted in its motion to dismiss) was fatal to Peterson's § 1681s-2(b) claim. *Id.* The Court found that the letter showed that Great Midwest had conducted an investigation and corrected its mistakes once it was notified of a dispute by a CRA. *Id.* The Court explained that Peterson's response to this letter (as Peterson alleged in the operative complaint) revealed Peterson's misunderstanding of the duty of data furnishers under the FCRA. *Id.* The Court, therefore, dismissed Peterson's § 1681s-2(b) claim against Great Midwest, holding that Great Midwest was not responsible for how CRAs report loans and cannot be held liable for such reporting mistakes. *Id.* (citing *Frazier*

3

*v. Dovenmuehle Mortgage, Inc.*, 72 F.4th 769, 775-76 (7th Cir. 2023)).

On February 9, 2026, Peterson filed a second amended complaint. Dkt. No. 81. In this Second Amended Complaint, Peterson alleges that Equifax inaccurately reported the credit limit on his HELOC loan with Summit as $0. *Id.* However, Peterson deleted reference to the August 12, 2025, letter Summit sent Peterson stating that Summit had "conducted a 'comprehensive investigation' through Equifax, concluding that the disputed information was 'accurate.'" *Compare* Dkt. No. 11 ¶ 57 *with* Dkt. No. 81.

## ARGUMENT

### I. Summit Furnished Accurate Information

An amended pleading does not operate as a blank slate. *Orgone Capital III, LLC v. Daubenspeck*, 912 F.3d 1039, 1048 (7th Cir. 2019). When a plaintiff alleges facts in his original complaint that the district court previously found to be fatal to his claims, simply deleting reference to those facts in an amended complaint does not mean the district court should ignore them. *Id.* Instead, a district court is entitled to take judicial notice of a complaint and its contents "[a]bsent a claim that there is a plausible, good-faith basis to challenge the legitimacy of the [prior complaint.]" *Watkins v. United States*, 854 F.3d 974, 950 (7th Cir. 2017). A district court satisfies the evidentiary criteria for judicial notice if a finding taken from a prior proceeding is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *Daubenspeck*, 912 F.3d at 1048 (citing Fed. R. Evid. 201(b)).

The Court previously held that a response letter alleged in Peterson's original complaint and submitted by Great Midwest was fatal to Peterson's § 1681s-2(b) claim

against Great Midwest. Dkt. No. 79. The Court found that the letter showed that Great Midwest had conducted an investigation and corrected its mistakes once it was notified of a dispute by a CRA. *Id.* The Court explained that Peterson's response to this letter revealed Peterson's misunderstanding of the duty of data furnishers under the FCRA. *Id.* The Court, therefore, dismissed Peterson's § 1681s-2(b) claim against Great Midwest, holding that Great Midwest was not responsible for how CRAs report loans and cannot be held liable for such reporting mistakes. *Id.* (citing *Frazier*, 72 F.4th at 775-76).

The same holds true for Summit. In his original complaint, Peterson alleged that he received a letter dated August 12, 2025, from Summit stating that Summit conducted a thorough investigation in response to the dispute it received from Equifax and confirmed that all of the information being reported was accurate. Dkt. No. 11 ¶ 57. The Court should take judicial notice of this previously alleged fact because it is not subject to reasonable dispute. Indeed, Summit submits a copy of this letter from its business records, which not only reflects the quoted language Peterson originally alleged, but allows the Court to accurately and readily determine the reasonableness of this fact from a source whose accuracy cannot reasonably be questioned. Decl. of Katie Hansen ("Hansen Decl.") ¶ 2, Exh. A.[1] As the Court previously found, this letter demonstrates that Peterson's complaint is over the manner in which Equifax reported the credit limit on Peterson's HELOC loan with Summit.[2] Also, as the Court previously held, Summit is

---

[1] Because this letter was referenced in the original operative complaint, the Court may review it in connection with this motion. *See Menominee Indian Tribe v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998) ("Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.").

[2] While Peterson's Second Amended Complaint also references inaccuracies to the "Date of Last

not responsible for how CRAs report the loan and cannot be held liable for their mistakes. Dkt. No. 79; *see Frazier*, 72 F.4th at 776. Therefore, the Court should again dismiss Peterson's § 1681s-2(b) claims against Summit.

What's more, Peterson alleges facts that confirm Summit was furnishing accurate information. Peterson's Second Amended Complaint confirms that the credit limit on Peterson's HELOC loan with Summit was accurately reported by Experian and TransUnion. Dkt. No. 81 ¶ 14. If Summit was furnishing inaccurate information, it seems improbable that two of the three CRAs would then report accurate information. This holds especially true when viewed in light of Peterson's allegations that Equifax also inaccurately reported a credit limit of $0 for his U.S. Bank credit card account. *Id.*

## CONCLUSION

For the reasons stated herein, the Court should grant Summit's motion, dismissing Peterson's claims against Summit.

---

Payment and Date of Last Active," such allegations suffer from the same infirmities of his original complaint, in that he fails to allege any facts from which it could be inferred that the information provided by Summit was patently inaccurate or materially misleading. Regardless, Peterson's claim still fails for the reasons described herein.

Dated this 23rd day of February, 2026.

TURKE & STEIL S.C.

/s/ Mary C. Turke
Mary C. Turke, SBN: 1027045
Amber M. Heidenreich, SBN: 1126685
613 Williamson Street Suite 201
Madison, WI 53703
Ph: (608) 237-1775
Email: mary@turkelaw.com
Email: amber@turkelaw.com

*Attorneys for Defendant Summit Credit Union*