UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

BRIAN T. PETERSON,

        *Plaintiffs*,                            Case No. 2:25-cv-01386-WCG

vs.

GREAT MIDWEST BANK;
U.S. BANK NATIONAL
ASSOCIATION; SUMMIT CREDIT
UNION; TRANS UNION LLC;
EXPERIAN INFORMATION
SOLUTIONS, INC,

        *Defendants*.

**MEMORANDUM IN SUPPORT OF DEFENDANT U.S. BANK, NATIONAL ASSOCIATION'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

## INTRODUCTION

Plaintiff Brian Peterson ("Peterson" or "Plaintiff") alleges that U.S. Bank, National Association ("U.S. Bank" or "Defendant") violated the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA") by furnishing inaccurate information to consumer reporting agencies ("CRAs"), failing to conduct a reasonable investigation upon receiving notice of Plaintiff's dispute, and failing to delete or block allegedly inaccurate information. (ECF No. 81, Second Am. Compl. ("2nd Am. Compl.") ¶¶ 33–37, 43–49.)

On January 15, 2026, this Court dismissed all of Plaintiff's claims against U.S. Bank's parent company, U.S. Bancorp, as well as claims against co-defendants Great Midwest Bank and Summit Credit Union, holding that the operative complaint "does not allege facts from which it could be inferred that Movant Defendants furnished patently inaccurate or materially misleading information to the CRAs." (ECF No. 79, Decision and Order dated Jan. 15, 2026 ("MTD Order") at 10.)) The Court further held that Plaintiff's § 1681e(b) claim failed because "they are information furnishers, not CRAs," and that Plaintiff's claims under §§ 1681n and 1681o failed because "neither section provides an independent basis for liability." (MTD Order at 10.) The Court permitted Plaintiff to file a Second Amended Complaint within thirty days to cure the defects identified. (MTD Order at 11.)

Although Plaintiff has now named the correct entity—U.S. Bank, National Association (2nd Am. Compl. ¶ 8.)—and has provided slightly more detail about the alleged inaccuracies (2nd Am. Compl. ¶¶ 14, 36.), Plaintiff's substantive claims remain legally deficient. In fact, the additional detail confirms, rather than cures, the core deficiency the Court identified: Plaintiff's theory of liability rests on inter-bureau discrepancies in how different CRAs display account data, not on any allegation that U.S. Bank itself furnished patently inaccurate or materially misleading

information. The Second Amended Complaint does not cure the defects this Court identified, and all claims against U.S. Bank should be dismissed with prejudice.

**<u>LEGAL STANDARD</u>**

U.S. Bank moves to dismiss the Second Amended Complaint for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6).

A complaint must include sufficient allegations to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 570 (2007). "A claim is facially plausible if it pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiffs' favor" when considering a motion to dismiss for failure to state a claim (*Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016)), that "is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements" (*Iqbal*, 556 U.S. at 663).

Under Rule 12(b)(6), "when it is 'clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law,' dismissal is appropriate." *Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017) (internal citation omitted). Legal conclusions and conclusory allegations not supported by specific factual assertions are not entitled to the presumption of truth and are disregarded when assessing whether the plaintiff has stated a plausible claim. *See McCauley v. City of Chicago*, 671 F.3d 611, 616–17 (7th Cir. 2011).

When "deciding a Rule 12(b)(6) motion, a court may consider 'documents attached to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to his claim.'" *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012); *see also*

*Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014). Additionally, a court is not required to disregard facts alleged in a prior complaint simply because the plaintiff omits them from an amended pleading. *Orgone Capital III, LLC v. Daubenspeck*, 912 F.3d 1039, 1048 (7th Cir. 2019). Where the prior complaint contained allegations that proved fatal to a plaintiff's claims, a district court may take judicial notice of those earlier allegations when evaluating the sufficiency of the amended pleading. *Id.* at 1044, 1048.

## ARGUMENT

### I.  PLAINTIFF FAILS TO STATE A CLAIM UNDER COUNT I FOR VIOLATION OF §1681s-2(b)

#### A.  *The Governing Legal Framework.*

Under the FCRA, a furnisher's duties under § 1681s-2(b) are triggered when the furnisher receives notice of a consumer's dispute from a CRA—not from the consumer directly. *See Freeman v. Ocwen Loan Servicing, LLC*, 113 F.4th 701, 707–08 (7th Cir. 2024); (MTD Order at 3–4.) Once triggered, the furnisher must investigate the disputed information, review relevant materials provided by the CRA, report the results, and correct any information found to be inaccurate or incomplete. 15 U.S.C. § 1681s-2(b)(1)(A)–(E).

A plaintiff pursuing a § 1681s-2(b) claim must satisfy two elements. First, the plaintiff must make a prima facie showing that the furnisher provided incomplete or inaccurate information to a CRA. *Frazier v. Dovenmuehle Mortgage, Inc.*, 72 F.4th 769, 775–76 (7th Cir. 2023). Second, the plaintiff must show that a reasonable investigation would have revealed the inaccuracy—in other words, that the inaccuracy was the product of an unreasonable investigation. *Id.* To satisfy the first element, the plaintiff must demonstrate that the data the furnisher submitted was either "patently incorrect" or "materially misleading"—meaning "misleading in such a way and to such

an extent that it can be expected to adversely affect credit decisions." *Id.* at 776 (internal quotations omitted).

A central principle of *Frazier*—and one this Court applied in its January 15 Order—is that accuracy under § 1681s-2(b) is measured by what the furnisher actually submitted to the CRA. The Seventh Circuit emphasized that the statutory text "says nothing about a credit report, let alone a duty of a data furnisher with respect to credit reports produced using its amended data," and that § 1681s-2(b)(E) "clarifies that the duty to correct data applies 'for purposes of reporting to a consumer reporting agency only.'" *Id.*; (MTD Order at 7.) This distinction is critical here because Plaintiff's claims rest entirely on differences in how CRAs displayed U.S. Bank's data—not on any allegation about the data U.S. Bank actually submitted.

### B. Plaintiff's New Allegations Still Describe Inter-Bureau Discrepancies, Not Furnisher-Level Inaccuracies.

This Court dismissed Plaintiff's § 1681s-2(b)(1) claims against U.S. Bancorp because the Amended Complaint failed to "state facts from which it could be inferred that the information provided by Summit or U.S. Bancorp was patently inaccurate or materially misleading." (MTD Order at 8.) The Court noted that, "as with Great Midwest, Plaintiff lists only the headings ('Date Opened,' 'Credit Limit,' 'Last Reported Date,' and 'Date of Last Payment') for the information that he alleges in conclusory terms was inaccurate," thus, "[a]bsent specific allegations as to what information furnished was inaccurate, the Amended Complaint fails to state facts from which it could be inferred that the information provided by Summit or U.S. Bancorp was patently inaccurate or materially misleading." (MTD Order at 8.)

Plaintiff has now added some specifics. The Second Amended Complaint alleges that "U.S. Bank reported a High Credit of $31,120 on TransUnion and Experian while Equifax reported $0" and that "U.S. Bank also had multiple weeks difference in reporting on Last Reported, Date Last

4

Active and Date of Last Payment." (2nd Am. Compl. ¶ 14.) In Count I, Plaintiff alleges that "U.S. Bank reported an inaccurate High Credit of $0 vs $31,120 and multiple erroneous payment dates." (2nd Am. Compl. ¶ 36.)

But these new details confirm that Plaintiff's complaint is the same one this Court has already rejected: a dispute over how different CRAs display account data, not over inaccurate information that U.S. Bank itself furnished. The Court identified precisely this deficiency in its analysis of Great Midwest, finding that "Plaintiff's complaint is over what appear to be minor discrepancies in the manner in which the three CRAs reported his loan" and that "Great Midwest is not responsible for how the CRAs report the loan and cannot be held liable for their mistakes." (MTD Order at 7–8.) The same analysis applies to U.S. Bank.

Similarly, "multiple weeks difference in reporting on Last Reported, Date Last Active and Date of Last Payment" across bureaus describes the same type of processing variation this Court addressed in its prior ruling. As the Court noted in connection with Great Midwest, the reason TransUnion showed different dates was that TransUnion had not "updated their system" with the furnisher's most recent data submission, and some CRAs list events as occurring the first of the month rather than the actual date. (MTD Order at 6–7.) These are CRA-level timing and formatting differences—not inaccuracies in what the furnisher reported. The same is true with respect to U.S. Bank. Further, the Court held that "the data furnisher's only duty is to investigate and correct its own mistakes once it is notified of a dispute by a CRA; a data furnisher has neither the duty nor the authority to correct errors made by the CRAs." (MTD Order at 7.)

Notably, the Second Amended Complaint does not allege that U.S. Bank reported any delinquency, default, missed payment, or other derogatory information about Plaintiff's account. Plaintiff does not identify any information that U.S. Bank *actually furnished* to any CRA that was

5

wrong. He alleges only that the CRAs displayed the information differently. Under *Frazier*, that is not enough to support a claim under § 1681s-2(b). 72 F.4th at 776 (accuracy under § 1681s-2(b) concerns "the 'information that a furnisher provides to a consumer reporting agency,'" not the credit report generated from it).

Because Plaintiff's allegations describe inter-bureau display differences rather than furnisher-level inaccuracies, the Second Amended Complaint fails to satisfy the first element of a § 1681s-2(b) claim—a prima facie showing that U.S. Bank provided incomplete or inaccurate information. Count I should be dismissed.

### C. *Plaintiff Fails to Allege an Unreasonable Investigation.*

Even assuming *arguendo* that Plaintiff could identify a furnisher-level inaccuracy, Count I would still fail because the Second Amended Complaint does not plausibly allege that U.S. Bank's investigation was unreasonable. Under *Frazier*, the second prong of a § 1681s-2(b) claim requires that the plaintiff demonstrate a reasonable investigation would have revealed the data the furnisher provided was incomplete or inaccurate. 72 F.4th at 775–76. It follows that where, as here, the information a furnisher submitted to the CRAs was accurate, no investigation—however thorough—could have uncovered a nonexistent inaccuracy, and the investigation cannot be deemed unreasonable. *See Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005).

Plaintiff's sole allegation on this point is the bare assertion that U.S. Bank "failed to conduct a reasonable investigation, and failed to correct, delete, or block the inaccurate information." (2nd Am. Compl. ¶ 35.) That is a textbook "threadbare recital" of a statutory element, unsupported by any factual content. *See Iqbal*, 556 U.S. at 678. Plaintiff does not identify a single piece of information that a different or more thorough investigation would have revealed, nor does he allege any facts suggesting that U.S. Bank failed to consult its own account records or otherwise conducted a superficial review. The FCRA obligates furnishers to investigate reasonably—not to

6

investigate how to consumer sees fit to reach the result the consumer demands. *See Westra*, 409 F.3d at 827.

The record from the prior pleading further undercuts Plaintiff's position. Under *Daubenspeck*, 912 F.3d at 1048, the Court need not ignore the First Amended Complaint's own allegations. There, Plaintiff alleged that U.S. Bank responded to his June 8, 2025, dispute letter by stating on July 8, 2025, that it had "requested an update" with the CRAs, and that U.S. Bank again responded on July 29, 2025, to Plaintiff's CFPB and BBB complaints. (Dkt. No. 11 ¶¶ 61, 64.)[1] Plaintiff has strategically excised these allegations from the Second Amended Complaint, but the Court is entitled to consider them. They reveal that U.S. Bank affirmatively addressed Plaintiff's concerns on multiple occasions—a far cry from the picture of wholesale noncompliance that Plaintiff's stripped-down pleading now tries to paint. Furthermore, under *Frazier*, the critical issue is whether the information provided by U.S. Bank was inaccurate when provided, not whether a CRA later updated or reformatted certain fields. 72 F.4th at 776–77. In other words, a later update does not retroactively make otherwise accurate reporting a violation of § 1681s-2(b).

### D. Plaintiff Fails to Plausibly Connect Any Alleged Violation to Concrete Harm.

Even apart from the absence of any actionable inaccuracy, Plaintiff has not alleged a plausible causal link between U.S. Bank's conduct and any concrete harm. Plaintiff alleges that Sterling Bank denied him a $1,000,000 loan, stating: "'Sterling Bank pulled your credit report and found inconsistencies leading us to deny your request for a loan at this time.'" (2nd Am. Compl. ¶ 19.)

That allegation does not tie Plaintiff's credit denial to anything U.S. Bank did. Plaintiff nowhere alleges that Sterling Bank relied on U.S. Bank's tradeline in particular, that Sterling Bank

---

[1] Plaintiff did not file a copy of his dispute letters or U.S. Bank's responses, but U.S. Bank has. (See Decl. of Jeremy W Tokarczyk ("Tokarczyk Decl.") ¶¶ 3–6, Exs. A-D.)

identified U.S. Bank's credit card account as problematic, or that Sterling Bank perceived any delinquency or adverse status on that account. Under Seventh Circuit precedent, a plaintiff must do more than assert that a credit denial occurred and that a defendant reported information—he must plausibly allege a causal nexus between the specific statutory violation and the injury. *See Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1194 (7th Cir. 2021); *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004) (affirming dismissal where plaintiff failed to connect the alleged reporting deficiency to the denial of credit).

Here, Sterling Bank's reference to generic "inconsistencies" in Plaintiff's credit report does not implicate U.S. Bank. (2nd Am. Compl. ¶ 19.) Those "inconsistencies" are at least as likely attributable to CRA-level display variations, to tradelines furnished by other defendants in this case, or to factors entirely unrelated to U.S. Bank's reporting. Without particularized facts connecting the denial to an inaccuracy traceable to U.S. Bank, Plaintiff's damages theory is speculative, and his claim fails as a matter of law.

Plaintiff's damages allegations are also independently deficient. He seeks recovery for "loss of credit expectancy" and other speculative harms (2nd Am. Compl. ¶ 20). The FCRA authorizes recovery only for actual, demonstrated harm—not hypothetical or conjectural losses. *See Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 473–75 (2d Cir. 1995) (holding that lost-opportunity damages require proof of a concrete, non-speculative injury).

## II.     COUNT III FAILS BECAUSE THERE IS NO PLAUSIBLE INACCURACY TO DELETE OR BLOCK

Count III is entirely derivative of Count I. Section 1681s-2(b)(1)(E) requires a furnisher to modify, delete, or block reported information only where a reinvestigation reveals that the information is inaccurate, incomplete, or unverifiable. (2nd Am. Compl. ¶¶ 43–44.) This Court recognized the derivative nature of this claim in its January 15 Order, holding that "because the

8

Amended Complaint fails to state a claim under § 1681s-2(b)(1) for furnishing inaccurate information to a CRA, the derivative claims against Summit and U.S. Bancorp for failing to delete or block inaccurate or unverifiable information in violation of § 1681s-2(b)(1)(E) fails, as well." (MTD Order at 8.)

The same logic applies here with equal force. As demonstrated above, Plaintiff has not plausibly alleged that U.S. Bank furnished inaccurate data. Plaintiff's assertion that Defendants' "continued reporting of this information demonstrates that the disputed data was, at minimum, not verifiable" (2nd Am. Compl. ¶ 46) (emphasis omitted) is a bare legal conclusion that the Court need not credit. *See Iqbal*, 556 U.S. at 678.

A furnisher has no obligation under § 1681s-2(b)(1)(E) to alter data that is, in fact, accurate. *See Frazier*, 72 F.4th at 775–76 (furnisher obligations arise only upon a finding of inaccurate or incomplete information). Because Count I fails, Count III necessarily fails with it.

### III.    FURTHER AMENDMENT WOULD BE FUTILE AND DISMISSAL SHOULD BE WITH PREJUDICE

This is now Plaintiff's third attempt to state a viable FCRA claim against U.S. Bank (or its parent, U.S. Bancorp). In its January 15 Order, this Court gave Plaintiff a clear roadmap: his claims failed because he did not allege facts showing that any furnisher defendant provided patently inaccurate or materially misleading information. (MTD Order at 5–8.) The Court afforded Plaintiff the opportunity to "cure the defects noted above, consistent with Rule 11(b)." (MTD Order at 10.)

Plaintiff has been unable to cure that deficiency. The additional specifics he now offers— Equifax's $0 High Credit figure versus TransUnion's and Experian's $31,120, and "multiple weeks" of date variation across bureaus—do not identify any data that U.S. Bank itself submitted incorrectly to a CRA. They are the same inter-bureau display discrepancies this Court held insufficient in the prior Amended Complaint. The deficiency in Plaintiff's theory is one of legal

substance, not pleading detail—no amount of additional factual allegations can convert CRA-level display differences into a furnisher's statutory violation.

Although "a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint," "[w]here it is clear that the defect cannot be corrected so that amendment is futile, it might do no harm to deny leave to amend and to enter an immediate final judgment". *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi.*, 786 F.3d 510, 519–20 (7th Cir. 2015). As such, here, where Plaintiff is on his Second Amended Complaint and amendment would be futile, dismissal should be with prejudice.

## <u>CONLUSION</u>

The Second Amended Complaint does not cure the deficiencies this Court identified in its January 15, 2026, Order. Plaintiff still fails to plausibly allege that U.S. Bank furnished patently inaccurate or materially misleading information to any CRA. His new allegations confirm that his dispute is over inter-bureau display discrepancies—not furnisher-level inaccuracies. He fails to allege an unreasonable investigation, and he fails to plausibly connect any alleged violation to concrete harm. For these reasons, all claims against U.S. Bank should be dismissed with prejudice. Dated this 30th day of April 2026.

Respectfully submitted,

*/s/ Andrew C. Gresik*
Andrew C. Gresik
WI Bar Number: 1104650

FOLEY & LARDNER LLP
150 East Gilman Street, Suite 5000
Madison, WI 53703
Telephone: (608) 257-5035
Facsimile: (608) 258-4258
Email: agresik@foley.com

*Attorney for U.S. Bank National Association*

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below, the foregoing document was electronically filed with the Clerk of Court and served on all parties and counsel of record using the Court's CM/ECF system.

Dated: April 30, 2026

*/s/ Andrew C. Gresik*
Andrew C. Gresik