No *Shepard's* Signal™
As of: May 20, 2026 5:26 PM Z

# *Wallace v. Parker*

United States District Court for the Eastern District of Wisconsin

November 4, 2025, Decided; November 4, 2025, Filed

Case No. 24-C-1572

**Reporter**

2025 U.S. Dist. LEXIS 217015 *; 2025 LX 484555; 2025 WL 3079196

COREY D. WALLACE, Plaintiff, v. MICHAEL PARKER, CODY VANDE HEY, and HEATHER HIGHLAND, Defendants.

**Counsel: [*1]** Corey D Wallace, Plaintiff, Pro se, Brillion, WI.

For Officer Michael Parker, Brillion Police Department, Defendant: Michael J Roman, Kramer Shull Reeths LLP, Wausau, WI.

For Deputy Cody Vande Hey, Calumet County Sheriff's Department, Defendant: Jonathan E Sacks, Ronald S Stadler, Stadler Sacks LLC, West Bend, WI.

**Judges:** William C. Griesbach, United States District Judge.

**Opinion by:** William C. Griesbach

# Opinion

## DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff Corey D. Wallace, proceeding *pro se*, filed a complaint in this action against Defendants Brillion Police Department Officer Michael Parker, Calumet County Sheriff's Office Deputy Cody Vande Hey, and Calumet County Assistant District Attorney Heather Highland on December 6, 2024. Plaintiff's claim against Defendant ADA Highland was dismissed by the court's screening order. Dkt. No. 6. This matter is before the court on Defendants Michael Parker and Cody Vande Hey's motion for judgment on the pleadings. Dkt. No. 21. Plaintiff has not responded to the motion and the time to do so has passed. For the reasons that follow, Defendants' motion will be granted, and the case will be dismissed.

## LEGAL STANDARD

*Federal Rule of Civil Procedure 12(c)* provides that "*[a]fter the [*2] pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings*." *Fed. R. Civ. P. 12(c)*. "A motion for judgment on the pleadings is subject to the same standard as a motion to dismiss under *Rule 12(b)(6)*." *Gill v. City of Milwaukee, 850 F.3d 335, 339 (7th Cir. 2017)* (citing *Buchanan-Moore v. Cnty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)*). Thus, the court draws all reasonable inferences and views all facts in the light most favorable to the plaintiff. *Milwaukee Police Ass'n v. Flynn, 863 F.3d 636, 640 (7th Cir. 2017)*. But it is "not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon, 287 F.3d 656, 658 (7th Cir. 2002)*. To survive a motion for judgment on the pleadings, the challenged pleading must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* (quoting *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*). "Dismissal under *Rule 12* is appropriate when an affirmative defense appears on the face of the complaint." *Jackson v. Gantner, No. 21-CV-*

0640-BHL, 2022 U.S. Dist. LEXIS 59475, 2022 WL 981121, at *1 (E.D. Wis. Mar. 30, 2022) (citing Jones v. Bock, 549 U.S. 199, 215, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007)).

The general rule is that matters outside the pleadings may not be considered by the court in deciding a motion to dismiss or for judgment on the pleadings unless the motion is treated as a motion for summary judgment. Fed. R. Civ. P. 12(d). An exception to this rule exists, however, for documents that a plaintiff fails to attach to the complaint, but which are referred to in the plaintiff's complaint and are central to his claim. See Wright v. Associated Ins. Co., Inc., 29 F.3d 1244, 1248 (7th Cir. 1994) ("[D]ocuments attached to [*3] a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Such documents may be considered by a district court in ruling on the motion to dismiss.").

## ALLEGATIONS OF THE COMPLAINT

Plaintiff's complaint alleges that on January 28, 2024, Plaintiff "exchanged words" with his wife, Natasha Wallace, over his purchase of food from McDonald's and Dairy Queen and the money needed to buy toilet paper at their residence in Brillion, Wisconsin. Compl., Dkt. No. 1-2 at 1. While Natasha called the Brillion Police Department, Plaintiff called the Calumet County Sheriff's Office to report that Natasha had threatened him. Officer Michael Parker of the Brillion Police Department and Deputy Cody Vande Hey of the Calumet County Sheriff's Office responded to the scene and questioned Plaintiff and his spouse. Id. at 1-2. Plaintiff then alleges that Officer Parker and Deputy Vande Hey had a brief discussion and determined the altercation presented "grounds for [Plaintiff's] mandatory arrest." Id. Plaintiff was then placed under arrest. Id. at 2.

Plaintiff was charged with two counts of disorderly conduct with a domestic abuse [*4] modifier—one concerned the events of January 28, 2024, and another concerned events from an earlier incident on January 24, 2024. A jury found Plaintiff not guilty of Count One (the January 24, 2024 incident) and guilty of Count Two (the January 28, 2024 incident). Id. at 2; see also Dkt. No. 23-2 at 1. In its screening order, the court interpreted Plaintiff's complaint to be asserting that Defendants did not have probable cause to arrest Plaintiff under 42 U.S.C. § 1983. See Dkt. No. 6 at 4.

## ANALYSIS

Defendants assert that Plaintiff's lawsuit challenging whether there was probable cause for his arrest is barred by Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), because the facts alleged would invalidate his criminal conviction. Dkt. No. 22 at 4. In determining whether a civil claim is Heck-barred, courts must assess the relationship between the civil claim and the criminal conviction. McCann v. Neilsen, 466 F.3d 619, 621-22 (7th Cir. 2006). "[W]here the grounds for the conviction flow from the same facts underlying the allegations of false arrest, the claim is barred by Heck." Szach v. Vill. of Lindenhurst, No. 14 C 7441, 2015 U.S. Dist. LEXIS 83646, 2015 WL 3964237, at *7 (N.D. Ill. June 25, 2015).

Here, Plaintiff was found guilty of disorderly conduct with a domestic abuser modifier. Wisconsin law defines "disorderly conduct" as follows: "Whoever, in a public or private place, engages in violent, abusive, indecent, profane, [*5] boisterous, unreasonably loud or otherwise disorderly conduct under circumstances in which the conduct tends to cause or provoke a disturbance is guilty of a Class B misdemeanor." Wis. Stat. § 947.01. Wisconsin Statute § 968.075(1)(a) is a modifier for the above that applies when an individual engaged in disorderly conduct directed against a spouse.

The grounds for Plaintiff's conviction were the same grounds that caused Defendants to arrest him

and the same grounds on which Plaintiff's current claim is based. Plaintiff's assertions that the officers did not have probable cause directly contradict the jury's finding of guilt in the criminal case arising from the same incident. Because a civil judgment in his favor cannot be permitted to render invalid the criminal conviction, *Heck v. Humphrey* bars Plaintiff's suit. *512 U.S. at 486-87*; *see also Morgan v. Schott, 914 F.3d 1115, 1120 (7th Cir. 2019)* ("[T]he outstanding criminal judgment . . . as long as it stands, blocks any inconsistent civil judgment.").

**CONCLUSION**

For the above reasons, Defendants' motion for judgment on the pleadings (Dkt. No. 21) is **GRANTED**. This case is dismissed. The clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 4th day of November, 2025.

/s/ William C. Griesbach

William C. Griesbach

United States District Judge

End of Document

 Neutral

As of: May 20, 2026 5:26 PM Z

# *Sartin v. Chula Vista, Inc.*

United States District Court for the Eastern District of Wisconsin

July 1, 2019, Decided; July 1, 2019, Filed

Case No. 18-CV-1890

**Reporter**

2019 U.S. Dist. LEXIS 109537 *; 2019 WL 2746210

JOSEPH SARTIN, et al., Plaintiffs, v. CHULA VISTA, INC., et al., Defendants.

**Prior History:** *Sartin v. Chula Vista, Inc., 2019 U.S. Dist. LEXIS 47570 (E.D. Wis., Mar. 22, 2019)*

**Counsel:** **[*1]** For Joseph Sartin, Kenneth Riche, Tony Edwards, Robert Silberman, Scott Willock, Plaintiffs: Benjamin Shrader, Brian H Eldridge, Steven A Hart, Hart McLaughlin & Eldridge LLC, Chicago, IL.

For Chula Vista Inc, CVR Management LLC, Michael Kaminski, Defendants: David J Hanus, Elizabeth A Odian, Paige L McCreary, Hinshaw & Culbertson LLP, Milwaukee, WI.

For Michael Best & Friedrich LLP, Nancy Haggerty, Defendants: Noah D Fiedler, LEAD ATTORNEY, Alyssa A Johnson, Hinshaw & Culbertson LLP, Milwaukee, WI.

**Judges:** WILLIAM E. DUFFIN, United States Magistrate Judge.

**Opinion by:** WILLIAM E. DUFFIN

# Opinion

### DECISION AND ORDER

Plaintiffs Tony Edwards, Kenneth Riche, Joseph Sartin, Robert Silberman, and Scott Willock all own condominiums at Chula Vista Resort and Waterpark in the Wisconsin Dells, which they rented to vacationers. They filed a proposed class action complaint against defendants Chula Vista, Inc., CVR Management, LLC, and Michael Kaminski (because it is not crucial for present purposes which defendant allegedly did what, the court will refer to these defendants collectively as simply Chula Vista), as well as attorney Nancy Haggerty and her law firm, Michael Best & Friedrich. The complaint spans more than 100 pages and **[*2]** over 600 separately numbered paragraphs, and asserts 30 causes of action. It alleges that Chula Vista operates the Chula Vista Resort and oversees rental of the condominium units, and that the defendants "are engaged in a scheme to take financial advantage of condominium unit owners at the Chula Vista Resort & Waterpark." Among other things, the complaint alleges that Chula Vista sells "Club" memberships to the public, which allows Club members to receive massive rental discounts on plaintiffs' condominium units, to Chula Vista's benefit and to the detriment of the plaintiffs. Haggerty and Michael Best are defendants, in part, because they counseled Chula Vista on the alleged scheme.

Chula Vista has moved for judgment on the pleadings as to Counts 4-6 (Theft by Fraud), 7-9 (Constructive Fraud), 12-14 (Breach of Fiduciary Duty), 15-17 (Negligent Misrepresentation), 19-21 (Intentional Misrepresentation), and 25-27 (*Wisconsin Deceptive Trade Practices Act*) on the ground that each is barred by the statute of limitations. (ECF No. 41.) They also contend that the claims under the Wisconsin Deceptive Trade Practices Act (DTPA) should be dismissed because

the complaint does not set forth facts **[\*3]** plausibly suggesting a violation of the Act.

Haggerty and Michael Best move for judgment on the pleadings as to Counts 10-11 (Constructive Fraud), 18 (Negligent Misrepresentation against Michael Best), 22 (Aiding and Abetting Conversion against Michael Best), 23 (Aiding and Abetting Breach of Fiduciary Duty against Michael Best), another Count 23 (Aiding and Abetting Conversion against Haggerty), and 24 (Aiding and Abetting Breach of Fiduciary Duty against Haggerty) on the same ground as Chula Vista—that they are barred by the applicable statute of limitations—and on Counts 28 and 29 (Legal Malpractice) on the ground that the plaintiffs lack standing to pursue such claims. The motions have been fully briefed and are ready for resolution. The Clerk of Court has advised the court that all parties have consented to the full jurisdiction of a magistrate judge. The court has jurisdiction over the plaintiffs' claims under *28 U.S.C. § 1332(d)(2)(A)* and *28 U.S.C. § 1367*.

**FACTS**

The following facts are taken from the complaint.

Defendant Chula Vista, Inc. operates the Chula Vista Resort & Waterpark, located in the Wisconsin Dells. (ECF No. 1, ¶ 14.) The resort consists of a hotel, outdoor pool, golf course, indoor and outdoor waterparks, **[\*4]** and condominium units. (*Id.*, ¶¶ 25-26.) Defendant CVR Management, LLC oversees the rental and day-to-day operations of the condominium units. (*Id.*, ¶ 16.) Defendant Kaminski is Chula Vista Inc.'s Chief Operating Officer and owner. (*Id.*, ¶ 15.) Plaintiffs each own a condominium unit at the resort. (*Id.*, ¶¶ 9-13.)

In or about 2005 Chula Vista, Inc. and Kaminski began to solicit investors like the plaintiffs to purchase yet-to-be-built condominium units. (ECF No. 1, ¶ 28.) As an incentive to invest in the condominiums, Chula Vista, Inc. marketed to prospective owners, including the plaintiffs, the opportunity to earn income by renting their condominium units to the public. (*Id.*, ¶ 29.) Chula Vista, Inc. presented plaintiffs with rental forecasts of anticipated future annual revenues for the rental of the condominiums and proposed that the income derived from the rental of the units would be split, 60 percent to the condominium owner and 40 percent to CVR. (*Id.*, ¶¶ 30, 32.) Based on their belief that Chula Vista and its management would manage the condominium in a reputable and profitable manner, plaintiffs executed purchase agreements for condominiums. (*Id.*, ¶ 33.) As condominium owners, **[\*5]** plaintiffs became members of the Chula Vista Condominium Unit Owners Association (Association). (*Id.*, ¶ 34.)

In connection with their condominium purchases, all plaintiffs were encouraged to, and did, enter into a Rental Management Agreement with CVR and the Association, which set out the revenue sharing proposal previously touted by Chula Vista, Inc. (ECF No. 1, ¶ 36.) The Rental Management Agreement is attached to the complaint as Exhibit A. The plaintiffs granted to CVR the right to rent their units according to the terms of the Rental Management Agreement. (*Id.*, ¶ 37.)

In around 2009 Chula Vista, Inc. and Kaminski formed a program called The Club at Chula Vista Resort and sold memberships to the general public. (ECF No. 1, ¶ 42.) The Club charged members an up-front initiation fee of approximately $10,000, in addition to annual dues. (*Id.*, ¶ 43.) In exchange, the Club provided members steep rental discounts (as much as 80 percent) on condominiums owned by, among others, the plaintiffs. (*Id.*, ¶ 44.) All Club membership fees and dues were kept by Chula Vista and the Club. (*Id.*, ¶ 45.) The condominium owners were not consulted about the formation or operation of the Club. (*Id.*, ¶ 50.) **[\*6]**

Over the years Chula Vista has steadily and substantially increased various amenity fees and assessments, which do not benefit the plaintiffs. (ECF No. 1, ¶ 65.) For example, in 2017-18 they increased the total "Indoor Water Park Amenity Fee" by $460,000, a 31 percent hike over the

previous year. (*Id.*) In addition, over time the assessments have continued to rise. (*Id.*, ¶ 66.) The assessed fees helped fund other Kaminski-owned enterprises, including the indoor water park, golf course, restaurant, and others. (*Id.*, ¶ 70.)

In addition to the rental management program, Chula Vista oversees and operates a maintenance program. (ECF No. 1, ¶ 74.) As part of the maintenance program, Chula Vista replaces fixtures, furniture and the like, and performs service and maintenance on the condominium units. (*Id.*, ¶ 75.) When purchases are made, there is a clear markup on the items. (*Id.*, ¶ 77.)

Haggerty provided legal services to Chula Vista regarding the execution of the Rental Management Agreement and the formation and running of the Club and the maintenance program. (ECF No. 1, ¶ 107.) She also served as legal counsel for the Association, presiding over Association meetings and giving legal advice **[*7]** to condominium unit owners. (*Id.*, ¶ 110.) As counsel for both the Association and Chula Vista, Haggerty helped push through approval of the improper assessment fees. (*Id.*, ¶ 71.)

## RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS

*Rule 12(c) of the Federal Rules of Civil Procedure* states that "[a]fter the pleadings are closed...a party may move for judgment on the pleadings." A motion under *Rule 12(c)* generally requires the court to apply the same well-established standard applicable to a motion under *Rule 12(b)(6)*. Thus, to survive a motion for judgment on the pleadings, "the complaint must state a claim that is plausible on its face." *St. John v. Cach, LLC, 822 F.3d 388, 389 (7th Cir. 2016)* (quoting *Vinson v. Vermilion Cty., Ill., 776 F.3d 924, 928 (7th Cir. 2015))*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Lodholtz v. York Risk Servs. Group, 778 F.3d 635, 639 (7th Cir. 2015)*

(quoting *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009))*. The court accepts as true the facts alleged in the complaint. *St. John, 822 F.3d at 388*. However, the court need not accept as true any legal assertions. *Lodholtz, 778 F.3d at 639* (citing *Vesely v. Armslist LLC, 762 F.3d 661, 664-65 (7th Cir. 2014))*. Like *Rule 12(b)* motions, a *Rule 12(c)* motion is to be granted "only if it appears beyond doubt that [the plaintiffs] cannot prove any facts that would support [their] claim for relief." *Landmark Am. Ins. Co. v. Hilger, 838 F.3d 821, 824 (7th Cir. 2016)* *(quoting Buchanan-Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009))*.

However, *Rule 12(c)* is more expansive than *Rule 12(b)(6)*:

> When the movant seeks relief under 12(c) based upon the substantive merits of the **[*8]** case rather than a procedural defect cognizable under 12(b)(6), the court applies the standard applicable to a motion for summary judgment. *Alexander v. City of Chicago, 994 F.2d 333, 336 (7th Cir. 1993)*. Thus, the court considers whether there exists a "genuine dispute as to any material fact" and whether the movant "is entitled to judgment as a matter of law." *Conley v. Birch, 796 F.3d 742, 746 (7th Cir. 2015)* (quoting *Fed. R. Civ. P. 56(a)*). The difference between *Rule 12(c)* and *Rule 56* is that under *Rule 12(c)* the court's review is limited to the pleadings. *Alexander, 994 F.2d at 336*. "When the complaint itself contains everything needed to show that the defendant must prevail on an affirmative defense, then the court can resolve the suit on the pleadings under *Rule 12(c)*." *Edgenet, Inc. v. Home Depot U.S.A., Inc., 658 F.3d 662, 665 (7th Cir. 2011)*; *see also Richards v. Mitcheff, 696 F.3d 635, 637 (7th Cir. 2012)* ("A plaintiff whose allegations show that there is an airtight defense has pleaded himself out of court, and the judge may dismiss the suit on the pleadings under *Rule 12(c)*.").

*Chapman v. Milwaukee Cty., No. 15-CV-14, 2015*

*U.S. Dist. LEXIS 130195, at \*4 (E.D. Wis. Sep. 25, 2015)*.

## ANALYSIS

### 1. Statute of Limitations

Chula Vista's statute of limitations argument depends on a letter attached to the answer. (ECF No. 32.) The letter, dated January 14, 2011, was from Michael C. Bruck, an attorney purporting to represent "certain unit owners in the Chula Vista Unit Owners Condominium Association, Inc." (*Id.*) It was directed to Nancy Haggerty, counsel for the Association and Chula Vista. (*Id.*) A preliminary question **[\*9]** is whether the court may consider this letter in considering Chula Vista's, Haggerty's, and Michael Best's motions for judgment on the pleadings.

In a footnote in support of their motion, Chula Vista cites *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend, 163 F.3d 449 (7th Cir. 1998)*, for the proposition that "[c]ourts may consider attachments to an answer without converting a motion for judgment on the pleadings to a motion for summary judgment." (ECF No. 42 at 6, fn. 1.) As a general statement of law, this is correct. Both an answer and a complaint are "pleadings." *N. Ind. Gun & Outdoor Shows, 163 F.3d at 452*. And under *Federal Rule of Civil Procedure 10(c)*, "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."

In *Northern Indiana Gun & Outdoor Shows*, the district court granted the defendant's motion for judgment on the pleadings. Although the defendant attached a letter to its answer, *N. Ind. Gun & Outdoor Shows, 163 F.3d at 454*, the letter was not one of the exhibits the court relied on in granting the defendant's motion. Rather, the court relied on attachments to the complaint. *Id. at, 453 n.5* ("We, therefore, may consider only NIGOS's complaint with its four attachments and Century Center's

answer and attachment."); *see also id. at 454* (noting that the issue before it was "how to resolve this tension between the allegations in the complaint and **[\*10]** the exhibits attached to the complaint"). The court of appeals did *not* approve a defendant relying on an exhibit appended to its answer in moving for judgment on the pleadings. That is the situation presented here; Chula Vista attached a letter to its answer and now seeks to rely on that letter in support of its motion for judgment on the pleadings.

This court has identified at least two instances where the Court of Appeals for the Seventh Circuit noted that defendants supported motions for judgment on the pleadings by relying on documents appended to their answer. *See Kiddy-Brown v. Blagojevich, 408 F.3d 346, 353 (7th Cir. 2005)* (noting that the defendants seeking judgment on the pleadings "urge that we consider the CMS position description which the State defendants attached to their answer," but nonetheless looking solely to the allegations in the complaint when ruling on the motion); *Thomas v. Guardsmark, Inc., 381 F.3d 701, 705 (7th Cir. 2004)* (discussing a document attached to the answer when denying defendant's *Rule 12(c)* motion); *see also, e.g., Dangerfield v. Waterman, No. 17-cv-230-jdp, 2018 U.S. Dist. LEXIS 106089, at \*4-5 (W.D. Wis. June 26, 2018)* (noting that defendant's *Rule 12(c)* motion relied on prison policy attached to the defendant's answer); *Sawyer v. Matthews, No. 1:15-cv-01541-SEB-DML, 2016 U.S. Dist. LEXIS 181679, at \*9 (S.D. Ind. Dec. 15, 2016)* (denying on the merits defendant's *Rule 12(c)* motion, which was based on documents attached to **[\*11]** co-defendant's answer); *Rodriguez v. I.Q. Data Int'l, Inc., No. 15-CV-383, 2015 U.S. Dist. LEXIS 156901, at \*1 (N.D. Ill. Nov. 4, 2015)* (denying defendant's *Rule 12(c)* motion, which relied on affidavit attached to answer disputing the allegations in the complaint, because disputes of material fact existed). However, in none of these cases did the courts discuss whether it was proper to consider documents attached to the answer when ruling on the defendant's motion for judgment on the pleadings. Rather, the courts ended

up denying the defendants' motions anyway.

Some district courts *have* relied on documents attached to an answer to grant a defense motion for judgment on the pleadings. *St. John v. CACH, Ltd. Liab. Co., No. 14 C 0733, 2014 U.S. Dist. LEXIS 95875, at *9 (N.D. Ill. July 8, 2014)*; *Iqbal v. Zafar, No. 12-CV-1723, 2013 U.S. Dist. LEXIS 146393, at *6 (N.D. Ill. Oct. 9, 2013)*; *Kelley v. Criterion Catalysts & Techs. L.P., No. 3:13cv298, 2013 U.S. Dist. LEXIS 152118, at *2 (N.D. Ind. Oct. 23, 2013)* ("When the court considers the motion for judgment on the pleadings, the exhibits attached to the Answer should be considered."); *Clever Ideas, Inc. v. Citicorp Diners Club, Inc., No. 02 C 5096, 2003 U.S. Dist. LEXIS 14752, at *38 (N.D. Ill. Aug. 20, 2003)*. Those courts, like Chula Vista, tended to rely on the broad language of *Northern Indiana Gun & Outdoor Shows* defining "pleadings" and overlook the fact that the decision did not rely on the attachment to the answer.

This court is not persuaded that, when deciding a defendant's motion for judgment on the pleadings, a court may automatically accept and rely on a document attached to the defendant's answer. *Cf.* Judgment on the Pleadings—Practice **[*12]** Under *Rule 12(c)*, 5C Fed. Prac. & Proc. Civ. § 1368 (3d ed.) ("[W]hen material issues of fact are raised by the answer and the defendant seeks judgment on the pleadings on the basis of this matter, his motion cannot be granted."). The circumstances in which the court may grant a defendant's motion for judgment on the pleadings based on documents attached to an answer are narrow. Documents "referred to in the plaintiff's complaint and [which] are central to his claim" may be attached to the answer and considered as part of the pleadings.[1]

---

[1] It was pursuant to this exception that the court relied on documents attached to the answer when deciding a motion for judgment on the pleadings in *Chapman v. Milwaukee Cty., No. 15-CV-14, 2015 U.S. Dist. LEXIS 130195 (E.D. Wis. Sep. 25, 2015)*, a case on which Chula Vista relies (ECF No. 46 at 6.) There, the plaintiff referred to his EEOC charge in his complaint. The defendant attached that charge to its answer. Because it was referred to in the complaint, the EEOC charge was properly regarded as a part of the *complaint*,

*See Adams v. City of Indianapolis, 742 F.3d 720, 729 (7th Cir. 2014)*. And matters subject to judicial notice can be considered even though attached to the answer rather than the complaint. *Ennenga v. Starns, 677 F.3d 766, 773 (7th Cir. 2012)*.

Neither exception applies here. Absent either exception, if the defendant seeks judgment based on a document neither referenced in nor attached to the complaint, the proper procedure is a motion for summary judgment rather than one for judgment on the pleadings. *See, e.g., Stricklin v. First Nat'l Collection Bureau, Inc., No. 3:10-cv-01027-JPG-SCW, 2012 U.S. Dist. LEXIS 45695, at *6 (S.D. Ill. Mar. 30, 2012)* (defendant requested the court convert its motion for judgment on the pleadings to one for summary judgment so the court may consider documents **[*13]** it attached to its answer).

If a defendant were to move to dismiss under *Rule 12(b)(6)*, it could not append an exhibit to that motion and ask the court to consider it when ruling on the motion unless, as discussed, it was referred to in the plaintiff's complaint and central to his claim or subject to judicial notice. But Chula Vista's view of the Rules is that a defendant need simply answer the complaint, append to the answer whatever documents it wants, and then move for judgment on the pleadings. Given the expansive view as to what constitutes a "written instrument" under *Rule 10(c)*, Chula Vista's approach would engender a sort of abbreviated summary judgment procedure, yet without the formalities that attend proceedings under *Rule 56*. The court cannot discern any plausible reason for such a material and consequential distinction between motions under *Rules 12(b)* and *12(c)*.

Rather, in the context of a defendant's motion for judgment on the pleadings, a document attached to

---

notwithstanding the fact it was presented as part of the answer. This exception may also encompass certain of the cases where courts seemed to consider documents attached to an answer for purposes of a defendant's motion for judgment on the pleadings. *See, e.g., Kelley v. Criterion Catalysts & Techs. L.P., No. 3:13cv298, 2013 U.S. Dist. LEXIS 152118 (N.D. Ind. Oct. 23, 2013)*.

an answer is presumed to have no veracity. *See* Judgment on the Pleadings—Practice Under *Rule 12(c)*, 5C Fed. Prac. & Proc. Civ. § 1368 (3d ed.) ("It is axiomatic, as it is for motions under *Rule 12(b)(6)* and as evidenced by countless judicial opinions, many of which are cited in the note below **[\*14]** to illustrate the point, that for purposes of the court's consideration of the *Rule 12(c)* motion, all of the well pleaded factual allegations in the adversary's pleadings are assumed to be true and all contravening assertions in the movant's pleadings are taken to be false.") Nothing in the complaint demonstrates that any claim is untimely. In short, the plaintiffs have not pled themselves out of court. Therefore, Chula Vista is not entitled to judgment on the pleadings.

Even if the court were to consider the letter attached to Chula Vista's answer (whether under *Rule 12(c)* or by converting the motion to one for summary judgment), the court would still deny the motion. The letter suggests only that certain unnamed owners believed the Club would inappropriately benefit Chula Vista at the expense of the condominium owners. (ECF No. 32.) The plaintiffs deny that they were the unnamed condominium owners on whose behalf the attorney was writing. (ECF No. 45 at 10 (the letter "does not involve Plaintiffs"; "It is not written on behalf of any of the named Plaintiffs") 11 ("Plaintiffs or their counsel did not send the 2011 Letter.") 12 ("We do not even know who the condominium owners referenced in the letter are **[\*15]** ....").) The fact that in 2011 some condominium owners apparently recognized aspects of the plaintiffs' claims does not establish as a matter of law that the plaintiffs knew or should have known of their claims at that time. "Tort claims accrue and the statute of limitations begins to run on the date that the injured party discovers, or with reasonable diligence should have discovered, the tortious injury, whichever occurs first." *CLL Assocs. Ltd. P'ship v. Arrowhead Pac. Corp., 174 Wis. 2d 604, 609, 497 N.W.2d 115, 117 (1993)*. It is certainly possible that the plaintiffs knew or should have known of their claims, just as the condominium owners on whose behalf the letter

was written apparently did. But it is also possible that the claims did not accrue for the plaintiffs until a time within the relevant statutes of limitation. Accrual may depend on a variety of facts not yet before the court. In short, the court finds that there exist obvious material issues of fact and, depending on those facts, it is possible that the plaintiffs will be able to prove that their claims were timely. *See Moss v. Martin, 473 F.3d 694, 698 (7th Cir. 2007)*.

Thus, that portion of the defendants' motions that seeks to dismiss various claims in the complaint on the ground that they are untimely is denied.

## 2. Wisconsin Deceptive Trade Practices Act Claims [\*16]

In addition to moving to dismiss the claims under the DTPA (Counts 25-27) on the ground that they are barred by the applicable statute of limitations, Chula Vista also moves to dismiss the claims on the ground that the complaint does not set forth facts plausibly suggesting a violation of the DTPA. Specifically, they contend that nothing in the complaint alleges that misrepresentations made by Chula Vista materially induced the plaintiffs to enter a contract or other obligation. (ECF No. 42 at 17.) As a result, any alleged representations "could not have caused them any injury. (*Id.*) Alternatively, they contend that the plaintiffs were not "the public" within the meaning of the DTPA at any time after November 16, 2015, when the Rental Management Agreement was entered into. (ECF No. 42 at 18-19.) As such, any alleged misrepresentation made to them after that date was not "an advertisement, announcement, statement or representation of any kind to the public," a requirement for a violation of the DTPA.

In response, the plaintiffs argue that, for the reasons discussed above, the information in the letter attached to Chula Vista's answer, which serves as the basis for the argument that any **[\*17]** alleged misrepresentations could not have caused them any injury, cannot be considered at this stage. (ECF No. 45 at 16.) In addition, they argue that, when

deciding whether to remain as participants in the rental management program, they relied on the false and misleading statements detailed in the complaint. (*Id.* at 16-17.) Thus, the motion should be denied.

In reply, Chula Vista argues that the plaintiffs never respond to the argument that the complaint does not plausibly suggest that Chula Vista made "an advertisement, announcement, statement or representation of any kind *to the public*," as required by the DTPA. (ECF No. 46 at 2.) As a result, they contend, the plaintiffs have conceded that point. Alternatively, the plaintiffs have waived any argument they may have had to the contrary. (*Id.* at 2-3.)

*Section 100.18(1) of the Wisconsin Statutes* provides that no one with the intent to induce "the public" to purchase something shall make "an advertisement, announcement, statement or representation of any kind to the public" which contains an assertion, representation or statement of fact which is untrue, deceptive, or misleading. In the complaint, the plaintiffs allege that Chula Vista "made false representations that the Club memberships have little **[*18]** or no effect on the value of Plaintiffs' property and rental income." (ECF No. 1, ¶¶ 515, 528.) The complaint alleges that they made these false statements to "condominium unit owners, including Plaintiffs[.]" (*Id.*, ¶¶ 517, 530.)

The complaint contains no allegation that the condominium unit owners are "the public" for purposes of the DTPA such that any representations made to them violate the DTPA. Rather, the plaintiffs' DTPA claim (and the complaint generally) refers to "the general public" only in the context of noting to whom the Club memberships were made available.

The absence of any such allegation is the basis for Chula Vista's alternative argument for moving to dismiss the DTPA claims. And, as Chula Vista points out, the plaintiffs do not respond to the argument that nothing in the complaint alleges that

Chula Vista made an advertisement, announcement, statement or representation to "the public." Having failed to respond to this argument, the plaintiffs have waived any argument to the contrary. *See Bonte v. U.S. Bank, N.A., 624 F.3d 461, 466 (7th Cir. 2010)* ("Failure to respond to an argument ... results in waiver.") (citing *United States v. Farris, 532 F.3d 615, 619 (7th Cir. 2008))*; *Saccameno v. Ocwen Loan Servicing, LLC, 372 F. Supp. 3d 609, 626 (N.D. Ill. 2019)*.

Consequently, the court will grant Chula Vista's motion for judgment on the pleadings with respect to Counts **[*19]** 25 through 27.

### 3. Plaintiffs' Legal Malpractice Claims

Counts 28 and 29 of the complaint assert legal malpractice claims "on behalf of the Association" against Haggerty and Michael Best. Haggerty and Michael Best move to dismiss those claims "because the Plaintiffs do not have standing to assert claims on behalf of the Association." (ECF No. 44 at 13.) They assert that, although the Association has the right to sue on behalf of all unit owners under *section 703.15(3)(a)(3) of the Wisconsin Statutes*, the reverse is not true; that is, an individual unit owner does not have the right to sue on behalf of the Association. (*Id.* at 14.) As such, the complaint does not state a viable claim for legal malpractice. (*Id.*)

In opposing the motion, the plaintiffs assert that, "[f]or all practical purposes, MBF and Haggerty represented not only the Association but Plaintiffs and the condominium unit owners. For that reason alone, they have standing to bring the claims set forth in Counts 28 and 29." (ECF No. 45 at 17.) The plaintiffs offer no legal or factual support for this conclusion. Alternatively, they argue that in Wisconsin "attorneys can be held liable to third parties when fraud is present." (*Id.* at 17-18.) As a result, they contend **[*20]** they have standing to bring their legal malpractice claims.

Although the plaintiffs' response contends that they

have personal claims against Nancy Haggerty and her law firm, the complaint is clear that the plaintiffs are bringing their claims on behalf of the Chula Vista Condominium Unit Owners Association. In fact, as the defendants note in reply, the plaintiffs do not even respond to the argument that the plaintiffs cannot pursue claims on behalf of the Association.

Haggerty's and Michael Best's argument is that under _Wis. Stat. § 703.15_ the Association is a separate entity and the plaintiffs lack authority to act on behalf of that entity. (ECF No. 47 at 2.) Again, having failed to respond to that argument, the plaintiffs have waived any argument that they have authority to bring a malpractice claim on behalf of the Association. _Bonte, 624 F.3d at 466_ (citing _Farris, 532 F.3d at 619_); _Saccameno, 372 F. Supp. 3d at 626_. Whether the plaintiffs might have any personal claim against Haggerty and Michael Best is not before the court because no such claim is alleged in the complaint.

**IT IS THEREFORE ORDERED** that the Motion for Judgment on the Pleadings by CVR Management LLC, Chula Vista, Inc., and Michael Kaminski (ECF No. 41) is **granted in part and denied in part**. It is granted as **[*21]** to the plaintiffs' claims under the Wisconsin Deceptive Trade Practices Act (Counts 25 through 27) and denied as to all other claims.

**IT IS FURTHER ORDERED** that the Motion for Judgment on the Pleadings by Nancy Haggerty and Michael Best & Friedrich LLP (ECF No. 43) is **granted in part and denied in part**. It is granted as to the plaintiffs' claims for legal malpractice (Counts 28 29), which they assert on behalf of the Chula Vista Condominium Unit Owners Association, and denied as to all other claims.

Dated at Milwaukee, Wisconsin this 1st day of July, 2019.

/s/ William E. Duffin

WILLIAM E. DUFFIN

U.S. Magistrate Judge

**End of Document**

 Neutral
As of: May 20, 2026 5:26 PM Z

# *Allen v. Experian Info. Sols., Inc.*

United States District Court for the District of Idaho

December 4, 2025, Decided; December 4, 2025, Filed

Case No. 2:25-cv-00404-BLW

**Reporter**

2025 U.S. Dist. LEXIS 251718 *; 2025 LX 570303; 2025 WL 3485873

JASON HENRY ALLEN, Plaintiff, v. EXPERIAN INFORMATION SOLUTIONS, INC., EQUIFAX INFORMATION SERVICES LLC, TRANS UNION LLC; FORD MOTOR CREDIT COMPANY LLC; M2 LAW GROUP P.C.; HOWELL & VAIL LLP; MICHAEL J. ARCHIBALD; and LISSETTE M. CARRERAS, Defendants.

**Prior History:** *Allen v. Experianinformation Sols., Inc., 2025 U.S. Dist. LEXIS 251889 (D. Idaho, Dec. 3, 2025)*

**Counsel:** **[\*1]** Jason Henry Allen, Plaintiff, In Propria Persona, Plaintiff, Pro se, Post Falls, ID.

For Experian Information Solutions, Inc., Defendant: Meredith L Thielbahr, LEAD ATTORNEY, Gordon Rees Scully Mansukhani, Seattle, WA.

For Equifax Information Services LLC, Defendant: Charles Henry Carpenter, LEAD ATTORNEY, Carpenter Law Firm, plc, Missoula, MT.

For Trans Union LLC, Defendant: Brad P Miller, LEAD ATTORNEY, HAWLEY TROXELL ENNIS & HAWLEY, Boise, ID; Jean Eleanor Schroeder, LEAD ATTORNEY, Hawley Troxell, Boise, ID; Nermy J. Winner, LEAD ATTORNEY, PRO HAC VICE, Quilling Selander Lownds Winslett Moser, Indianapolis, IN.

For Ford Motor Credit Company LLC, Defendant: Erica J. White, Jed W Manwaring, LEAD ATTORNEYS, Elam & Burke, P.A., Boise, ID.

For M2 Law Group P.C., Howell & Vail LLP, Michael J. Archibald, Defendants: Michael John Archibald, LEAD ATTORNEY, M2 Law Group, Meridian, ID.

For Ford Motor Credit Company LLC, Counter Claimant: Erica J. White, Jed W Manwaring, LEAD ATTORNEYS, Elam & Burke, P.A., Boise, ID.

**Judges:** B. Lynn Winmill, United States District Judge.

**Opinion by:** B. Lynn Winmill

# Opinion

**MEMORANDUM DECISION AND ORDER**

**INTRODUCTION**

Before the Court are: (1) Defendants Equifax Information Services LLC, Experian Information **[\*2]** Solutions, Inc., and Trans Union LLC's Joint Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 32); (2) Plaintiff's Motion to Grant Plaintiff Access to the CM/ECF System (Dkt. 29); and (3) Plaintiff's Motion for Leave to File Sur-Reply (Dkt. 45). For the reasons set forth below, the Court will grant the CRA Defendants' motion to dismiss but will allow Allen one final opportunity to amend his complaint.

**BACKGROUND**

On July 23, 2025, Plaintiff Jason Henry Allen, proceeding pro se, filed a complaint alleging violations of the *Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq.*, against the three major credit reporting agencies—Equifax Information Services LLC, Experian Information Solutions, Inc., and Trans Union LLC (collectively, the "CRA Defendants")—as well as M2 Law Group PC, its predecessor Howell & Vail LLP, Michael J. Archibald (collectively, the "M2 Defendants"), and Ford Motor Credit Company, LLC.

The M2 Defendants and CRA Defendants both moved to dismiss the complaint. *See* Dkts. 15, 16. While those motions were pending, Allen filed an amended complaint. Dkt. 21. In a separate order, the Court granted the M2 Defendants' motion to the extent it sought dismissal for insufficient service of process under *Federal Rule of Civil Procedure 12(b)(5)*, dismissing M2 Law Group **[*3]** and Michael Archibald without prejudice and Howell & Vail with prejudice. Because Allen's amended complaint superseded the original, the Court denied as moot the portions of both motions seeking dismissal under *Rule 12(b)(6)* for failure to state a claim.

The CRA Defendants have now filed a joint motion to dismiss the amended complaint for failure to state a claim. *See* Dkt. 32. In the amended complaint, Allen alleges that his credit reports from the three CRA Defendants contain "numerous discrepancies and inaccuracies," including conflicting balances for the same accounts, contradictory payment statuses, duplicate tradelines, mismatched account totals, discrepant credit limits, and inconsistent personal identifiers including addresses Allen claims never to have used. Dkt. 21 at 5. He also alleges that certain "hard inquiries" from entities including CBNA, Lifted Tru, Lifted Truck, and GeeAutomot appear on his reports without his authorization. *Id.* Allen maintains he submitted certified disputes on May 31 and June 16, 2025, but the CRA Defendants merely "parroted" furnisher responses via automated consumer dispute verification processes without conducting independent investigations. *Id.* at 6. As a **[*4]** result, Allen alleges, his FICO scores fell to 538 (Trans Union), 524 (Experian), and 520 (Equifax). *Id.*

## LEGAL STANDARD

A dismissal under *Rule 12(b)(6)* is appropriate where a complaint "fails to state a claim upon which relief can be granted." *Fed. R. Civ. P. 12(b)(6)*. *Rule 8(a)(2) of the Federal Rules of Civil Procedure* requires only a short and plain statement of the claim, showing the plaintiff is entitled to relief and giving the defendant fair notice of plaintiff's claim and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*. Although a complaint challenged by a *Rule 12(b)(6)* motion to dismiss "does not need detailed factual allegations," it requires "more than labels and conclusions." *Twombly, 550 U.S. at 555*. "[A] formulaic recitation of the elements of a cause of action will not do." *Id.*

To survive a *Rule 12(b)(6)* motion, a claim requires a complaint to have enough factual basis which, if true, states a plausible claim for relief. *Twombly, 550 U.S. at 556*. A claim has facial plausibility when the plaintiff pleads factual content allowing the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. Id. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" **[*5]** a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id. at 557*. Further, a *Rule 12(b)(6)* dismissal is appropriate where a plaintiff attempts to allege a claim for relief under a statute which does not provide a private right of action.

## ANALYSIS

### A. The Fair Credit Report Act

Congress enacted the FCRA in 1970 "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1153 (9th Cir. 2009)* (quoting *Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007)*). To achieve these ends, the FCRA sought to ensure that "consumer reporting agencies exercise their grave responsibilities [in assembling and evaluating consumers' credit, and disseminating information about consumers' credit] with fairness, impartiality, and a respect for the consumer's right to privacy." *See 15 U.S.C. § 1681(a)(4)*. The FCRA expressly creates a private right of action for willful or negligent noncompliance with its requirements. *Id.* (citing *15 U.S.C. §§ 1681n*, *1681o*).

Allen alleges the CRA Defendants violated *§§ 1681e(b)*, *1681i*, and *1681b* of the FCRA by reporting inaccurate information, failing to conduct reasonable reinvestigations, and furnishing his consumer report without a permissible purpose. The CRA Defendants move to dismiss the Amended Complaint for **[\*6]** failure to state a claim. They argue that Allen's claims under *§§ 1681e(b)* and *1681i* fail because he does not identify any factual inaccuracy in his credit reports, and that his claim under *§ 1681b* fails because he alleges no facts giving rise to an inference that the furnishing of his consumer report fell outside the permitted circumstances listed in *§ 1681b(a)*.

### 1. *15 U.S.C. §§ 1681e(b)* and *1681i*

Allen alleges the CRA Defendants willfully and negligently violated *§§ 1681e(b)* and *1681i of the FCRA*. *Section 1681e(b)* requires consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy" in consumers' credit reports. *15 U.S.C. § 1681e(b)*. When a consumer disputes the accuracy or completeness of any item in a credit report, *§ 1681i(a)* requires consumer reporting agencies to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." *15 U.S.C. § 1681i(a)*.

To state a claim under *§ 1681e(b)*, a plaintiff must allege facts tending to show that a credit report "sports an actual inaccuracy." *DeAndrade v. Trans Union LLC, 523 F.3d 61, 66 (1st Cir. 2008)*; *see also Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329, 1333 (9th Cir. 1995)* ("In order to make out a prima facie violation under *§ 1681e(b)*, a consumer must present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information."). A claim under *§ 1681i* similarly requires a plaintiff to make a "prima facie showing of inaccurate **[\*7]** reporting." *Carvalho v. Equifax Info. Servs., LLC, 629 F.3d 876, 890 (9th Cir. 2010)* (quoting *Dennis v. BEH-1, LLC, 520 F.3d 1066, 1069 (9th Cir. 2008)*).

Under the FCRA, a report is "inaccurate" if it is "patently incorrect" or "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Shaw v. Experian Info. Sols., Inc., 891 F.3d 749, 756 (9th Cir. 2018)* (internal quotation omitted). To state a claim, a plaintiff must identify which specific information is false—merely pointing to the fact that different reports contain different information is insufficient.

Allen's allegations fall short of this standard. He identifies various discrepancies among his three credit reports: conflicting balances ($18,606, $0, $135,019, $154,132), different account totals (22, 23, 24), inconsistent payment statuses, and differing personal identifiers. Dkt. 21 at 5; Dkt. 36 at 2. But Allen does not allege which of these conflicting figures is false or misleading. He does not, for example, allege that the correct balance on a particular account is $0 and that one or more CRAs falsely reported $18,606. Instead, his theory appears to be that the mere existence of

discrepancies among the reports proves inaccuracy.

Allegations of inconsistencies or discrepancies among credit reports, standing alone, do not permit an inference that any of the reports contains **[\*8]** "false or materially misleading" information. *See Verlus v. Experian Info. Sols., Inc., No. 23-CV-11426-DJC, 2025 U.S. Dist. LEXIS 47890, 2025 WL 836588, at \*4 (D. Mass. Mar. 17, 2025)* (allegations of discrepancies between CRA reports insufficient without allegation of actual inaccuracy); *Cruel v. Experian, No. 22-cv-5236-KBH, 2023 U.S. Dist. LEXIS 107797, 2023 WL 4140828, at \*3 (E.D. Pa. June 22, 2023)* (same). The reason is straightforward: when one CRA reports a balance of $18,606 and another reports $135,019, both figures could be accurate as of different reporting dates, or one could be accurate and the other not. Without an allegation establishing which figure is false, the Court cannot infer inaccuracy from inconsistency alone.

Allen attempts to avoid this problem by relying on *Shaw* for the proposition that a report can be "inaccurate," even if technically true, if it is misleading. Dkt. 36 at 3. But *Shaw* does not relieve a plaintiff of the burden to plead that at least one piece of allegedly conflicting information is "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Shaw, 891 F.3d at 757.* Allen alleges no specific details about what information contained in any of his credit reports was misleading, much less that any information was misleading in such a way as to adversely affect credit decisions.

Allen's only other specific allegation concerns personal identifiers. He alleges that the CRAs **[\*9]** report "inconsistent personal identifiers" including addresses he claims never to have used. Dkt. 21 at 5. Even assuming this is true, the reporting of personal identifying information generally does not give rise to FCRA liability because such information does not bear on a consumer's creditworthiness. *See Individual Reference Servs. Grp., Inc. v. F.T.C., 145 F. Supp. 2d 6, 17 (D.D.C.*

*2001), aff'd sub nom. Trans Union LLC v. F.T.C., 295 F.3d 42, 353 U.S. App. D.C. 42 (D.C. Cir. 2002)* (name, address, Social Security number, and phone number do not bear on creditworthiness factors); *Parker v. Equifax Info. Servs., LLC, No. 2:15-CV-14365, 2017 U.S. Dist. LEXIS 147171, 2017 WL 4003437 (E.D. Mich. Sept. 12, 2017)* (biographical information including addresses does not constitute consumer report information).

Allen insists, however, that personal identifier errors can "enable mixed-file harms"—situations where one consumer's information is erroneously attributed to another. This argument is equally unavailing. While the Court acknowledges that mixed-file problems can give rise to FCRA claims, *see Guimond, 45 F.3d at 1332-33*, Allen has not alleged a mixed-file situation. He alleges only that his reports contain addresses he never used, not that another person's credit accounts have been merged with his file. This is precisely the type of conclusory allegation that cannot survive a motion to dismiss.

In sum, Allen has failed to plead a factual inaccuracy sufficient to state a claim under either *§ 1681e(b)* or *§ 1681i*. Identifying **[\*10]** differences among credit reports, without alleging which information is false, does not state a plausible claim for relief.

## 2. *15 U.S.C. § 1681b*

Allen also alleges that the CRA Defendants violated *§ 1681b* by furnishing his credit report to certain entities without his authorization and without any permissible purpose.

*Section 1681b(a)* identifies the circumstances under which a consumer reporting agency may furnish a consumer report, including: (1) in response to a court order; (2) "[i]n accordance with the written instructions of the consumer to whom it relates"; or (3) to a person which it has reason to believe intends to use the information for one of several listed purposes. *15 U.S.C. § 1681b(a)(1)*, *(2)*,

*(3)(A)-(G)*. Allen alleges that certain "hard inquiries" from CBNA, Lifted Tru, Lifted Truck, and GeeAutomot were reported without his "consent or permission." Dkt. 21 at 5. But consumer consent is not required under *§ 1681b*. A CRA may furnish a report if it has reason to believe the requester has a permissible purpose. *See Spencer v. Relx Inc., No. CV 23-65-H-BMM-KLD, 2024 U.S. Dist. LEXIS 112004, 2024 WL 3315439, at *4 (D. Mont. May 24, 2024)*.

Allen's reliance on *Pintos v. Pacific Creditors Ass'n, 605 F.3d 665 (9th Cir. 2010)*, does not help him. *Pintos* addressed the obligations of the requester of a consumer report, not the CRA that furnishes it. *Id. at 674-75*. For a CRA, the standard is whether it had "reason to believe" the requester had a permissible purpose. **[*11]** *See 15 U.S.C. § 1681b(a)(3)*. Allen has not met this standard. He has not alleged any facts suggesting the CRA Defendants lacked reason to believe the inquiring entities had permissible purposes, nor has he alleged any facts suggesting that the requesters or subscribers themselves lacked a permissible purpose. Accordingly, Allen's *§ 1681b* claim fails.

## B. Leave to Amend

Under *Federal Rule of Civil Procedure 15(a)(2)*, courts "should freely give leave" to amend "when justice so requires." Leave to amend may be denied where amendment would be futile. *Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)*. Amendment is futile "only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim." *Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988)*.

Although Allen has already amended once as a matter of course under *Rule 15(a)(1)(B)*, the Court will permit one additional amendment. It is not clear that further amendment would be futile. Allen may be able to cure the deficiencies identified herein by alleging specific facts establishing that

particular information in his credit reports is actually false—for example, by alleging that a specific account balance is $0 as confirmed by the creditor, and that one or more CRAs falsely reported a different balance. Similarly, Allen may be able to allege facts suggesting the CRA Defendants **[*12]** lacked reason to believe that the entities making the challenged inquiries had permissible purposes.

The dismissal is therefore without prejudice, and Allen shall have thirty (30) days from the date of this order to file a second amended complaint. Failure to timely file an amended complaint will result in dismissal of the claims against the CRA Defendants with prejudice.

## C. Motion for CM/ECF Access

Allen moves for access to the Court's Case Management/Electronic Case Files ("CM/ECF") system, arguing that electronic filing would promote judicial efficiency, remove undue burdens on him as a pro se litigant located 30 miles from the courthouse, and that he has demonstrated competence in preparing rule-compliant filings. Dkt. 29. The CRA Defendants oppose, arguing that Allen has "demonstrated a disregard for the procedural requirements" of this Court by making "numerous unnecessary filings," including a premature motion for leave to file a sur-reply before any reply had been filed. Dkt. 38 at 4.

Pro se litigants typically do not have CM/ECF filing privileges. *See* D. Idaho Loc. Civ. R. 5.1(c). "While an unrepresented individual may obtain the Court's permission to file his or her submissions electronically using the **[*13]** CM/ECF system, such authorization is typically denied unless the pro se party makes a showing of good cause or at least provide some explanation for why he requires access to electronic filing or why paper filing is inadequate." *Simerlink v. Coll. of Idaho, No. 1:25-CV-00157-BLW, 2025 U.S. Dist. LEXIS 94350, 2025 WL 1426056, at *1 (D. Idaho May 15, 2025)*.

The Court is not persuaded that Allen has shown good cause for CM/ECF access at this time. Allen's filing history in this case reveals some procedural missteps, including filing a motion for leave to file a sur-reply before any reply brief had been filed. Dkt. 23. And the CRA Defendants have legitimate concerns about the potential for additional unnecessary filings if Allen is granted immediate electronic access. Given the early stage of this litigation and the dismissal of Allen's claims with leave to amend, the Court will deny the motion without prejudice. Allen may renew this motion if he files a second amended complaint and demonstrates continued familiarity with procedural requirements.

U.S. District Court Judge

**End of Document**

**ORDER**

**IT IS ORDERED that**:

1. Defendants Equifax Information Services LLC, Experian Information Solutions, Inc., and Trans Union LLC's Joint Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 32) is **GRANTED**. All claims against the CRA Defendants are **DISMISSED** without prejudice. **[*14]**

2. Plaintiff shall have **thirty (30) days** from the date of this order to file a second amended complaint curing the deficiencies identified herein. Failure to timely file an amended complaint will result in dismissal of the claims against the CRA Defendants with prejudice.

3. Plaintiff's Motion for Leave to File Sur-Reply (Dkt. 45) is **DENIED as MOOT**.

4. Plaintiff's Motion to Grant Plaintiff Access to the CM/ECF System (Dkt. 29) is **DENIED** without prejudice.

DATED: December 4, 2025

/s/ B. Lynn Winmill

B. Lynn Winmill