UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**BRIAN T. PETERSON,**

**Plaintiff,**

**v.** **Case No. 25-C-1386**

**GREAT MIDWEST BANK, et al.,**

**Defendants.**

---

**DECISION AND ORDER GRANTING IN PART JOINT MOTION OF TRANS UNION LLC AND EXPERIAN INFORMATION SOLUTIONS, INC., FOR JUDGMENT ON THE PLEADINGS**

---

Plaintiff Brian T. Peterson, proceeding without a lawyer, commenced this action on September 10, 2025, against Defendants Experian Information Solutions, Inc. (Experian); Equifax Information Services LLC (Equifax); Trans Union LLC (Trans Union); Great Midwest Bank (Great Midwest); U.S. Bank National Association (U.S. Bank); and Summit Credit Union (Summit), alleging violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq*. Dkt. No. 1. Equifax was subsequently dismissed on stipulation of the parties. Dkt. Nos. 75–76. The court has jurisdiction pursuant to 28 U.S.C. § 1331. Peterson filed a second amended complaint (SAC) on February 9, 2026, which is now the operative complaint in the case. Dkt. No. 81. Trans Union and Experian have filed a joint motion for judgment on the pleadings. Dkt. No. 117. That motion is now fully briefed, including a sur-reply filed by Peterson. For the reasons set forth below, the joint motion for judgment on the pleadings will be granted as to Experian and denied as to Trans Union. The remaining defendants have filed separate motions to dismiss (Dkt. Nos. 84, 87, & 114), which will be decided in a separate decision.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Gill v. City of Milwaukee*, 850 F.3d 335, 339 (7th Cir. 2017) (citing *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). Thus, the court draws all reasonable inferences and views all facts in the light most favorable to the plaintiff. *Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 640 (7th Cir. 2017). But it is "not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002). To survive a motion for judgment on the pleadings, the challenged pleading must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Dismissal under Rule 12 is appropriate when an affirmative defense appears on the face of the complaint." *Jackson v. Gantner*, No. 21-CV-0640-BHL, 2022 WL 981121, at *1 (E.D. Wis. Mar. 30, 2022) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

The general rule is that matters outside the pleadings may not be considered by the court in deciding a motion to dismiss or for judgment on the pleadings unless the motion is treated as a motion for summary judgment. Fed. R. Civ. P. 12(d). An exception to this rule exists, however, for documents that a plaintiff fails to attach to the complaint, but which are referred to in the plaintiff's complaint and are central to his claim. *See Wright v. Associated Ins. Co., Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994) ("[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Such documents may be considered by a district court in ruling on the motion to dismiss.").

In this case, Midwest submitted a copy of an excerpt of the Three Bureau Credit Report that Plaintiff references in the SAC and which he enclosed with the dispute letter he sent to Midwest. Decl. of Lynn Torciva, Ex. A, Dkt. No. 42 at 6–8. The report sets out the information in the June 2, 2025, credit reports of Trans Union, Experian, and Equifax concerning Peterson's mortgage account with Midwest. Because it is referenced in the SAC and is central to Peterson's claim, the Court will consider it in deciding the pending motion for judgment on the pleadings.

**ANALYSIS**

Trans Union and Experian are consumer reporting agencies (CRAs) within the meaning of the FCRA. 15 U.S.C. § 1681a(f). The FCRA requires CRAs to "follow reasonable procedures to assure maximum possible accuracy" in consumer credit reports. 15 U.S.C. § 1681e(b). If the completeness or accuracy of any item of information contained in a consumer's credit report is disputed by the consumer, the CRA must then conduct a "reasonable reinvestigation to determine whether the disputed information is inaccurate" or delete the item within thirty days of the notice. *Id.* § 1681i(a)(1)(A). In conducting the reinvestigation, the consumer reporting agency shall review and consider all relevant information submitted by the consumer. *Id.* § 1681i(a)(4). The CRA is required to provide written notice to the consumer of the results of a reinvestigation within 5 business days after the completion of the reinvestigation. *Id.* § 1681i(a)(6).

A threshold requirement to state a claim under both § 1681e(b) and § 1681i(a) is that there must be inaccurate information in a plaintiff's consumer report. *Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 567 (7th Cir. 2021); *see also Chaitoff v. Experian Info. Sols., Inc.*, 79 F.4th 800, 811 (7th Cir. 2023) ("A CRA's liability under both § 1681e(b) and § 1681i(a) depends on inaccurate information—if the credit report is accurate, the consumer has suffered no damages."). "Accuracy is not defined in the statute, but it has long been understood that 'accuracy'

encompasses both truth and completeness—a report that is misleading or materially incomplete is inaccurate." *Chaitoff*, 79 F.4th at 809 (citing *Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37, 39–42 (D.C. Cir. 1984), and *Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014)). "An item on a credit report can be incomplete or inaccurate within the meaning of the FCRA because it is patently incorrect, or because it is 'misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'" *Frazier v. Equifax Info. Servs., LLC*, 112 F.4th 451, 455 (7th Cir. 2024) (quoting *Chaitoff*, 79 F.4th at 812).

The SAC alleges that in June 2025, Peterson reviewed his credit reports from Trans Union, Experian, and Equifax and discovered material inaccuracies in tradeline information provided by Great Midwest, Summit, and U.S. Bank on his accounts. SAC ¶ 11. Peterson had a home mortgage account with Great Midwest, a home equity line of credit (HELOC) account with Summit, and a credit card account with U.S. Bank. *Id.* ¶ 12. The SAC alleges that in June 2025, the Great Midwest loan balance was reported by Trans Union as $733,413, while Experian and Equifax reported it as $724,061. *Id.* ¶ 13. Equifax reported the loan term as 0 months, rather than the actual term of 348 months. *Id.* With respect to the Summit HELOC account, Equifax reported the credit limit as $0, whereas Trans Union and Experian "show $233,700 as well as Date of Last Payment and Date Last Active showing a difference of almost an entire month." *Id.* ¶ 14. Trans Union and Experian reported the U.S. Bank credit card account as having a high credit of $31,120, while Equifax reported $0. *Id.* The SAC also alleges there were multiple weeks difference in the entries for Last Reported, Date Last Active, and Date of Last Payment, which materially affected Peterson's creditworthiness.

The SAC alleges that Peterson submitted formal written disputes to Equifax, Trans Union, and Experian between June and August 2025 in which he specifically identified the inaccurate data

and requested reinvestigation pursuant to 15 U.S.C. § 1681i(a). *Id.* ¶ 16. Peterson reviewed his credit reports on June 2, 2025, and again on September 9, 2025, and "the same materially inaccurate tradeline information remained unchanged during this entire period." *Id.* ¶ 22. On August 4, 2025, Peterson alleges his application to Sterling Bank for a $1 million dollar loan was denied. He alleges he was told by the Bank that it "pulled [his] credit report and found inconsistencies leading [them] to deny [his] request for a loan at [that] time." *Id.* ¶ 19. Peterson alleges he suffered actual damages, including financial loss, emotional distress, reputational harm, and loss of credit expectancy as a result of the inaccuracies in his credit reports. *Id.* ¶ 20. Finally, the SAC alleges that on or about October 9, 2025, Trans Union completed its investigation of Peterson's formal dispute and informed Peterson: "The disputed item(s) was verified as accurate; however, we updated: Balance; Date Updated; Last Payment Made; Rating." *Id.* ¶¶ 26–27. Peterson alleges that Trans Union's report essentially constitutes an admission that the information in the earlier credit report was inaccurate and misleading. *Id.* ¶ 28.

Trans Union and Experian (collectively, "the CRAs") argue that they are entitled to judgment on the pleadings for the simple reason that the SAC fails to plausibly allege that the information in their reports was inaccurate or misleading. As noted above, the SAC alleges that the CRAs' reports on Peterson's credit history contain discrepancies concerning the balance, loan term, payment history, credit limit, and high credit on the three accounts listed above. For the most part, however, the SAC is silent as to which entries in which reports are accurate and which are not.

The CRAs note that the mere fact that there were discrepancies is not enough to plausibly state a claim. They are correct. As the court explained in *Allen v. Experian Information Solutions, Inc.*:

> Allegations of inconsistencies or discrepancies among credit reports, standing alone, do not permit an inference that any of the reports contains "false or materially misleading" information. *See Verlus v. Experian Info. Sols., Inc.*, No. 23-CV-11426-DJC, 2025 WL 836588, at *4 (D. Mass. Mar. 17, 2025) (allegations of discrepancies between CRA reports insufficient without allegation of actual inaccuracy); *Cruel v. Experian*, No. 22-cv-5236-KBH, 2023 WL 4140828, at *3 (E.D. Pa. June 22, 2023) (same). The reason is straightforward: when one CRA reports a balance of $18,606 and another reports $135,019, both figures could be accurate as of different reporting dates, or one could be accurate and the other not. Without an allegation establishing which figure is false, the Court cannot infer inaccuracy from inconsistency alone.

No. 2:25-cv-00404-BLW, 2025 WL 3485873, at *3 (D. Idaho Dec. 4, 2025); *see also Silva v. Santander Consumer USA Inc.*, No. 3:24-cv-06057-DGE, 2026 WL 364426, at *5 (W.D. Wash. Feb. 10, 2026) ("If Plaintiff cannot plausibly identify whether the CRAs (and which ones) are reporting accurately, neither can the Court."). Thus, to the extent the SAC fails to allege which entry in which CRA's report is inaccurate, it fails to state a claim against that CRA.

The SAC does allege a specific inaccuracy in the report prepared by Trans Union. According to the SAC, Trans Union reported the balance on Peterson's Great Midwest account as $733,413, while Experian and Equifax reported it as $724,061. SAC ¶ 13. Although the SAC does not immediately identify which amount was accurate, as one reads on in the SAC, it becomes apparent that the higher balance reported by Trans Union is the allegedly inaccurate amount. *See id.* ¶ 36 ("A reasonable investigation would have revealed that: Great Midwest furnished a materially inflated balance to Trans Union ($733,413 vs. actual $724,061)."). Thus, a fair reading of the SAC is that Trans Union's June 2, 2025, report on Peterson's credit history listed the loan balance of his home mortgage account at $9,300 more than the actual amount, a difference of roughly 1.3%. Although not mentioned in the SAC, Trans Union's report also states that the account was current with $0.00 past due, which would seem to be the more important information to consider in deciding whether to approve a loan application. Dkt. No. 42 at 7–8.

Nevertheless, according to the SAC, despite the "formal written disputes" Peterson sent the CRAs between June and August 2025, the error was not corrected. SAC ¶ 15. After Trans Union completed its reinvestigation, it reported to Peterson on October 9, 2025, that it had verified the disputed item as accurate. *Id.* ¶¶ 26–27. At the same time, Trans Union advised Peterson that it had updated the entries for the loan balance, date updated, last payment made, and rating. *Id.* The fact that the update included a change in Peterson's credit rating suggests that the inaccuracy was material. And the allegations that the other two CRAs correctly reported the balance from the beginning and that Trans Union failed to do so promptly even after receiving Peterson's written dispute is sufficient to state claims against Trans Union under both § 1681e(b) and § 1681i(a).

The same is not true as to Experian. The SAC fails to allege any inaccuracy in Experian's report. Unlike Trans Union, Experian accurately reported the balance on Peterson's home mortgage account with Great Midwest in its June 2, 2025, report. SAC ¶ 36. Experian likewise accurately reported the high credit on Peterson's credit card account at U.S. Bank at $31,120. *Id.* ¶¶ 14, 36. And while the SAC alleges that Experian and Trans Union reported the limit on Peterson's HELOC account with Summit as $233,700, whereas Equifax reported it as $0, it fails to state which is accurate. The same is true for the allegation that discrepancies in the date of last payment and the date last active revealed "a difference of almost an entire month." *Id.* ¶ 14. Absent any allegation as to which entry in which report was inaccurate, the court can only speculate. Without allegations "establishing which figure is false, the Court cannot infer inaccuracy from inconsistency alone." *Allen*, 2025 WL 3485873, at *2. "[W]ithout further factual development, the Court will not speculate as to whether these internal contradictions are indeed inaccurate or misleading." *Silva*, 2026 WL 364426, at *3. Peterson therefore fails to state a claim against Experian.

## CONCLUSION

For the reasons set forth above, Trans Union and Experian's joint motion for judgment on the pleadings (Dkt. No. 117) is **GRANTED** as to Experian and **DENIED** as to Trans Union. Plaintiff's motion for leave to file a sur-reply (Dkt. No. 135) is also **GRANTED**. Since this decision does not adjudicate all of the claims as to all of the parties, final judgment will not be entered. *See* Fed. R. Civ. P. 56(b).

**SO ORDERED** at Green Bay, Wisconsin this 24th day of August, 2026.

William C. Griesbach
United States District Judge