**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**BRIAN T. PETERSON,**

**Plaintiff,**

**v.** **Case No. 25-C-1386**

**GREAT MIDWEST BANK, et al.,**

**Defendants.**

---

**DECISION AND ORDER DENYING MOTIONS TO DISMISS THE SECOND AMENDED COMPLAINT**

---

This action arises under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq*. Plaintiff Brian T. Peterson, proceeding without an attorney, commenced this action against Experian Information Solutions, Inc., Equifax Information Services LLC, and TransUnion LLC, each of which is a consumer reporting agency (CRA) within the meaning of the FCRA. 15 U.S.C. § 1681a(f). A CRA is an agency that compiles and processes consumer credit information to produce credit reports for end-users, such as banks and landlords. *Frazier v. Dovenmuehle Mortgage, Inc.*, 72 F.4th 769, 772–73 (7th Cir. 2023). Peterson also sued Great Midwest Bank, Summit Credit Union, and U.S. Bank National Association, each of which held an account in his name. Peterson had a home mortgage account with Great Midwest, a Home Equity Line of Credit (HELOC) account with Summit, and a credit card account with U.S. Bank. These are businesses that furnish the payment data to CRAs that is compiled in a consumer's credit report.

The FCRA imposes different duties upon CRAs and furnishers of information all with the goal of ensuring that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner

which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information . . . ." *Id.* § 1681(b). The FCRA requires CRAs to "follow reasonable procedures to assure maximum possible accuracy" in consumer credit reports. *Id.* § 1681e(b). Furnishers of information are to provide accurate information. *Id.* § 1681s-2(a). If the completeness or accuracy of any item of information contained in a consumer's credit report is disputed by the consumer, the CRA must then conduct a "reasonable reinvestigation to determine whether the disputed information is inaccurate" or delete the item within thirty days of the notice. *Id.* § 1681i(a)(1)(A). In conducting its reinvestigation, the CRA will identify the relevant data furnisher and transmit to it an Automated Consumer Dispute Verification (ACDV) form. The ACDV form presents the furnisher with the account payment data the CRA currently possesses and the relevant data items the consumer disputes. "Upon notice of a dispute, the data furnisher has a statutory duty to investigate the disputed data. The furnisher must also correct or verify the information by returning the ACDV form to the credit reporting agency with any amended or verified data inserted next to the old data." *Frazier*, 72 F.4th at 773 (citing generally 15 U.S.C. § 1681s-2(b)).

In his second amended complaint (SCA), which is the operative complaint, Peterson alleges that both the furnishers of information and the CRAs violated the FCRA. Equifax, one of the CRAs, has been dismissed on stipulation of the parties. Peterson alleges that the two remaining CRAs, Experian and TransUnion, violated § 1681e(b) of the FCRA by failing to adopt reasonable procedures to assure the maximum accuracy of the information in his credit reports. SAC ¶¶ 38–42 (Count Two). In addition, Peterson alleges that the furnishers of information violated § 1681s-2(b) of the FCRA by failing to conduct a reasonable investigation and to correct, delete, or block the inaccurate information. SAC ¶¶ 33-37; 43–49 (Counts One and Three). As a result, Peterson

alleges that he suffered actual damages, including financial loss, emotional distress, reputational harm, and loss of credit expectancy. *Id.* ¶ 20. Currently before the court is the joint motion of Experian and TransUnion (collectively, "the CRA Defendants"), for judgment on the pleadings, and the motions of Great Midwest, Summit, and U.S. Bank (collectively, "the Furnisher Defendants"), to dismiss for failure to state a claim. The motion of judgment on the pleadings filed by the CRA Defendants will be decided by a separate order. For the reasons stated herein, the Furnisher Defendants' motions to dismiss will be denied.

## LEGAL STANDARD

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022). Rule 8 requires a pleading to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Defense of federal lawsuits is expensive. To open the doors to discovery and thereby require a defendant to incur the substantial costs of defense, a complaint must therefore include sufficient allegations to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 570 (2007). A claim is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court must "take all factual allegations in the complaint as true" and draw all reasonable inferences in the plaintiff's favor when considering a motion to dismiss for failure to state a claim, courts need not accept the truth of legal conclusions, and

[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

In deciding a Rule 12(b)(6) motion, a court may consider documents attached to the motion to dismiss if they are referred to in the plaintiff's complaint and are central to his claim. *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014); *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). A plaintiff cannot avoid early dismissal of a fatally flawed case by hiding the ball, especially where such documents form the basis of the plaintiff's claims. Thus, in this case, the court will consider not only the allegations in the SAC but also documents referenced in the SAC and central to its claims. *See* SAC ¶ 30.

**ANALYSIS**

As noted above, Peterson's claims against the Furnisher Defendants arise under 15 U.S.C. § 1681s-2(b). While that statute has many components, the federal courts have interpreted it to include two threshold requirements for a claim under the statute:

> 1. The plaintiff must make a prima facie showing that the data furnisher provided incomplete or inaccurate information.
>
> 2. The plaintiff must also show that the incompleteness or inaccuracy was the product of an unreasonable investigation—that is, had the furnisher conducted a reasonable investigation, it would have discovered that the data it provided was incomplete or inaccurate.

*Frazier*, 72 F.4th at 775 (footnotes omitted). To establish incompleteness or inaccuracy under § 1681s-2(b), a plaintiff must show that "the information the data furnisher provided was (1) patently incorrect, or (2) materially misleading, including by omission." Id. at 776. "Materially misleading" means "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Id.* (quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d

1147, 1163 (9th Cir. 2009); and *Sepulvado v. CSC Credit Services, Inc.*, 158 F.3d 890, 895 (5th Cir. 1998)).

In this case, the Furnisher Defendants argue that the SAC fails to plausibly allege that the information furnished by Great Midwest, Summit, or U.S. Bank was incomplete or inaccurate. In support of their argument, they rely heavily on the Court's earlier decision granting their motions to dismiss Peterson's 53-page First Amended Complaint (FAC). Dkt. No. 79. In so ruling, the Court held that, other than in conclusory terms, the FAC failed to allege that the movants provided incomplete or inaccurate information, and that Peterson's dispute appeared to be over minor discrepancies in the manner in which the three CRAs reported his loan. *Id.* at 8. The FAC listed only the headings ("Date Opened," "Credit Limit," "Last Reported Date," and "Date of Last Payment") for the information that were alleged in conclusory terms to be inaccurate. "Absent specific allegations as to what information furnished was inaccurate," the Court concluded, "the Amended Complaint fails to state facts from which it could be inferred that the information provided by [Great Midwest,] Summit or U.S. Bancorp was patently inaccurate or materially misleading." *Id.*

The SAC cures these defects. The SAC alleges that in June 2025, Peterson reviewed his credit reports from Trans Union, Experian, and Equifax in June 2025 and discovered material inaccuracies in tradeline information provided by Great Midwest, Summit, and U.S. Bank on his accounts. SAC ¶ 11. It alleges that Peterson's Great Midwest loan balance was incorrectly reported by Trans Union as $733,413, while Experian and Equifax correctly reported it as $724,061. *Id.* ¶ 36. Equifax inaccurately reported the loan term as 0 months, rather than 348 months. *Id.* With respect to the Summit HELOC account, Equifax reported the credit limit as $0, whereas Trans Union and Experian "show $233,700, as well as Date of Last Payment and Date

Last Active showing a difference of almost an entire month." *Id.* ¶ 14. Trans Union and Experian reported the U.S. Bank credit card account as having a high credit of $31,120, while Equifax reported $0. *Id.* The SAC also alleges there were multiple weeks differences in the entries for Last Reported, Date Last Active, and Date of Last Payment, and that these discrepancies materially affected Peterson's creditworthiness. *Id.*

The SAC further alleges that Peterson submitted formal written disputes to Equifax, Trans Union, and Experian between June and August 2025 in which he specifically identified the inaccurate data and requested reinvestigation pursuant to 15 U.S.C. § 1681i(a). *Id.* ¶ 16. Peterson reviewed his credit reports on June 2, 2025, and again on September 9, 2025, and "the same materially inaccurate tradeline information remained unchanged during this entire period." *Id.* ¶ 22. On August 4, 2025, Peterson alleges his application to Sterling Bank for a $1 million dollar loan was denied. He alleges he was told by the Bank that it "pulled [his] credit report and found inconsistencies leading [them] to deny [his] request for a loan at [that] time." *Id.* ¶ 19. The SAC alleges that on or about October 9, 2025, Trans Union completed its investigation of Peterson's formal dispute and informed Peterson: "The disputed item(s) was verified as accurate; however, we updated: Balance; Date Updated; Last Payment Made; Rating." *Id.* ¶¶ 26–27. Peterson alleges that Trans Union's report essentially constitutes an admission that the information in the earlier credit report was inaccurate and misleading. *Id.* ¶ 28. Peterson alleges he suffered actual damages, including financial loss, emotional distress, reputational harm, and loss of credit expectancy as a result of the inaccuracies in his credit reports. *Id.* ¶ 20.

Citing the Seventh Circuit's decision in *Frazier*, all three of the Defendant Furnishers argue the SAC fails to state a claim against them. Dkt. Nos. 85 at 6; 88 at 4; and 115 at 3. But *Frazier* was an appeal from a decision granting a motion for summary judgment, not a motion to dismiss.

72 F.4th at 772. In *Frazier*, the court affirmed the district court's order granting a furnisher defendant's motion for summary judgment based on the furnisher defendant's responses to the ACDV form sent to it by the CRA upon notification of the plaintiff's dispute. The court concluded that it was clear from the furnisher defendant's ACDV response that the information the furnisher provided was not patently false or materially misleading. *Id.* at 777. In so ruling, the court rejected the plaintiff's argument that "completeness or accuracy under § 1681s-2(b) must be judged based, not on the ACDV response the data furnisher provided, but on the credit report generated from it." *Id.* at 776. Instead, the court held that "completeness or accuracy is evaluated objectively based on the content of the furnisher's ACDV response." *Id.* at 777. From the furnisher defendant's ACDV response in that case, the court concluded no reasonable jury could find the information provided by the furnisher patently inaccurate or materially misleading.

In this case, in contrast, the ACDV responses from the Defendant Furnishers are not part of the record. Although the Defendant Furnishers have submitted copies of their letter responses to Peterson, we do not have the responses that they presumably made to the CRAs when notified of Peterson's dispute. In the absence of the ACDV responses by the Defendant Furnishers, the court cannot determine from the pleadings whether the alleged inaccuracies in the three credit reports were because the Defendant Furnishers provided inaccurate information or because the CRAs failed to accurately report the information they furnished. The fact that the inaccuracies allegedly remained uncorrected for several months at least raises the inference that the Defendant Furnishers were at fault. Summit argues that it is improbable if the Defendant Furnishers were providing inaccurate information, two of the three CRAs would report the information accurately. That would be true if the furnishers reported the same information to each CRA at the same time, but, on this record, the Court cannot conclude that to be the case. Whether improbable or not, the

SAC states a claim against each of the Defendant Furnishers. Their motions to dismiss (Dkt. Nos. 84, 87, and 114) are therefore **DENIED**. The clerk is directed to set the matter on the court's calendar for a Rule 16 telephonic scheduling conference.

**SO ORDERED** at Green Bay, Wisconsin this 24th day of August, 2026.

William C. Griesbach
United States District Judge